# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHON DESMOND HOUSTON,

        Defendant-Appellant.

UNPUBLISHED
November 9, 2004

No.  248742
Wayne Circuit Court
LC No.  03-001609-01

Before:  Wilder, P.J., and Hoekstra and Owens, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  The trial court sentenced defendant to concurrent terms of life imprisonment for the murder conviction and 1½ to 5 years' imprisonment for the felon in possession of a firearm conviction, to be served consecutive to two years' imprisonment for the felony-firearm conviction.  We affirm.

Defendant's first claim on appeal concerns the prosecution's admission of evidence that defendant assaulted with a gun and threatened to kill witness Lavero Crooks.  We begin by reviewing the context in which this evidence was admitted.

At trial, Crooks testified that he and defendant were friends on September 6, 2002, the date of the incident in the present case.  Crooks, a drug dealer, stated that on that date, he observed defendant confront the victim regarding whether the victim, who was a drug user, would make a purchase from defendant, another drug dealer on defendant's block.  According to Crooks, the confrontation culminated with defendant entering a residence and returning with a firearm that he used to shoot and kill the victim.  Thus, to the prosecution, Crooks was a significant eyewitness to the crime.

However, Crooks did not come forward to police immediately.  Rather, he testified that on three occasions he refused to cooperate with police when they questioned him about the homicide.  On November 9, 2002, Crooks had an encounter with defendant.  Crooks testified that he had slept in his car that evening and awoke to find defendant pointing a gun at his head and threatening to kill him.  Crooks stated that defendant told him, "you don't run this block.  This is my block."  Crooks reported this assault to the police.  Crooks then assisted the police in

arresting defendant and revealed to police that he witnessed the homicide at issue in the present case.

The record also reveals that before defense counsel made an opening statement to the jury, he addressed the court outside of the jury's presence concerning the potential evidence of defendant's assault on Crooks. In essence, defense counsel requested permission from the trial court to introduce the fact that Crooks did not cooperate with police regarding the homicide investigation until after he made an assault complaint against defendant, without opening the door to the prosecution to reveal the details of the assault itself. The trial court declined to make a ruling at that point in the proceeding.

Subsequently, during direct examination of Crooks, the prosecution, apparently now anticipating defendant's strategy, questioned Crooks about the assault. Defendant objected on grounds of relevance, but the trial court overruled the objection, finding that the evidence was relevant to Crooks' reason to testify, and at that point Crooks testified about the assault. Additionally, Crooks testified on direct examination that this incident ended his friendship with defendant, but that the reason that he decided to testify against defendant in this case was unrelated to the assault. Rather, Crooks maintained that he "felt bad because a person['s] life was taken," and testifying for the prosecution "would make me rest easy." On cross-examination, Crooks again denied that any connection existed between the assault and his testimony despite, as defense counsel's questioning suggested, the coincidence of the timing between the assault and Crook's subsequent decision to cooperate with the investigation and prosecution of this case.

Defendant complains on appeal that the introduction of this evidence of his assault on Crooks denied him a fair trial. Specifically, defendant argues that such evidence was improperly admitted under MRE 404b and 403.

We review a trial court's decision on admission of evidence for an abuse of discretion. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). However, to preserve an issue for review on appeal, a party usually must make a timely objection and specify the same grounds for challenge as the party seeks to assert on appeal. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004); *People v Moorer*, 262 Mich App 64, 78; 683 NW2d 736 (2004). In this case, although defendant timely objected, he specified grounds of relevance. Consequently, his claims under MRE 404b and 403 are unpreserved. We review unpreserved claims for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999); *Moorer, supra* at 68.

To avoid forfeiture under the plain error rule, three requirements must be met: (1) an error must have occurred; (2) the error must have been plain error; (3) and the plain error must have affected substantial rights, i.e., the defendant was prejudiced (the defendant generally must show that the error affected the outcome of the lower court proceedings). An appellate court must then exercise its discretion in deciding whether to reverse a defendant's conviction. Reversal is warranted only when the plain error results in a conviction of an innocent defendant or seriously affects the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. [*Moorer, supra* (citations omitted).]

Here, we find no plain error because defendant essentially was the proponent of the evidence. Before the court, defendant indicated his intent to utilize this evidence to attack Crooks' credibility, which was clearly at issue. In response, as a matter of trial strategy, the prosecutor appears to have chosen to attempt to diffuse the probative value of the evidence to the defense by introducing it on direct examination.[1] Without proper objection, this trial tactic does not shift to the prosecution the obligation to defend the admissibility of the evidence against MRE 404b or 403 challenges on appeal.

Further, to the extent that defendant's preliminary discussions with the trial court can be interpreted to be as an objection under MRE 403, we note that defendant never requested a ruling at the time the evidence was being presented as the trial court had suggested. Determinations of whether the prejudicial effect of evidence outweighs its probative value are best left to the trial court. *People v Bahoda*, 448 Mich 261, 291; 531 NW2d 659 (1995). Without the benefit of a contemporaneous assessment by the trial court of the presentation, credibility, and effect of the testimony, *id.*, we conclude that defendant has not established that admission of the evidence of an assault by defendant on Crooks constituted an abuse of discretion.

Next, defendant argues that the trial court erroneously instructed the jury on the causation element of first- and second-degree murder. However, by affirmatively indicating his satisfaction with the jury instructions, defendant waived appellate review of this issue. *People v Lueth,* 253 Mich App 670, 688; 660 NW2d 322 (2002). In any event, we find without merit defendant's claim that the causation instructions were improper. Defendant relies on a technical interpretation of the causation instructions, which is not warranted in the context of the issues raised in the trial. Taken as a whole, the instructions adequately protected defendant's rights by fairly presenting to the jury the issues in this case. *People v Dumas*, 454 Mich 390, 396; 563 NW2d 31 (1997). Consequently, defendant's claim that counsel was ineffective for failing to object is likewise without merit. *People v Rodriguez*, 212 Mich App 351, 356; 538 NW2d 42 (1995) (observing that "counsel is not required to make a groundless objection").

Affirmed.

/s/ Kurtis T. Wilder
/s/ Joel P. Hoekstra
/s/ Donald S. Owens

---

[1] See MRE 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness.")

# STATE OF MICHIGAN
# IN THE COURT OF APPEALS

THE PEOPLE OF THE STATE OF MICHIGAN,
                    Plaintiff-Appellee,                    Court of Appeals

    vs                                              No. 248742

**MICHON D. HOUSTON.**
                    Defendant-Appellant.

Lower Court No. 03-1609

## PROOF OF SERVICE

STATE OF MICHIGAN)
COUNTY OF WAYNE )ss

The undersigned deponent, being duly sworn, deposes and says that (s)he served a true copy of: **BRIEF ON APPEAL.**

upon: Susan J. Smith

the within named attorney(s) for defendant(s), by **placing in the U.S. Mail in a envelope fully paid with postage** on June 1, 2004 to the following address:

Susan J. Smith
Attorney at Law
3300 Penobscot Building
645 Griswold
Detroit    MI 48226

_Linda Woods_
Linda Woods

and said pleading(s) was (were) filed in the Michigan Court of Appeals by Personal Service to the following address:

Michigan Court of Appeals
3020 West Grand Boulevard, Suite 14-300
Detroit, MI 48202

Subscribed and sworn to before me
this 1st day of June, 2004.

_Janet M. Bender_
Janet M. Bender
Notary Public, Wayne County, Michigan
My commission expires: 07/08/07.

STATE OF MICHIGAN
IN THE COURT OF APPEALS

THE PEOPLE OF THE STATE OF MICHIGAN,

              Plaintiff-Appellee,

vs                                  Court of Appeals No.  248742

MICHON D.  HOUSTON ,

              Defendant-Appellant.

Wayne County Circuit Court No.  03-1609

### BRIEF ON APPEAL

### ORAL ARGUMENT NOT REQUESTED

KYM L. WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research,
Training and Appeals

ANA I. QUIROZ (P-43552)
Assistant Prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit, Michigan 48226-2302
Phone: (313) 224-0981

# Table of Contents

Page

COUNTER-STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

COUNTER-STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     Affirmative conduct waives the alleged error as an intentional relinquishment or abandonment. Here, the prosecutor questioned a witness regarding his possible bias, only after defense counsel expressed his intent use the same evidence to prove the witness' motive to lie. Defendant's waiver precludes appellate review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Appellate Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.    Where defense counsel expressed satisfaction with the jury instructions as read, any error in the instructions given by the trial court has been extinguished. Here, defense counsel stated he was satisfied with jury instructions which sufficiently charged the jury that the prosecutor must prove, beyond a reasonable doubt, that Defendant caused the victim's death. The defense waived appellate review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Appellate Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Johnson v Zerbst,
　　304 US 458, 464; 58 S Ct 1019, 1023; 82 L Ed 1461 (1938) ...................................... 4, 7

Strickland v Washington,
　　466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d
　　674 (1984) ............................................................................................................... 11, 12

United States v Abel,
　　469 U.S. 45, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984) ........................................... 8

United States v Griffin,
　　84 F.3d 912 (CA 7, 1996) ....................................................................................... 4

United States v McRae,
　　593 F.2d 700 (CA 5, 1979) ..................................................................................... 9

## STATE CASES

Hayes v Coleman,
　　338 Mich. 371 (1953) ............................................................................................. 9

People v Aldrich,
　　246 Mich. App. 101 (2001) ..................................................................................... 12

People v Carter,
　　462 Mich. 206 (2000) ............................................................................................. 4, 11

People v Coyle,
　　104 Mich. App. 636 (1981) ..................................................................................... 12

People v Crawford,
　　458 Mich. 376 (1998) ............................................................................................. 8, 9

People v Katt,
　　468 Mich. 272 (2003) ............................................................................................. 4

People v Layher,
　　464 Mich. 756 (2001) ............................................................................................. 8, 9

People v McFall,
　　224 Mich. App. 403 (1997) ..................................................................................... 12

People v Ortiz,
 249 Mich. App. 297 (2001) ........................................................... 11

People v Pickens,
 446 Mich. 298 (1994) ............................................................... 12

People v Rimson,
 63 Mich. App. 1 (1975) ............................................................. 8

People v Torres,
 222 Mich. App. 411 (1997) ......................................................... 14

People v VanderVliet,
 444 Mich. 52 (1993) ................................................................ 8

**COUNTER-STATEMENT OF JURISDICTION**

The People accept Defendant's Statement of Jurisdiction.

# QUESTIONS PRESENTED

## I.

Affirmative conduct waives the alleged error as an intentional relinquishment or abandonment.   Here, the prosecutor questioned a witness regarding his possible bias, only after defense counsel expressed his intent use the same evidence to prove the witness' motive to lie.   Does Defendant's waiver preclude appellate review?

> The People answer: YES
> Defendant answers: NO

## II.

Where defense counsel expressed satisfaction with the jury instructions as read, any error in the instructions given by the trial court has been extinguished.  Here, defense counsel stated he was satisfied with jury instructions which sufficiently charged the jury that the prosecutor must prove, beyond a reasonable doubt, that Defendant caused the victim's death. Does Defendant's waiver preclude appellate review?

> The People answer: YES
> Defendant answers: NO

## COUNTER-STATEMENT OF FACTS

The People accept Defendant's statements of facts.  Additional facts are included in the text.

# ARGUMENT

## I.

**Affirmative conduct waives the alleged error as an intentional relinquishment or abandonment. Here, the prosecutor questioned a witness regarding his possible bias, only after defense counsel expressed his intent use the same evidence to prove the witness' motive to lie. Defendant's waiver precludes appellate review.**

### Appellate Standard of Review

The People rejects Defendant's statement of the standard of review. While the decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion,[1] a voluntary *affirmative* conduct waives the alleged error as an intentional relinquishment or abandonment.[2] The Michigan Supreme Court also distinguished issue waiver from issue forfeiture, terms which have been common used interchangeably. The difference between waiver and forfeiture has important consequences: one who forfeits his rights by failing to assert them in a timely fashion does not lose the benefit of appellate review (there would be limited review under the "plain error standard of review), but a waiver precludes any review, because the waiver has extinguished any error.[3] In other words, plain error analysis does not apply because there is no "error" to correct.

---

[1] *People v Katt,* 468 Mich 272, 278 (2003).

[2] *Johnson v Zerbst,* 304 US 458, 464; 58 S Ct 1019, 1023; 82 L Ed 1461 (1938).

[3] *People v Carter*, 462 Mich 206, 215 (2000), citing *United States v Griffin,* 84 F3d 912, 934 (CA 7, 1996).

4

**Discussion**

Prior to the taking of testimony, defense counsel expressed his intention to expose witness Lavero Crooks' bias against Defendant arising from an incident where Crooks alleged that Defendant threatened him with a gun.  At the time, the trial court told defense counsel that he could bring out his claim of bias in his opening statement, but cautioned him that the prosecutor could "cut you off at the pass by bring up the bias himself" in his direct examination of the witness.[4] Defense counsel made no  motions to limit the prosecutor's presentation of evidence in any way.

In his opening statement, defense counsel challenged the People's burden to prove that Defendant was the shooter in this case.  The defense theory was that two months after the murder, the police "sweated" witness Jovan Johnson with threats that he would be charged with the murder. Consequently, in an effort to take the focus off himself, Johnson gave them Defendant's name. Similarly, defense counsel argued, Lavero Crooks, who "hangs with Jovan Johnson," told the police that Defendant committed the murder, two months after the fact.  Defense counsel suggested that the two witnesses had their own motives in waiting to come forth, and argued they were not worthy of belief.[5]

During direct examination, Lavero Crooks testified that he and Defendant *used* to be friends.[6] The prosecutor did, in fact, "cut [defense counsel] off at the pass" by questioning Crooks about when

---

[4]4/3/03, 3-4, 19-21.

[5] 4/3/03, 23-27.

[6]4/3/03, 98-109.

and how he and Defendant stopped being friends. Defense counsel objected to relevance. The trial court overruled, stating, "Well, no, I thought it would go for the reason for him to testify."[7]

Crooks went on to testify that he and Defendant were still friends on the date of this shooting. But on the night of November 9, 2002, Crooks, who had fallen asleep in his car, woke up to find Defendant pointing a pistol to Crooks' head, threatening to kill him, and saying, "you don't run this block. This is my block." Crooks' cousin grabbed the gun. Crooks testified that he called the police and reported the assault. The police followed Crooks to the house on Buena Vista and Linwood, where Defendant sold drugs. When Crooks drove up to the house, Defendant walked onto the porch. Crooks pointed Defendant out to police and Defendant ran back inside the house, after which the police arrested him.[8]

Crooks testified that the police had questioned him a couple of times about the September shooting, but that he did not cooperate. He was not promised anything in exchange for his testimony and was testifying of his own free will. Crooks denied that he was testifying against Defendant because Defendant put a gun to his head. He explained that he even dropped the charges against Defendant because he "couldn't take a man' freedom." But, Crooks stated he began to "feel bad because a person life was taken" and he wanted to be honest about it.[9]

On cross-examination, Crooks admitted that he knew Jovan Johnson. He also admitted that, although the police had questioned him about the shooting on three occasions, he did not start feeling badly about the victim until after he had a "beef" with Defendant. Crooks explained that, at first,

---

[7] 4/3/03, 110.

[8] 4/3/03, 110-115.

[9] 4/3/03, 116-117.

6

he did not want to tell the police what he knew because he was also selling drugs at the time. He explained that, if he was viewed as a "snitch," and, because Defendant had not been apprehended, cooperating with the police meant that Crooks would either have to kill Defendant or Defendant would have to kill him.[10] In closing, defense counsel argued that Crooks and Johnson colluded to frame Defendant for a murder that he did not commit, and suggested that Johnson was responsible for the victim's death.[11]

Now, on appeal, Defendant argues that the assault evidence was improperly admitted as evidence of bad character or to show Defendant's propensity to commit crimes. But, in spite of defense counsel's objection, his affirmative conduct in expressing his intent to use this evidence at trial, waived and relinquished any alleged error arising from the introduction of this evidence.[12] So, there should be no appellate review on this matter.

But, even if this Court finds that the defense did not waive error on appeal, this evidence was relevant and properly admitted.

Evidence of other crimes, wrongs, or acts is admissible when it is introduced for a legally relevant purpose, whether such other acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.[13] Other acts evidence is not admissible, "[i]f the proponent's *only* theory

---

[10]  4/3/03, 121-127, 152-156.

[11] 4/7/03, 63-86.

[12]*Johnson v Zerbst,* 304 US 458, 464; 58 S Ct 1019, 1023; 82 L Ed 1461 (1938).

[13]MRE 404(b)(1).

of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question."[14]

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probably or less probable than it would be without the evidence. Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delays, waste of time, or needless presentation of cumulative evidence.[15] The question of relevance is for the sound discretion of the court.[16]

Here, the evidence was introduced to resolve the issue of bias. Bias is a common-law evidentiary term used "to describe the relationship between a party and a witness ... in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest."[17]

The Rules of Evidence provide for cross-examination on any matter relevant to any issue in the case, including credibility.[18] The law recognizes that a proper purpose for admitting other acts evidence is to expose a witness' bias. In *People v Layher*,[19] the Supreme Court stated that evidence

_____

[14]*People v VanderVliet,* 444 Mich 52, 63 (1993), (emphasis added); also see *People v Crawford,* 458 Mich 376, 390 (1998).

[15] MRE 401, MRE 403.

[16] *People v Rimson, 63 Mich App 1 (1975).*

[17]*United States v  Abel,* 469 U S 45, 52, 105 S Ct 465, 83 L Ed2d 450 (1984); *People v Layher,* 464 Mich 756, 762 (2001).

[18] MRE 611(b).

[19]*People v Layher,* 464 Mich 756 (2001).

8

of bias is "always relevant" on cross-examination and that bias "arising from past arrest without conviction is admissible, if relevant, as long as its probative value is not substantially outweighed by the danger of unfair prejudice."[20]

Here, since it was the defense that expressed its intention to introduce the evidence of Crooks' assault allegation, the trial court did not make a balancing analysis on the record. The record, however, supports a finding that the potential for prejudice, in this case, did not substantially outweighs the probative value of the evidence.

All evidence offered by the parties is "prejudicial" to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded. This rule's major function is limited to "excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.... It is not designed to permit the court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none.[21] To admit other acts evidence the prosecutor must "weave a logical thread linking the prior act to the ultimate inference...demonstrating that the [prior bad acts] [establish] some intermediate inference, other than the improper inference of character, which in turn is probative of the ultimate issues in [the] case."[22]

---

[20]*Id* 464 Mich at 768. Also see *Hayes v Coleman,* 338 Mich 371, 381(1953)("It is always permissible upon the cross-examination of an adverse witness to draw from him any fact or circumstance that may tend to show his relations with, feelings toward, bias or prejudice for or against, either party, or that may disclose a motive to injure the one party or to befriend or favor the other").

[21] *United States v McRae,* 593 F 2d 700, 707 (CA 5, 1979).

[22] *Supra*, 458 Mich at 390-391.

Here, the prosecutor proffers the other acts evidence to expose potential bias and allow the jury to make the credibility assessments introduced and challenged by the defense.[23] Thus, the intermediate inference between the other acts evidence and the ultimate inference that defendant committed the crime charged is something other than Defendant's character.

Accordingly, Defendant cannot demonstrate that the trial court abused its discretion allowing the prosecutor to question the witness in this regard.

---

[23]The credibility of a witness may be attacked by any party, including the party calling the witness. MRE 607.

## II.

**Where defense counsel expressed satisfaction with the jury instructions as read, any error in the instructions given by the trial court has been extinguished.  Here, defense counsel stated he was satisfied with jury instructions which sufficiently charged the jury that the prosecutor must prove, beyond a reasonable doubt, that Defendant caused the victim's death.  The defense waived appellate review.**

### Appellate Standard of Review

The People rejects Defendant's statement of the standard of review. Where defense counsel expressed satisfaction with the jury instructions as read, any error in the instructions given by the trial court has been extinguished.[24]  Waiver *"extinguishes* any error" and precludes appellate review.[25]  So, even assuming the instructions given were erroneous, there is no error to review.[26]

With regard to Defendant's ineffective assistance of counsel claim, the People agree that the standard of review is *de novo*, as set forth in *Strickland* v *Washington*.[27]  Defendant must establish that counsel's made "errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." Defendant must also show that but for counsel's error there is a reasonable probability that the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable.   And it is counsel's overall

---

[24] *Supra, People v Carter*, 462 Mich at 214.

[25]*Id,* at 216.

[26]*People v Ortiz,* 249 Mich App 297, 311 (2001).

[27]*Strickland v Washington*, 466 US 668, 689, 104 S Ct 2052, 80 L Ed 2d 674 (1984).

performance that is reviewed.[28]  In *People v Pickens*,[29] this Court held that applying the *Strickland* "requires the greatest level of factual inquiry into the actual conduct of the defense and its effect on the outcome of the trial."  The defendant has the burden of proving that the defense attorney's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for the unprofessional errors the result of the proceeding would have been different.

**Discussion**

Defendant argues that the trial court's instructions on the causation elements of first and second degree murder were erroneous and, in essence, directed a verdict on those elements. However, because defense counsel expressed satisfaction with the jury instructions as read, any error in the instructions given by the trial court has been extinguished.[30]

What is more, this Court reviews jury instructions in their entirety to determine "if error requiring reversal occurred."[31]  There is no error requiring reversal if, on balance, the instructions fairly present the issues to be tried and sufficiently protect the defendant's rights.[32]

Defendant argues that the manner by which the court instructed the jury meant that, if the jury found that the victim died as a result of being shot, than regardless of the shooter's identify, the jury

---

[28]*Id*; *People v Coyle*, 104 Mich App 636 (1981).

[29] *People v Pickens*, 446 Mich 298, 318 (1994).

[30] 4/7/03, 120.

[31]*People v Aldrich*, 246 Mich App 101, 124 (2001).

[32]*People v McFall*, 224 Mich App 403, 414 (1997).

jury would have to convict Defendant. This argument takes a sentence of the instructions in isolation and ignores the jury instructions, as a whole.

The trial court instructed the jury as follows: "In order to establish this charge, the prosecution must prove each of the following elements beyond a reasonable doubt: First, that the defendant caused the death of Carlton Thomas. That is, that Mr. Thomas died as a result of being shot." The court instructed similarly with regard to the inferior offense of second degree murder.[33] These instructions were precisely as indicated by the standard jury instructions for first and second degree murder that the prosecution must prove, beyond a reasonable doubt, "that the defendant caused the death of [*name deceased*], that is, that [*name deceased*] died as a result of [*state alleged act causing death*]."[34]

Furthermore, the court also instructed the jury, "For the crime of First Degree Premeditated Murder, this means that the Prosecution must prove that the Defendant intended to kill Mr. Carlton Thomas," and, "[I]n order to convict the Defendant of First Degree Premeditated Murder requires proof of a specific intent. This means that the prosecution must prove not only that the Defendant did certain acts, but that when he did so he did so with the intent to cause a particular result."[35]

The defense consistently maintained that the witnesses' claim that Defendant was the perpetrator was self-serving and fabricated. Given the testimony presented and the theories argued, Defendant's jury understood that they had to find, beyond a reasonable doubt, that Defendant was the person who *caused* the victim's death.

---

[33] 4/7/03, 109-111.

[34] CJI2d 16.1.

[35] 4/7/03, 109-111.

13

Accordingly, because the instruction was not erroneous, counsel was not ineffective for failing to object to it. Defense counsel is not required to raise a meritless objection.[36]

For these reasons, Defendant's claim is without merit.

_____

[36]*People v Torres,* 222 Mich App 411, 425 (1997).

14

## RELIEF

**WHEREFORE,** this Court should affirm Defendant's conviction.


Respectfully submitted,
KYM L. WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research,
Training and Appeals

ANA QUIROZ P43552
Assistant Prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit, Michigan 48226
Phone: (313) 224-0981

Date: May 21, 2004.

# STATE APPELLATE DEFENDER OFFICE

SUITE 3300 PENOBSCOT • 645 GRISWOLD • DETROIT, MICHIGAN  48226-4281• 313.256.9833 • FAX 313.965.0372
CLIENT CALLS 313.256.9822

**JAMES R. NEUHARD**
DIRECTOR
**NORRIS J. THOMAS, JR.**
CHIEF DEPUTY DIRECTOR
**DAWN VAN HOEK**
DIRECTOR, CRIMINAL DEFENSE RESOURCE CENTER



**SHEILA ROBERTSON DEMING**
DEPUTY DIRECTOR, LANSING
**LANSING OFFICE**
340 BUSINESS AND TRADE CENTER
200 WASHINGTON SQUARE, NORTH
LANSING, MICHIGAN  48913
517.334.6069·FAX 517.334.6987

January 22, 2004

Clerk
Court of Appeals
Suite 14-300
3020 West Grand Boulevard
Detroit, MI 48202

> Re:    **People** v **Michon D. Houston**
> Court of Appeals No. 248742
> Lower Court No.  03-1609-01

Dear Clerk:

Enclosed are an original and four (4) copies of:

> Brief on Appeal - Oral Argument Requested
> Proof of Service

in the above captioned case which we request you file in your Court.

Sincerely,

Susan J. Smith
Assistant Defender

SJS: VMM
Enclosures
cc:    Wayne County Prosecutor
Michon D. Houston
File

# STATE OF MICHIGAN

# IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

               Plaintiff-Appellee,

-vs-

**MICHON D. HOUSTON**

               Defendant-Appellant.

_____/

**Court of Appeals No.** 248742

**Lower Court No.** 03-1609-01

**WAYNE COUNTY PROSECUTOR**

Attorney for Plaintiff-Appellee

_____

**SUSAN J. SMITH (P25619)**
Attorney for Defendant-Appellant

_____

## BRIEF ON APPEAL
## (ORAL ARGUMENT REQUESTED)

PROOF OF SERVICE

**STATE APPELLATE DEFENDER OFFICE**

**BY:**   **SUSAN J. SMITH (P25619)**
       **Assistant Defender**
       3300 Penobscot Building
       645 Griswold
       Detroit, Michigan  48226
       (313) 256-9833

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ i

STATEMENT OF APPELLATE JURISDICTION ...................................................... v

STATEMENT OF QUESTIONS PRESENTED ........................................................ vi

STATEMENT OF FACTS ........................................................................................ 1

I.      DEFENDANT WAS DENIED A FAIR TRIAL BY THE INTRODUCTION
        AND ARGUMENT OF EVIDENCE THAT HE HAD ASSAULTED
        PROSECUTION WITNESS LAVERO CROOKS WITH A GUN AND HAD
        THREATENED TO KILL HIM OVER DRUG TURF. .................................. 9

II.     THE TRIAL COURT'S INSTRUCTIONS ON THE CAUSATION
        ELEMENT OF MURDER DIRECTED A VERDICT ON THAT ELEMENT
        AND/OR SHIFTED THE BURDEN OF PROOF; COUNSEL'S FAILURE
        TO OBJECT CONSTITUTED INEFFECTIVE ASSISTANCE. ................... 19

SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT ........................ 26

SJS*Houston Brief on Appeal.doc*20043 1-22-04
Michon D. Houston

# TABLE OF AUTHORITIES

## CASES

Bay Circuit Judge, 174 Mich App 269 (1988) ................................................................24

Connecticut v Johnson, 460 US 73; 103 S Ct 969; 74 LEd 2d 823 (1983) ....................22

Francis v Franklin, 471 US 307; 105 SCt 1965; 85 LEd2d 344 (1985) ..........................24

Michelson v United States, 335 US 469; 69 S Ct 213; 93 L.Ed. 168 (1948) ..................14

Mullaney v Wilbur, 421 US 684; 95 S Ct 1881; 44 LEd 2d 508 (1975) .........................21

Notaro v United States, 363  F2d 169 (CA 9, 1966) ........................................................23

Old Chief v United States, 519 US 172; 117 SCt 644; 136 LEd2d 574 (1997) ........ 13; 14, 16

People v Allensworth, 401 Mich 67 (1977) .....................................................................21

People v Bennett, 393 Mich 445 (1975) ..........................................................................16

People v Carines, 460 Mich. 750 (1999) .................................................................. 19; 20

People v Carter, 462 Mich 206 (2000) .............................................................................24

People v Chamblis, 395 Mich 408 (1975) ........................................................................21

People v Cicotte, 133 Mich App 630 (1984) ....................................................................25

People v Clark, 340 Mich 411 (1954) ........................................................................ 21; 23

People v Crawford, 458 Mich 376 (1998) ..............................................................9, 13, 17

People v Dalessandro, 165 Mich App 569 (1988) ...........................................................24

People v Dolsen, 411 Mich 1045 (1981), rev'g 102 Mich App 378 (1980) .....................22

People v Dumas, 454 Mich 390 (1997) ......................................................................19, 21

People v Furman, 158 Mich App 302 (1987) ...................................................................18

i

People v Gallagher, 404 Mich 429 (1979)...................................................................22

People v Gaydosh, 203 Mich App 235 (1994)...........................................................21

People v Ginther, 390 Mich 436 (1973) .....................................................................25

People v Goddard, 429 Mich 505 (1988).....................................................................14

People v Hall, 249 Mich App 262 (2002).....................................................................19

People v Hall, 433 Mich 573 (1989)............................................................................14

People v Hayes, 410 Mich 422 (1981).........................................................................18

People v Hess, 214 Mich App 33 (1995)............................................................... 22; 23

People v Houstina, 216 Mich App 70 (1996)..............................................................20

People v Hudson, 123 Mich App 624 (1982)..............................................................22

People v Johnson, 393 Mich 488 (1975) .....................................................................13

People v Kenneth Johnson, 144 Mich App 125 (1985)...............................................25

People v Layher, 464 Mich 756 (2001) .......................................................................16

People v Lukity, 460 Mich 484 (1999).........................................................................9

People v Martzke, 251 Mich App 282 (2002) ............................................................16

People v McGillen, No.1, 392 Mich 251 (1974) .........................................................16

People v Mitchell, 223 Mich App 395 (1997) ............................................................13

People v Mitchell, 454 Mich 145 (1997)....................................................................20

People v Pickens, 446 Mich 298 (1994) .....................................................................20

People v Reed, 393 Mich 342 (1975) ..........................................................................21

People v Roby, 404  Mich 807 (1978) .........................................................................21

People v Sabin (After Remand), 463 Mich 43 (2000) .................................................15

ii

In re People v Schindler, 433 Mich 860 (1989), rev'g Bay County Prosecutor ............................24

People v Simons, 42 Mich App 400 (1972)...................................................................................14

People v Smith, 120 Mich App 429 (1982) ..................................................................................17

People v Stafford, 434 Mich 125 (1990) .....................................................................................18

People v Tice, 220 Mich App 47 (1996)........................................................................................22

People v Toma, 462 Mich 281 (2000) .........................................................................................20

People v Torres (On Remand), 222 Mich App 411 (1997) ...........................................................20

People v Ullah, 216 Mich App 669 (1996)........................................................................ 13; 17, 25

People v VanderVliet, 444 Mich 52 (1993)...................................................................................15

People v Vaughn, 447 Mich 217 (1994) .......................................................................................22

People v Whitfield, 425 Mich 116 (1986) ....................................................................................14

People v Wright, 408 Mich 1 (1980) ...................................................................................... 21; 22

Sandstrom v Montana, 442 US 510; 99 S Ct 2450; 61 LEd 2d 39 (1979) ..............................21, 22

Strickland v Washington, 466 US 668; 104 S Ct 2052; 80 LEd 2d 674 (1984)............... 20; 24; 25

United States v Daniels, 248 US App DC 198; 770 F2d 1111 (1985) ..........................................13

United States v Main, 113 F3d 1046 (CA 9, 1997) .......................................................................21

In Re Winship, 397 US 358; 90 S Ct 1068; 25 LEd 2d 368 (1970) ..............................................20

## CONSTITUTIONS

US Const, Am V ...........................................................................................................................9

US Const, Am XIV .......................................................................................................... 9, 19, 21; 22

Mich Const 1963, art 1, § 17.................................................................................................9, 19, 21

Mich Const 1963, art 1, § 20................................................................................9, 19

## STATUTES

MCL 750.224f ...........................................................................................1

MCL 750.227b ..........................................................................................1

MCL 750.316(1) .......................................................................................1

MCL 768.29 ............................................................................................20

## MICHIGAN RULES EVIDENCE

MRE 401 ...................................................................................................15

MRE 402 ...................................................................................................15

MRE 403 .............................................................................................15; 17

MRE 404(b)(1) ...................................................................................14; 15; 17

## STATEMENT OF APPELLATE JURISDICTION

The judgment of conviction was entered on April 4, 2003; the judgment of sentence was entered on April 22, 2003; Defendant requested counsel on May 6, 2003; the claim of appeal was filed on May 22, 2003.  The State Appellate Defender Office was appointed as appellate counsel on May 22, 2003.

Jurisdiction is conferred on this Court by Const 1963, art 1, §20; MCL 600.308(1), MSA 27A.308(1); MCL 770.3, MSA 28.1100; MCR 6.425(F)(3); MCR 7.203(A); and MCR 7.204.

## STATEMENT OF QUESTIONS PRESENTED

I.      WAS DEFENDANT DENIED A FAIR TRIAL BY THE INTRODUCTION
        AND ARGUMENT OF EVIDENCE THAT HE HAD ASSAULTED
        PROSECUTION WITNESS LAVERO CROOKS WITH A GUN AND HAD
        THREATENED TO KILL HIM OVER DRUG TURF?

                Trial Court answers, "No".

                Defendant-Appellant answers, "Yes".


II.     DID THE TRIAL COURT'S INSTRUCTIONS ON THE CAUSATION
        ELEMENT OF MURDER DIRECT A VERDICT ON THAT ELEMENT
        AND/OR SHIFT THE BURDEN OF PROOF; DID COUNSEL'S FAILURE
        TO OBJECT CONSTITUTE  INEFFECTIVE ASSISTANCE?

                Trial Court made no answer.

                Defendant-Appellant answers, "Yes".

# STATEMENT OF FACTS

Michon Houston was convicted by jury on April 7, 2003, of first degree premeditated murder[1], felon in possession of a firearm[2], and felony firearm[3], in Wayne County Circuit Court, the Honorable Vera Massey Jones presiding.    Defendant was sentenced on April 22, 2003, to mandatory life and 1 ½ to 5 years, consecutive to 2 years.

It was the prosecution's theory that, on September 6, 2002, at around 5:00 am, Defendant repeatedly shot and killed Carlton Thomas.

Lavero Crooks testified that he had known Defendant since July of 2002, and that they had been friends. (II 101)[4].    On the date in question, Crooks was selling ("grinding") crack cocaine in the area of Linwood and Buena Vista. (II 98).    He had been out there the entire night, sitting in his car, a 1984 Cutlass.    He was parked on Buena Vista, in front of a house next to a vacant lot. (II 99-100, 151).    There was a pile of debris in the vacant lot, next to where he was parked. (II 124, 143).    At around 5:00 am, Defendant, Defendant's girlfriend "Powder", and Jovan Johnson ("JW"), were on the porch of a residence on Buena Vista that was across from the vacant lot. (II 102).    Both Johnson and Defendant sold drugs. (II 127-128).    They all regularly used this porch to sell drugs, and Crooks had spent the previous night at that residence.[5](II 102-103).

---

[1] MCL 750.316(1)(a).
[2] MCL 750.224f.
[3] MCL 750.227b.
[4] The transcripts are referred to as follows: I = 4/2/03; II =4/3/03; III = 4/7/03.
[5] A woman named "Lisa" lived there. (II 140, 166, 193).

1

Crooks continued that he observed someone walking through the vacant lot. (II 103). He recognized the man as someone who regularly bought drugs from Jovan Johnson. Crooks explained that the normal procedure would be for the sellers to race up to a prospective customer.(II 104). Defendant approached the man[6], and asked what he needed. (II 147-148). Crooks heard Defendant say, "Oh, you ain't gonna deal with me, this is my block."(II 106-107, 130). The man responded that he could deal with whomever he wanted to. (II 107). Defendant crossed back to the house, went inside, came out with his .40 caliber gun, and fired a shot from the porch. (II 106-107, 131-133, 140)[7]. The man tried to run, then fell on his stomach in the grass, near one of the two trees in the lot. (II 107-108, 135). Defendant went over and rolled the man over onto his back.(II 108-109, 135). Defendant said, "I shot that nigga in his face, first shot." Defendant searched the man's pockets, then started firing more shots. ."(II 109, 135-136).

Crooks drove off. (II 109). He took the young lady that was with him in his car, and who had also witnessed the shooting, to her home.(II 110, 125). He returned to the area at around 6:30 am, and saw that there were lots of police there. He offered no information. (II 146-147, 152)

Over defense objection, the prosecutor questioned Crooks about the circumstances ending his friendship with Defendant. (II 110). Crooks testified that, sometime in

---

[6] The witness changed this on cross-examination, saying that Defendant and Johnson both went towards the field, but that Johnson then went back to the porch. He did not hear Johnson say anything to the man. (II 147-148).
[7] On cross-examination, Crooks changed this to Defendant firing two shots from the sidewalk.(II 134-135).

November of 2002, he fell asleep in his car on the block, and woke up to find Defendant with a gun to his head, threatening to kill Crooks if he did not get off the block, telling Crooks it was his block. Defendant's cousin grabbed the gun, and Crooks got away. Crooks reported this incident to the police, but did not mention the shooting. (II 110-111, 138).

Crooks continued that, on November 9, 2002, Officers Adams and Moss came to his house, and he told them that he knew how to find Defendant. He told the officers that if he drove through the Buena Vista and Linwood area, where they sold drugs every day, with his music on, Defendant "would run out with a gun shooting."(II 112). Everyone in the area knew Crooks's car. (II 113). Per their plan, Crooks parked by the vacant lot, and Defendant and his cousins ran out of a house, a four family flat. (II 114). There were a lot of police there, and Defendant ran back inside. (II 114). The police searched the house, and eventually brought Defendant out.(II 115).

Crooks further provided that, on November 11, 2002, he went to 1300 Beaubien and gave a statement about the shooting at bar.(II 115). He denied that he had been promised anything to testify in this case, or that he was testifying because Defendant had put a gun to his head. (II 116).

On cross-examination, Crooks admitted he never told the police that someone was in the car with him the morning of the shooting. (II 125). He also admitted that he never told the police that Defendant had searched the deceased's pockets. (II 125, 136). He also acknowledged that the police had confronted him three times about the shooting,

3

before he made a statement. (II 126). They had come to Linwood and Buena Vista while he was out there selling drugs.(II 127). Each time, he had denied knowing anything. (II 150, 155). One time, the investigators apprehended him.(II 156). He claimed to have seen Defendant with the .40 caliber gun plenty of times, but agreed he never told that to the police either. (II 136-137). He denied that the debris or the weeds in the vacant lot blocked his view that morning (II 144), despite photographs taken by the police at the scene that indicated to the contary (II 142-144)[8]. He never saw the deceased run around to the back side of one of the trees in the lot. (II 152).

Crooks further acknowledged that Jovan Johnson was his friend, but denied knowing, at the time he made the statement implicating Defendant in the shooting, that Johnson had been arrested on some charges. (II 144-145).

Jovan Johnson ("JW") testified that, at the time in question, he had known Defendant for about a year. (II 160). In the early morning hours of September 6, 2002, he and Defendant and Powder were drinking at a motorcycle club for a few hours, and then, at around 4:00 or 5:00 am, went to a house at Linwood and Buena Vista, where the two men would regularly sell drugs.(II 162-163, 173, 187-188, 193-195). Lavero Crooks sold in the same area, but there was no bad blood between them.(II 163, 187, 196).

Johnson continued that he, Defendant, and Powder were sitting on the porch, right across from the vacant lot, when they saw a man cutting through the lot. (II 163-164). Johnson recognized him as someone to whom he had sold crack a few times.(II 188).

_____

[8]   See also, the defense cross-examination of the evidence technician as to the photographs, Pros Ex ## 4, 5, 8, 9, at II 88-97; and the defense closing argument at III 71-72.

4

Defendant and Johnson both yelled to him, to find out what he needed. (II 164, 188). Johnson stayed on the porch, and Defendant went to the vacant lot and talked to the man.(II 165). There was some conversation, which became more heated, and then Johnson heard Defendant yelling, "Bitch."(II 167, 186, 190). Defendant chased the man around the tree, and then Defendant fired two or three shots. (II 167-168, 190, 198). The man fell on his back, near the tree.(II 168). Defendant stood over the fallen man, and fired two or three times. (II 168-169). Defendant returned to the porch, and ordered Johnson to go check if the man was dead.(II 170). Defendant had a gun in his hand; Johnson had never seen it before. (II 171, 186). Johnson determined that the man was still breathing, but told Defendant he was dead.(II 171, 200). Defendant and Johnson drove off, but Powder refused to get in the car. (II 172, 201).

Johnson did not see Lavero Crooks or anyone else out there that morning. (II 175, 195-196). He was familiar with Crooks' blue 1984 Cutlass. (II 196). He denied that Defendant had returned to the house to get the gun. (II 187). He did not see Defendant turn the man over, or go through his pockets. (II 191, 211). Johnson did not go through the man's pockets either, when he checked on him.(II 210).

Johnson continued that, within a week of the shooting, the police attempted to question him about it, but he told them he knew nothing. (II 183-184). Sometime later, he "caught a drug case" and was in jail. (II 173). On November 17, 2002, homicide detectives came to talk to him about the shooting, and told him that he would not go to jail "for accessory" if he cooperated with them.(II 174-175, 178). The detectives

5

provided him with many details about the shooting(II 179), and told him that they knew he might be involved.(II 182). He agreed that they threatened to charge him with first degree murder if he did not give a statement. (II 182, 183, 204-205). He had not spoken to anyone about the shooting before this. (II 183).

Officer Williams testified that he was the first officer to arrive on the scene, the 2600 block of Buena Vista, at about 5:50 am. (III 5). He observed Thomas in the field, in front of a tree. (II 218-220). Thomas was still alive, but did not give the name of his assailant.(II 222-223, 234). He was about 1 ½ to 2 feet from the blood on the ground.(III 8). Williams preserved the scene. (II 226; III 6). He did not recover any shell casings. (III 6). After EMS arrived, Williams canvassed the area, but no one had witnessed the shooting. (II 224-226; III 6). He described the area as one with high drug trafficking.(II 227).

Officer Carpenter, an evidence technician, arrived at the scene at 7:30 am. (II 69-70). The deceased had already been removed. (II 75, 88-89). Carpenter observed blood under one of the two trees in the vacant lot.(II 73). There was no evidence that the body had been dragged. (II 76, 84). He searched the area for casings and bullets, but found nothing. (II 75, 85, 88). The trees were in full foliage, the grass was tall and overgrown, and there was a lot of debris in the lot, including a large pile.[9] (II 75, 79-80, 84, 90-92, 94). There were four residential houses across the street. (II 77). He measured 72 feet

---

[9] Officer Williams also testified to there being a large pile of debris on the lot, and that the car he was in was past the debris when he saw Thomas. (II 231-233; III 4-5).

6

from the blood to the curb on Buena Vista, and about 120 feet from the blood to the porch area of the residences on the north side of the street.(II 76-77, 96).

Officer Adams testified to interviewing Lavero Crooks about his complaint of a felonious assault by Defendant, and their plan for Defendant's arrest on November 9, 2002.(III 9-16, 27).     Crooks believed Defendant would be at 2675 Buena Vista.(III 13). The officers knew that Crooks sold drugs in that area.(III 14).  When Crooks parked and exited his vehicle, the neighborhood grew quiet and Defendant came out onto the porch of the four family flat.(III 16, 18).  Crooks and Defendant yelled at one another, and Crooks yelled to the police that this was "the motherfucker."(III 17, 29).  Williams and his partner, in plain clothes (III 28, 30), ran towards Defendant and announced that they were police.  Defendant ran back inside. (III 18, 30.  The police found him in a locked unoccupied lower flat, and arrested him. (III 20-21).  Defendant was unarmed, and there was no weapon in the flat. (III 24-25, 27-28).  Adams interviewed Lavero Crooks again on November 13, 2003. (III 25-26).

Officer Bastianelli testified that he collected Carlton Thomas's clothing from the hospital. (II 214-215).  There was no currency or identification in his belongings.(II 216).

Dr. Nora performed the autopsy.  The deceased was shot four times: to the knee, front to back, with a slightly downward angle; to the front left side of the abdomen above the hip, front to back and slightly downward; to the left side of the abdomen, front to back, but exiting on the right side; and to the right cheek, back to front and slightly downward, exiting and re-entering near the lip. (II 34, 39-43, 45-46, 51, 57).  While it

was possible that the first three shots could have been fired while the deceased was on the ground, the trajectories were "a little bit difficult" for this theory. (II 62-63). There was no evidence of close-range firing; however the clothing had not been available for analysis. (II 47-48). No bullets were recovered. (II 42, 65). There were scrapes on the knees, consistent with falling near the time of death. (II 46). Alcohol and cocaine were both present in the deceased's system. (II 48-50).

The parties stipulated that, on September 6, 2002, Defendant was ineligible to carry a firearm because of a prior felony conviction.(III 32).

Both the prosecution and the defense rested.

Other facts will be added as necessary in the issues following.

**I.    DEFENDANT WAS DENIED A FAIR TRIAL BY THE INTRODUCTION AND ARGUMENT OF EVIDENCE THAT HE HAD ASSAULTED PROSECUTION WITNESS LAVERO CROOKS WITH A GUN AND HAD THREATENED TO KILL HIM OVER DRUG TURF.**

Over defense objection, the prosecution introduced evidence that Defendant had allegedly assaulted prosecution witness Lavero Crooks with a gun and had threatened to kill Crooks over drug turf, convincing Crooks that he would either have to kill Defendant or be killed by him. This evidence was repeatedly brought before the jury, and the jury was not given any limiting instruction as to how to use this evidence. This denied Defendant a fair trial, and constituted reversible error. US Const, Ams V, XIV; Const 1963, art 1, §§ 17, 20.

The **STANDARD OF REVIEW** for admission of similar acts evidence is for an abuse of discretion. People v Crawford, 458 Mich 376, 383 (1998). For preserved non-constitutional error, reversal is required if it is more probable than not that a different outcome would have resulted without the error. People v Lukity, 460 Mich 484, 495 (1999).

By way of background, before trial commenced, defense counsel explained to the trial court that prosecution witness Lavero Crooks was a complainant against Defendant in another unrelated case, and that he had not come forward in the case at bar until the other incident occurred. The defense wanted to bring that up, without opening the door and effectively trying that case as well. Defense counsel asked the trial court for a ruling as to how far this line of inquiry could go, if simply asking the witness if he did not come

9

forward until he had a "beef" with Defendant would open the door. The trial court refused to do so in advance of the proofs (II 19-22), explaining "I am not your lawyer…I am not going to give you any legal advice because that's not what I get paid for…" (II 20).

When Mr. Crooks testified, the prosecutor questioned him as follows on direct examination, over defense objection:

> Q      And you said at least at one point you were friends?
>
> A      Yes, sir.
>
> Q      When did that all end?
>
> A      I don't remember exact, but one day I was smoking on the block and I fell asleep.
>
> MR. LANKFORD:  Objection.
>
> THE COURT:  Basis of the objection?
>
> MR. LANKFORD:   This leads into an irrelevant area, Your Honor.
>
> THE COURT:  Well, no, I thought it would go for the reason for him to testify.  I'll overrule the objection.
>
> BY MR. HASSINGER:
>
> Q      First, sir, just to get a time frame.  I asked you when did your friendship with Mr. Houston end?  On the date of this shooting, on September 6th, 2002, did you consider Mr. Houston your friend?
>
> A      Yes, sir.
>
> Q      Did there came [sic] a time in November of 2002 when your friendship came to an end?

10

A        Yes, sir.

Q        Why did it come to an end?

A        Sir, I woke up in my car about 10:30, eleven and I had a pistol grip pumped to my head with Sean telling me if pull off, try to pull off he'll kill me, and you don't run this block. This is my block. And the only thing I can ask him is why. I ain't done knowing [sic] to you. What's wrong with you. So his cousin grabbed the gun. That's the only reason he didn't shoot.

MR. LANKFORD:  Objection, now we're getting irrelevant, Judge.

THE COURT:   Sustain, it's stricken.   The jury's told to disregard it.

MR. HASSINGER:

Q        So some time in November Mr. Houston comes at you with some type of weapon?

A        Yes, sir.

Q        Are you able to get away from Mr. Houston at that time?

A        Yes, sir.

Q        Do you report that to the police?

A        Yes, sir. (II 110-111).

In response to further questioning by the prosecutor, this incident was again referenced by the witness: "And then I thought there was a point where I held myself for me trying to kill him to putting a gun to my head."(II 116).  Further questioning by the prosecutor about this incident was as follows:

11

"Q      Is it fair to say you're here today because the defendant put that gun to your head?

A      No, sir.

Q      Why not?

A      Because I had left when he put the gun to my head, I had charges for that, but I left it alone and dropped the charges because I felt like I couldn't take a man's freedom. But then after I was being questioned about the murder I felt bad because a person life was taken and I knew what happened and I was there even though I didn't have anything to do with it.

So if it would make me rest easy because I was put in that predicament I could have been him for getting killed, you know, so I call myself changing my life so I thought I'd just be honest about it." (II 116-117).

Note that, on cross-examination, defense counsel only asked Mr. Crooks about his coming forward for the first time after his "beef" or problem with Defendant. (III 122-123, 138).

In closing statement, the prosecutor argued that Crooks came forward

"Because Mr. Houston started to come after him. And he told you from the witness stand that he realized that when Mr. Houston started to come after him, it was either going to be him or Mr. Houston. One of them was going to have to die.

He chose a third option. He decided, well, at this point I'll get the police involved because he didn't want to have to kill Mr. Houston, and he certainly didn't want Mr. Houston killing him."(III 65-57).

The defense was put in the position of having to reference the alleged assault against Crooks in closing argument as well:

12

> "Well, you know, Lavero, I came forward because problems
> with Mr. Houston and it involved a gun. And you know it's
> so easy low [sic] and behold, anybody seen a gun here.
> Nope. We got two diagrams, seven photos. That's it. No
> gun. Easy. He came after me with a gun." (III 73).

In rebuttal, the prosecutor responded:

> "Mr. Crooks does cooperate with the police and he told you
> why. If he didn't cooperate with them either he was going to
> have to kill Mr. Houston or Mr. Houston was going to kill
> him."(III 95).

The jurors were given no instructions as to how to use the evidence of Defendant's alleged armed assault on Crooks.

The admission of this evidence denied Defendant a fair trial. As a general rule, evidence tending to show the commission of other criminal offenses or acts by a defendant evidencing bad character is inadmissible to prove guilt of the charged offense. The recognized danger is that the jury will be diverted from an objective appraisal of the accused's guilt, and convict because they perceive the accused to be bad or dangerous. Old Chief v United States, 519 US 172; 117 SCt 644; 136 LEd2d 574 (1997); People v Crawford, supra; People v Mitchell, 223 Mich App 395, 397 (1997); People v Johnson, 393 Mich 488 (1975); People v Ullah, 216 Mich App 669, 676 (1996). The prohibition "reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence." Crawford, supra at 384, quoting United States v Daniels, 248 US App DC 198, 205; 770 F2d 1111 (1985).

As stated by the United States Supreme Court:

> "Courts that follow the common-law tradition almost
> unanimously have come to disallow resort by the prosecution

13

to any kind of evidence of a defendant's evil character to
establish a probability of his guilt. Not that the law invests
the defendant with a presumption of good character, ... but it
simply closes the whole matter of character, disposition and
reputation ... The inquiry is not rejected because character is
irrelevant; on the contrary, it is said to weigh too much with
the jury and to so overpersuade them as to prejudge one with
a bad general record and deny him a fair opportunity to
defend against a particular charge. The overriding policy of
excluding such evidence, despite its admitted probative
value, is the practical experience that its disallowance tends
to prevent confusion of issues, unfair surprise and undue
prejudice." Michelson v United States, 335 US 469,
475-476; 69 S Ct 213, 218-219; 93 L.Ed. 168 (1948)
(citations and footnotes omitted), as quoted in Old Chief,
supra, 136 LEd 2d at 588.

Michigan courts have repeatedly reversed where such evidence has created the
danger of a conviction based upon a defendant's propensity to commit crimes rather than
upon the evidence of his conduct in the case at issue. In addition to those cases cited
above, see also, People v Hall, 433 Mich 573, 579 (1989); People v Goddard, 429 Mich
505 (1988); People v Whitfield, 425 Mich 116, 128-134 (1986); People v Simons, 42
Mich App 400, 403-404 (1972).

The bar against using evidence of other crimes, wrongs, or acts of an individual to
prove a propensity to commit such acts is incorporated into MRE 404(b)(1), which also
describes the legitimate uses for such evidence:

"Evidence of other crimes, wrongs, or acts is not admissible to prove
the character of a person in order to show that he acted in conformity
therewith. It may, however, be admissible for other purposes, such
as proof of motive, opportunity, intent, preparation, scheme, plan, or
system in doing an act, knowledge, identity, or absence of mistake or
accident when the same is material, whether such other crimes,

14

wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b)(1).

In <u>People</u> v <u>VanderVliet</u>, 444 Mich 52 (1993), the Michigan Supreme Court clarified the standards of admissibility under this rule:  the evidence must be for a proper purpose under MRE 404(b), it must be relevant to that purpose, and its probative value must outweigh unfair prejudice.

<u>VanderVliet</u> emphasized that logical relevance is the "touchstone" of admissibility for this type of evidence. <u>Id</u> at 61.  "Relevant evidence" is defined in MRE 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  If the only relevance is to show the accused's "defect of character" or "inclination to wrongdoing," or that he had the propensity to commit this type of crime, the evidence is not admissible. <u>Id</u> at 63.  In <u>People</u> v <u>Sabin (After Remand)</u>, 463 Mich 43 (2000), the Michigan Supreme Court reiterated <u>VanderVliet</u>'s direction to trial courts to focus on what are really the disputed issues in the case, and not on what is merely "technically relevant."

Under MRE 402, "All relevant evidence is admissible," unless in contravention of constitution or court rule, or, per MRE 403, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."  As stated by the United States Supreme Court, "The term 'unfair

prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged...  commonly, though not necessarily, an emotional one." Old Chief, supra, 36 LEd2d at 589 (citations omitted).

It must be kept in mind here that it was not alleged that the assault and threat to kill Crooks was made in an attempt to keep Crooks from testifying against Defendant, and in fact, did not prevent Crooks from fully supporting the prosecution's theory.  The assault and threat were unrelated to the charged offense, and involved a dispute between two drug dealers over who could sell where.  This incident, much less the specific details, was of no relevance to the prosecution, other than to show that Defendant was armed, threatening, and assaultive.  Nor can the prosecution introduce evidence just for the purposes of rebutting it.  See eg, People v McGillen, No.1, 392 Mich 251 (1974); People v Bennett, 393 Mich 445, 449-450 (1975).  See also, People v Layher, 464 Mich 756, 768 (2001); People v Martzke, 251 Mich App 282, 292 (2002) (recognizing that evidence of bias is always relevant *on cross examination*).

While Crooks' anger and resentment against Defendant in the unrelated matter were relevant to the defense, to show a reason why Crooks might be motivated to falsely accuse Defendant of shooting the deceased, it cannot be claimed that the defense had opened the door, not yet even having had the opportunity to question the witness.  Further, as indicated above, the defense attempted to get a ruling from the trial court, limiting the evidence to that which was relevant:  that Crooks did not come forward in

16

the case at bar before he was angry with Defendant about an unrelated dispute.  And where the judge had refused to make the ruling, it cannot be assumed that the defense would have risked opening the door by even broaching the subject.

Even, assuming *arguendo,* that the evidence was relevant, it nonetheless should have been excluded as being more prejudicial than probative.  MRE 403.  It painted Defendant as being armed, dangerous, and assaultive, qualities obviously inflammatory in themselves, but even more so because the charged offense involved a ruthless assault with a gun.  When the prior act and the charged crime are similar, the risk is severe that the jurors will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, with a propensity for this type of crime.  See People v Crawford, supra at 397-398.

The prosecutor also erred by not making a motion in advance, as is required by MRE 404(b)(2)[10].  See People v Ullah, 216 Mich App 669, 676 (1996).  It is also clear that the trial court had the discretion to limit what evidence could come in, and could have excluded the damaging details.  Cf, People v Ullah, supra at 674("The trial court has a duty to limit the introduction of evidence and the arguments of counsel to relevant and material matters…and to assure that all parties…receive a fair trial"); People v Smith, 120 Mich App 429, 435-438 (1982) (a portion of a defendant's statement may be

---

[10] "The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination."

excluded from evidence by a trial judge acting in his discretion when that portion

includes information that is irrelevant or unduly prejudicial). By abdicating its discretion,

the trial court abused it. A failure to exercise discretion where a decision was required

constitutes an abuse of discretion. People v Stafford, 434 Mich 125, 563 (1990); People v

Hayes, 410 Mich 422 (1981); People v Furman, 158 Mich App 302, 332 (1987).

The prosecution's introduction of this evidence cannot be considered harmless. It

was given much emphasis by its repetition in the testimony and in the closing arguments.

The only evidence linking Defendant to the killing was the testimony of Lavero Crooks

and Jovan Johnson, and there were many reasons to doubt their testimony. Both were

admitted crack cocaine dealers, and neither came forward for months after the crime, until

it was in their respective self interest. Moreover, the two men told such different stories

that it was inconceivable that they had actually witnessed the same event. There was no

weapon or physical evidence tying Defendant to the scene or the killing, and no

admissions by Defendant. Moreover, the motive for Defendant to have shot Mr. Thomas

was so trivial as to be incomprehensible. The evidence that he assaulted Crooks on a

prior occasion, and threatened to kill him, could well have convinced the jury that he was

so dangerous he would not need a motive to kill. On these facts, the jury could well have

entertained a reasonable doubt but for the similar acts evidence. Reversal is required.

II.    **THE TRIAL COURT'S INSTRUCTIONS ON THE CAUSATION ELEMENT OF MURDER DIRECTED A VERDICT ON THAT ELEMENT AND/OR SHIFTED THE BURDEN OF PROOF; COUNSEL'S FAILURE TO OBJECT CONSTITUTED INEFFECTIVE ASSISTANCE.**

In the final charge, the trial court instructed the jury that the first element of first degree murder was that, "[T]he defendant caused the death of Carlton Thomas. That is, that Mr. Thomas died as a result of being shot." (III 109). The Court then repeated the instruction on first degree murder, with the same causation instruction. (III 110). Again, for second degree murder, the Court instructed that the first element was that, "[T]he defendant caused the death of Carlton Thomas. That is, that Mr. Thomas died as a result of being shot." (III 112). The Court repeated this as well.(III 113).

In other words, what the Court repeatedly told the jury was that, if Mr. Thomas died as a result of being shot, which he indisputably did, then Defendant caused the death and this element was established. In a case where the only defense was that Defendant was not the person who shot the deceased and caused his death, this instruction denied Defendant a fair trial and was reversible error. US Const, Am XIV; Const 1963, art 1, §§ 17, 20.

**STANDARD OF REVIEW:** Claims of instructional error are reviewed de novo. People v Hall, 249 Mich App 262, 269 (2002). The appellate court examines a trial court's jury instructions as a whole, to determine if they adequately protected the defendant's rights by fairly presenting the issues to be tried. People v Dumas, 454 Mich 390, 396 (1997). Unpreserved claims of instructional error are reviewed for plain error

that affected the defendant's substantial rights. <u>People</u> <u>v</u> <u>Carines</u>, 460 Mich. 750, 761-764 (1999). Failure to object to jury instructions waives error unless relief is necessary to avoid manifest injustice. MCL 768.29; <u>Carines</u>, <u>supra</u>. Manifest injustice occurs when an erroneous or omitted instruction pertained to a basic and controlling issue in the case. <u>People</u> <u>v</u> <u>Torres</u> <u>(On Remand)</u>, 222 Mich App 411, 423 (1997).

The question of whether Defendant's right to effective assistance of counsel was violated also calls for de novo review. <u>People</u> v <u>Toma</u>, 462 Mich 281 (2000); <u>People</u> v <u>Houstina</u>, 216 Mich App 70, 73 (1996). To establish ineffective assistance, the defendant must demonstrate errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Second, the defendant must show that his counsel's deficient performance prejudiced the defense, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Strickland</u> v <u>Washington</u>, 466 US 668; 104 S Ct 2052; 80 LEd 2d 674 (1984); <u>People</u> v <u>Pickens</u>, 446 Mich 298 (1994); <u>People</u> v <u>Mitchell</u>, 454 Mich 145 (1997).

The instructions at bar can be viewed as either creating a presumption that Defendant had to overcome and which thereby shifted the burden of proof, or as effectively removing an element from the jury's consideration. At best, Defendant had to overcome the presumption that he was the perpetrator of the murder. At worst, the jury assumed from the instructions that Defendant's identity as the killer was a given. In either case, reversal is required.

The prosecutor's burden of proving all the elements of a crime beyond a reasonable doubt is constitutionally mandated, In Re Winship, 397 US 358; 90 S Ct 1068; 25 LEd 2d 368 (1970); People v Wright, 408 Mich 1 (1980); US Const, Am XIV; Const 1963; Art 1, § 17.  Thus it has been repeatedly held that a jury instruction which shifts the burden of proof to defendant or which is susceptible to such interpretation violates the defendant's right to due process, Mullaney v Wilbur, 421 US 684; 95 S Ct 1881; 44 LEd 2d 508 (1975); Sandstrom v Montana, 442 US 510; 99 S Ct 2450; 61 LEd 2d 39 (1979); People v Clark, 340 Mich 411 (1954).  Instructions which lessen the burden of proof are similarly treated.  People v Dumas, supra (reversible error where the instruction permitted the jury to return felony murder verdict without determining that the accused had a malicious state of mind); People v Gaydosh, 203 Mich App 235, 237 (1994) (reversible error in resisting and obstructing trial to instructing that defendant's refusal to consent to blood test was sufficient resistance to support conviction; instruction was tantamount to directed verdict, freed prosecution from its obligation to prove each element of crime beyond reasonable doubt, and shifted burden of proof).

Likewise, it has repeatedly been declared that, in the absence of an understandingly tendered waiver by the defendant, it is reversible error for a trial court to instruct the jury that an essential element of the crime charged has been established. United States v Main, 113 F3d 1046, 1049-1050 (CA 9, 1997) (reversing manslaughter conviction where the trial court's instructions removed the factual question, of whether the victim's death was within the risk created by the defendant's conduct, from the jury);

People v Reed, 393 Mich 342, 348-351 (1975); People v Chamblis, 395 Mich 408, 420-423 (1975); People v Allensworth, 401 Mich 67, 68-71 (1977); People v Roby, 404 Mich 807 (1978); People v Gallagher, 404 Mich 429, 438 (1979); People v Tice, 220 Mich App 47, 53-55 (1996).

Burden-shifting instructions generally are considered so antithetical to basic due process that reversal is often required even without an objection, Connecticut v Johnson, 460 US 73; 103 S Ct 969; 74 LEd 2d 823 (1983); People v Dolsen, 411 Mich 1045 (1981), rev'g 102 Mich App 378 (1980); People v Wright, 408 Mich 1, 19 (1980); People v Hudson, 123 Mich App 624 (1982), and in the face of otherwise correct instructions on the burden of proof, Sandstrom v Montana, supra; People v Wright, supra, unless the error is harmless beyond a reasonable doubt. The same is true of instructions which remove an element or defense from jury consideration. See People v Hess, 214 Mich App 33 (1995); People v Tice, supra (opinion does not indicate that there was an objection, only that the defendant contested the element).

The error was not harmless. The question is whether that jury, properly instructed, could have reached a different result. People v Vaughn, 447 Mich 217, 238 (1994). The only evidence linking Defendant to the killing was the testimony of Lavero Crooks and Jovan Johnson. Both were admitted crack cocaine dealers, and, according to Crooks, both were friends. Neither came forward for months after the crime, until it was in their respective self interest. Crooks did not accuse Defendant of the killing until after Defendant had allegedly assaulted and threatened him over drug turf. Johnson did not

accuse Defendant until after he found himself in jail on a drug charge, and feared he would be implicated in the murder.  Moreover, the two men told such different stories that it was inconceivable that they had actually witnessed the same event.  For instance, Crooks described a scenario where Defendant went to the man in the field, argued with him over whom he could buy drugs from, crossed back to the house, went inside, came out with a gun, fired the initial shots from the porch, returned to the field, turned the fallen man over onto his back, rifled through his pockets, and then fired some more.  Johnson, by contrast, testified that Defendant went to the man in the field, argued with him, chased the man around the tree, and fired at him.  He denied that Defendant returned to the house for a gun, fired from the porch, turned the man over, or went through his pockets.  There were also differences in their testimony as to who said what, whether Johnson left the porch, etc.  Johnson also testified that he did not see Crooks out there that morning, although he knew Crooks' car and Crooks claimed it was parked right there.  There was no weapon or physical evidence tying Defendant to the scene or the killing, and no admissions by Defendant.  The motive for Defendant to have shot Mr. Thomas is incomprehensible.  This was a case where the jury could well have entertained a reasonable doubt and found that the prosecution had not sustained it burden of proof, but for the above instructions on causation.

Nor was the error corrected by other instructions.  The contested instruction on causation was given repeatedly.  Further, where both correct and incorrect instructions are given, it is presumed that the jury followed the incorrect one.  People v Clark, 340 Mich

23

411 (1954); People v Hess, supra at 37. This principle is particularly applicable where incorrect instructions are more specific than the correct ones. Notaro v United States, 363 F2d 169, 176 (CA 9, 1966). See also Francis v Franklin, 471 US 307, 319; 105 SCt 1965; 85 LEd2d 344 (1985). The error here was plain, and affected Defendant's substantial rights.

Although defense counsel, when asked by the Court, expressed satisfaction with the jury instructions as a whole (III 120), this issue should nonetheless be reviewed for plain error. While an issue that has been waived may not be raised on appeal, People v Carter, 462 Mich 206, 214 (2000), it is likewise true that "waiver" is "the intentional relinquishment or abandonment of a known right." Id at 215. Where counsel proposes an instruction, or discusses and agrees to a specific instruction, this is fairly interpreted as an "intentional relinquishment". However, it is unfair to interpret a general expression of satisfaction at the end of the instructions as being anything more than forfeiture, a failure to recognize an error and a failure to object. To treat a general expression of satisfaction as waiver places an unfair burden on trial attorneys and on the defendants that they represent.

In the alternative, this Court must decide whether the failure of defense counsel to object to the above instructions and/or his general expression of satisfaction denied Defendant the effective assistance of counsel. Strickland v Washington, supra. Only sound trial strategy will defeat a claim of ineffective assistance. People v Dalessandro, 165 Mich App 569, 578 (1988). See also In re People v Schindler, 433 Mich 860 (1989),

24

rev'g <u>Bay County Prosecutor</u> v <u>Bay Circuit Judge</u>, 174 Mich App 269 (1988).  The sole defense was that it was not Defendant who shot and killed the deceased.  There is no sound strategy that would account for a failure to object to instructions on causation which were contrary to the defense theory and which assisted the prosecution in obtaining the murder conviction.  Applying the <u>Strickland</u> prejudice standard to the facts of this case, discussed above, it is more probable than not, with the proper instruction, Defendant would not have been found guilty.

Because the record on ineffective assistance is clear and adequate for review, Defendant has not separately moved to remand for an evidentiary hearing per <u>People</u> v <u>Ginther</u>, 390 Mich 436, 443 (1973). See <u>People</u> v <u>Ullah</u>, 216 Mich App 669, 684 (1996); <u>People</u> v <u>Cicotte</u>, 133 Mich App 630, 636 (1984); <u>People</u> v <u>Kenneth Johnson</u>, 144 Mich App 125, 129-130 (1985). If this Court believes to the contrary, then a hearing is requested

## SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT

\

**WHEREFORE**, for the foregoing reasons, Defendant-Appellant asks that this

Honorable Court reverse his conviction.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**

BY: _____

**SUSAN J. SMITH (P25619)**
Assistant Defender
3300 Penobscot Building
645 Griswold
Detroit, Michigan 48226
(313) 256-9833

Dated: January 22, 2004

26

**STATE OF MICHIGAN**
**IN THE COURT OF APPEALS**

**PEOPLE OF THE STATE OF MICHIGAN**

           Plaintiff-Appellee,

**Court of Appeals No.** 248742

-vs-

**Lower Court No.** 03-1609-01

**MICHON D. HOUSTON**

           Defendant-Appellant.

_____/

**PROOF OF SERVICE**

| | | |
|---|---|---|
| STATE OF MICHIGAN | ) | |
| | ) ss. | |
| COUNTY OF WAYNE | ) | |

     **VIRGINIA M. MELOSKY**, being first duly sworn, deposes and says that on January 22, 2004, she filed with this Court the following:

**BRIEF ON APPEAL**
**(ORAL ARGUMENT REQUESTED)**
PROOF OF SERVICE

and she mailed one (1) copy of same to:
**WAYNE COUNTY PROSECUTOR**
Appellate Division
1100 Frank Murphy Hall of Justice
1441 St Antoine
Detroit, MI 48226

**VIRGINIA M. MELOSKY**

Subscribed and sworn to before me
January 22, 2004.

JOANNE M. MORITZ
Notary Public, Wayne County, Michigan
My commission expires: 9-2-05
20043T-J/SJS

42-

| STATE OF MICHIGAN<br>1st JUDICIAL CIRCUIT<br>HILLSDALE COUNTY | CLAIM OF APPEAL AND<br>ORDER APPOINTING COUNSEL | CASE NO. AND SUFFIX<br>03-1609        01 |
|---|---|---|

**Court Address**
2ND FLOOR, CIRCUIT COURTHOUSE HILLSDALE, MI 49242

**Court Telephone No**
(517)437-4321

| **People of THE STATE OF MICHIGAN** | Date of Birth, Address, and inmate number (if known)<br>CHARLES EGELER RECEPTION/GUIDANCE CENT  05-09-1980<br>3855      COOPER STREET                             316461<br>JACKSON                          MI    49201-7517 |
|---|---|

v

| Defendant Name, Last | First | Middle |
|---|---|---|
| HOUSTON | MICHON | D |

### Offense Information / Terms of Incarceration / Intermediate Sanctions

| Date | Description | PACC Code | H | C | A | S | Y | M | D | Y | M | D | K | P | J | Y | M | D | R | F | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09-06-2002 | HOMICIDE/MURDER 1ST DEG | 750.316-A | | | | | | | | LIFE | | | | X | | | | | | | |
| 09-06-2002 | WEAPONS/FELONY FIREARM | 750.227B-A | | | | | 2 | | | 2 | | | X | X | | | | | | | |
| 09-06-2002 | WEAPONS/FIREARMS/POSSE | 750.224F | | | | | 1 | 6 | | 5 | | | | X | | | | | | | |

H=Habitual  C=Conspiracy  A=Attempt  S=Solicitation  Y=Year  M=Month  D=Day  K=Consecutive  P=Prison  J=Jail  R=Restitution  F=Fine  O=Other

The defendant claims an appeal from a final judgment or order entered on  in the 1st Circuit Court, HILLSDALE County, Michigan by Judge VERA MASSEY-JONES 15595.  Copies of the final judgment or order being appealed and docket entries are attached for the Court of Appeals, appointed counsel, and Michigan Appellate Assigned Counsel System.

On 05-06-2003 the defendant filed a request for appointment of counsel and a declaration of indigency.

**IT IS ORDERED:**

**Name of Appellate Counsel**
SADO

**Address**
645 GRISWOLD, PENOBSCOT BLDG. SUITE 3300

**City, State, Zip**
DETROIT, MI 48226

**Telephone No.**
313-256-9833

**Bar No.**

is appointed counsel for the defendant in post-conviction proceedings.  If appointed counsel cannot or will not accept this appointment, counsel shall notify the court immediately.

The court reporter(s)/recorder(s) shall file with the trial court clerk the transcripts indicated below and any other transcripts requested by counsel in this case not previously transcribed.  Transcripts shall be filed within 28 days for pleas or 91 days for trials from the date ordered or requested [MCR 7.210(B)]. Reporter(s)/recorder(s) shall be paid as provided by law.

| TRANSCRIPTS ORDERED | REPORTER/RECORDER NAME | OTHER DESCRIPTION | NUMBER | PROCEEDING DATE |
|---|---|---|---|---|
| SENTENCE | JANICE PAYNE | | 3521 | 04-23-2003 |
| JURY TRIAL | DEBRA FINCH | | | 04-02-2003 |
| JURY TRIAL | DEBRA FINCH | | | 04-03-2003 |
| JURY TRIAL | DEBRA FINCH | | 5702 | 04-04-2003 |

The clerk shall immediately send to counsel a copy of the transcripts ordered above or requested by counsel as they become available.  The clerk shall also forward documents upon request by counsel. [MCR 6.433]

**Date**
5/22/03

TIMOTHY M. KENNY
**Judge**

23009
**Bar No.**

### CERTIFICATE OF MAILING

I certify that on this date I mailed a copy of this claim of appeal to appointed counsel, defendant, court reporter(s)/recorder(s), prosecutor, Court of Appeals, and Michigan Appellate Assigned Counsel System (MAACS).  I also mailed a copy of the final judgment or order being appealed and docket entries to appointed counsel, the Court of Appeals, and MAACS.  I also mailed a copy of the defendant's request for appointment of counsel to appointed counsel, the prosecutor, and MAACS.

**Date**
5/22/03

**Signature**

CC403 (12/96)

Approved, SCAO

| Original - Court | 3rd copy - Michigan State Police CJIC |
| 1st copy - Corrections | 4th copy - Defendant |
| 2nd copy - Corrections (for return) | 5th copy - Prosecutor |

| STATE OF MICHIGAN JUDICIAL CIRCUIT COUNTY | JUDGMENT OF SENTENCE COMMITMENT TO DEPARTMENT OF CORRECTIONS | CASE NO. 03-001609-01 |

ORI MI- 821095J
Police Report No.

Court address FRANK MURPHY HALL OF JUSTICE
1441 ST. ANTOINE, DETROIT, MI 48226

Court telephone no. 313.224.2487

THE PEOPLE OF THE STATE OF MICHIGAN   v

Defendant's name, address, and telephone no.
MICHON DESMOND HOUSTON

| CTN/TCN 82-02231167-01 | SID | DOB 5/09/80 |

| Prosecuting attorney name MICHAEL DUGGAN | Bar no. P-35893 |
| Defendant attorney name DAVID LANKFORD | Bar no. P-43536 |

## THE COURT FINDS:

1. The defendant was found guilty on ___4/07/03___ of the crime(s) stated below:

*Plea: use "G" for guilty plea; "NC" for nolo contendere; "MI" for guilty but mentally ill. •Use "X" if sentence is to be enhanced because of Habitual Offender Act.

| Count | CONVICTED BY Plea* | Court• | Jury | CRIME | CHARGE CODE(S) MCL citation/PACC Code |
|---|---|---|---|---|---|
| 1 | | | X | MURDER 1ST | 750316-A |
| 2 | | | X | FELONY FIREARM | 750227B-A |
| 3 | | | X | FA POSS BY FLN | 750224F |

☐ 2. The conviction is reportable to the Secretary of State under MCL 257.625(20)(b).
   The defendant's driver license number is: _____

☐ 3. HIV testing and sex offender registration is completed.

☐ 4. The defendant has been fingerprinted according to MCL 28.243.

## IT IS ORDERED:

5. Defendant is sentenced to custody of Michigan Department of Corrections. This sentence shall be executed immediately.

| Count | SENTENCE DATE | MINIMUM Years | Mos. | Days | MAXIMUM Years | Mos. | DATE SENTENCE BEGINS | JAIL CREDIT Mos. | Days | OTHER INFORMATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 4/22/03 | NATURAL | LIFE | | | | 12/12/04 | | | |
| 2 | 4/22/03 | 2 | – | – | 2 | – | 4/22/03 | | 132 | |
| 3 | 4/22/03 | 1 | 6 | – | 5 | | 12/12/04 | | | |

☒ 6. Sentence(s) to be served consecutively to: (if this item is not checked, the sentence is concurrent)
   ☐ each other.   ☐ case numbers Ct's 1 & 3 are concurrent & run consecutive to Ct 2. BEgin

7. Defendant shall pay:  ☐ restitution of $ serving Ct 2 1st.   ☐ $60.00 for Crime Victim Rights Fund.
   ☐ $60.00 for DNA sample.  ☐ $150.00 for forensic lab test.

☐ 8. The concealed weapon board shall  ☐ suspend for _____ days  ☐ permanently revoke  the concealed
   weapon license, permit number _____, issued by _____ County.

9. Court recommendation:

Date 4/22/03

Judge HON. VERA MASSEY JONES   P15595   Bar no.

I certify that this is a correct and complete abstract from the original court records. The sheriff shall, without needless delay, deliver defendant to the Michigan Department of Corrections at a place designated by the department.

(SEAL)

Deputy court clerk

MCL 765.15(2), MCL 769.16a, MCL 775.22, MCL 780.766

CC 219b (3/02) JUDGMENT OF SENTENCE, COMMITMENT TO DEPARTMENT OF CORRECTIONS   MCR 6.427(A)