# Court of Appeals, State of Michigan

## ORDER

People of MI v Michon Desmond Houston

Docket No.    275644

LC No.    03-001609-01

Michael J. Talbot
Presiding Judge

E. Thomas Fitzgerald

Michael R. Smolenski
Judges

---

The Court orders that the motion to waive fees is GRANTED for this case only.

The motion to appoint counsel is DENIED.

The motion for peremptory reversal pursuant to MCR 7.211(C)(4) is DENIED for failure to persuade the Court of the existence of manifestly reversible error warranting peremptory relief without argument or formal submission.

The motion to remand is DENIED.

The delayed application for leave to appeal is DENIED for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D).

_Presiding Judge_

A true copy entered and certified by Sandra Schultz Mengel, Chief Clerk, on

JUN 1 8 2007

_Date_

_Chief Clerk_

STATEMENT OF FACTS
EXPLAINING THE DELAY IN FILING THE APPEAL

Ther Defendant does not have the complete knowledge of the law, and  lack
the ability to perfect a proper Application for leave to Appeal within 21 days
Defendant-Appellant is filing the application in Pro Per and had to find an
assistant through the legal assistance program to assist him in preparation.
This is a complex case because it con tains several different authorities in
support of the different arguments.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. i

STATEMENT OF APPELLATE JURISDICTION ................................. v

STATEMENT OF QUESTIONS PRESENTED ................................. vi

STATEMENT OF FACTS ...................................................................1

I.      DEFENDANT WAS DENIED A FAIR TRIAL BY THE INTRODUCTION
        AND ARGUMENT OF EVIDENCE THAT HE HAD ASSAULTED
        PROSECUTION WITNESS LAVERO CROOKS WITH A GUN AND HAD
        THREATENED TO KILL HIM OVER DRUG TURF. ...................................9

II.     THE TRIAL COURT'S INSTRUCTIONS ON THE CAUSATION
        ELEMENT OF MURDER DIRECTED A VERDICT ON THAT ELEMENT
        AND/OR SHIFTED THE BURDEN OF PROOF; COUNSEL'S FAILURE
        TO OBJECT CONSTITUTED INEFFECTIVE ASSISTANCE. ...................19

SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT ...........................26

SJS*Houston Brief on Appeal.doc*20043 1-22-04
Michon D. Houston

# TABLE OF AUTHORITIES

## CASES

Bay Circuit Judge, 174 Mich App 269 (1988)......................................................24

Connecticut v Johnson, 460 US 73; 103 S Ct 969; 74 LEd 2d 823 (1983) ..............22

Francis v Franklin, 471 US 307; 105 SCt 1965; 85 LEd2d 344 (1985) ...................24

Michelson v United States, 335 US 469; 69 S Ct 213; 93 L.Ed. 168 (1948) ..............14

Mullaney v Wilbur, 421 US 684; 95 S Ct 1881; 44 LEd 2d 508 (1975)....................21

Notaro v United States, 363  F2d 169 (CA 9, 1966)...............................................23

Old Chief v United States, 519 US 172; 117 SCt 644; 136 LEd2d 574 (1997) .............. 13; 14, 16

People v Allensworth, 401 Mich 67 (1977)...........................................................21

People v Bennett, 393 Mich 445 (1975) ...............................................................16

People v Carines, 460 Mich. 750 (1999) ........................................................ 19; 20

People v Carter, 462 Mich 206 (2000)................................................................24

People v Chamblis, 395 Mich 408 (1975).............................................................21

People v Cicotte, 133 Mich App 630 (1984) .........................................................25

People v Clark, 340 Mich 411 (1954)............................................................ 21; 23

People v Crawford, 458 Mich 376 (1998) ....................................................9, 13, 17

People v Dalessandro, 165 Mich App 569 (1988) ..................................................24

People v Dolsen, 411 Mich 1045 (1981), rev'g 102 Mich App 378 (1980)..................22

People v Dumas, 454 Mich 390 (1997) .........................................................19, 21

People v Furman, 158 Mich App 302 (1987) ........................................................18

i

People v Gallagher, 404 Mich 429 (1979) ..................................................................22

People v Gaydosh, 203 Mich App 235 (1994) ..........................................................21

People v Ginther, 390 Mich 436 (1973) ....................................................................25

People v Goddard, 429 Mich 505 (1988) ..................................................................14

People v Hall, 249 Mich App 262 (2002) ..................................................................19

People v Hall, 433 Mich 573 (1989) ..........................................................................14

People v Hayes, 410 Mich 422 (1981) ......................................................................18

People v Hess, 214 Mich App 33 (1995) ..............................................................22; 23

People v Houstina, 216 Mich App 70 (1996) ............................................................20

People v Hudson, 123 Mich App 624 (1982) ............................................................22

People v Johnson, 393 Mich 488 (1975) ..................................................................13

People v Kenneth Johnson, 144 Mich App 125 (1985) ............................................25

People v Layher, 464 Mich 756 (2001) ....................................................................16

People v Lukity, 460 Mich 484 (1999) ........................................................................9

People v Martzke, 251 Mich App 282 (2002) ..........................................................16

People v McGillen, No.1, 392 Mich 251 (1974) ........................................................16

People v Mitchell, 223 Mich App 395 (1997) ..........................................................13

People v Mitchell, 454 Mich 145 (1997) ..................................................................20

People v Pickens, 446 Mich 298 (1994) ..................................................................20

People v Reed, 393 Mich 342 (1975) ......................................................................21

People v Roby, 404  Mich 807 (1978) ......................................................................21

People v Sabin (After Remand), 463 Mich 43 (2000) ................................................15

ii

In re People v Schindler, 433 Mich 860 (1989), rev'g Bay County Prosecutor ........................24

People v Simons, 42 Mich App 400 (1972)..............................................................................14

People v Smith, 120 Mich App 429 (1982) .............................................................................17

People v Stafford, 434 Mich 125 (1990) .................................................................................18

People v Tice, 220 Mich App 47 (1996)..................................................................................22

People v Toma, 462 Mich 281 (2000) .....................................................................................20

People v Torres (On Remand), 222 Mich App 411 (1997) .......................................................20

People v Ullah, 216 Mich App 669 (1996)..................................................................... 13; 17, 25

People v VanderVliet, 444 Mich 52 (1993)..............................................................................15

People v Vaughn, 447 Mich 217 (1994) ..................................................................................22

People v Whitfield, 425 Mich 116 (1986) ...............................................................................14

People v Wright, 408 Mich 1 (1980) ............................................................................... 21; 22

Sandstrom v Montana, 442 US 510; 99 S Ct 2450; 61 LEd 2d 39 (1979) ...........................21, 22

Strickland v Washington, 466 US 668; 104 S Ct 2052; 80 LEd 2d 674 (1984)............... 20; 24; 25

United States v Daniels, 248 US App DC 198; 770 F2d 1111 (1985) .........................................13

United States v Main, 113 F3d 1046 (CA 9, 1997) ...................................................................21

In Re Winship, 397 US 358; 90 S Ct 1068; 25 LEd 2d 368 (1970) .............................................20

## CONSTITUTIONS

US Const, Am V .................................................................................................................9

US Const, Am XIV ................................................................................................... 9, 19, 21; 22

Mich Const 1963, art 1, § 17.......................................................................................9, 19, 21

Mich Const 1963, art 1, § 20........................................................................................9, 19

## STATUTES

MCL 750.224f ...........................................................................................................1

MCL 750.227b ..........................................................................................................1

MCL 750.316(1) ........................................................................................................1

MCL 768.29 ............................................................................................................20

## MICHIGAN RULES EVIDENCE

MRE 401 ...................................................................................................................15

MRE 402 ...................................................................................................................15

MRE 403 .............................................................................................................15; 17

MRE 404(b)(1) ...................................................................................................14; 15; 17

iv

## STATEMENT OF APPELLATE JURISDICTION

The judgment of conviction was entered on April 4, 2003; the judgment of sentence was entered on April 22, 2003; Defendant requested counsel on May 6, 2003; the claim of appeal was filed on May 22, 2003.  The State Appellate Defender Office was appointed as appellate counsel on May 22, 2003.

Jurisdiction is conferred on this Court by Const 1963, art 1, §20; MCL 600.308(1), MSA 27A.308(1); MCL 770.3, MSA 28.1100; MCR 6.425(F)(3); MCR 7.203(A); and MCR 7.204.

# STATEMENT OF QUESTIONS PRESENTED

I.        WAS DEFENDANT DENIED A FAIR TRIAL BY THE INTRODUCTION
          AND ARGUMENT OF EVIDENCE THAT HE HAD ASSAULTED
          PROSECUTION WITNESS LAVERO CROOKS WITH A GUN AND HAD
          THREATENED TO KILL HIM OVER DRUG TURF?

                    Trial Court answers, "No".

                    Defendant-Appellant answers, "Yes".

II.       DID THE TRIAL COURT'S INSTRUCTIONS ON THE CAUSATION
          ELEMENT OF MURDER DIRECT A VERDICT ON THAT ELEMENT
          AND/OR SHIFT THE BURDEN OF PROOF; DID COUNSEL'S FAILURE
          TO OBJECT CONSTITUTE  INEFFECTIVE ASSISTANCE?

                    Trial Court made no answer.

                    Defendant-Appellant answers, "Yes".

# STATEMENT OF FACTS

Michon Houston was convicted by jury on April 7, 2003, of first degree premeditated murder[1], felon in possession of a firearm[2], and felony firearm[3], in Wayne County Circuit Court, the Honorable Vera Massey Jones presiding.  Defendant was sentenced on April 22, 2003, to mandatory life and 1 ½ to 5 years, consecutive to 2 years.

It was the prosecution's theory that, on September 6, 2002, at around 5:00 am, Defendant repeatedly shot and killed Carlton Thomas.

Lavero Crooks testified that he had known Defendant since July of 2002, and that they had been friends. (II 101)[4].  On the date in question, Crooks was selling ("grinding") crack cocaine in the area of Linwood and Buena Vista. (II 98).  He had been out there the entire night, sitting in his car, a 1984 Cutlass.  He was parked on Buena Vista, in front of a house next to a vacant lot. (II 99-100, 151).  There was a pile of debris in the vacant lot, next to where he was parked. (II 124, 143).  At around 5:00 am, Defendant, Defendant's girlfriend "Powder", and Jovan Johnson ("JW"), were on the porch of a residence on Buena Vista that was across from the vacant lot. (II 102).  Both Johnson and Defendant sold drugs. (II 127-128).  They all regularly used this porch to sell drugs, and Crooks had spent the previous night at that residence.[5](II 102-103).

---

[1] MCL 750.316(1)(a).
[2] MCL 750.224f.
[3] MCL 750.227b.
[4] The transcripts are referred to as follows: I = 4/2/03; II =4/3/03; III = 4/7/03.
[5] A woman named "Lisa" lived there. (II 140, 166, 193).

1

Crooks continued that he observed someone walking through the vacant lot.  (II 103).  He recognized the man as someone who regularly bought drugs from Jovan Johnson.  Crooks explained that the normal procedure would be for the sellers to race up to a prospective customer.(II 104).  Defendant approached the man[6], and asked what he needed. (II 147-148).  Crooks heard Defendant say, "Oh, you ain't gonna deal with me, this is my block."(II 106-107, 130).   The man responded that he could deal with whomever he wanted to. (II 107).  Defendant crossed back to the house, went inside, came out with his .40 caliber gun, and fired a shot from the porch. (II 106-107, 131-133, 140)[7].  The man tried to run, then fell on his stomach in the grass, near one of the two trees in the lot. (II 107-108, 135).  Defendant went over and rolled the man over onto his back.(II 108-109, 135).   Defendant said, "I shot that nigga in his face, first shot." Defendant searched the man's pockets, then started firing more shots.  ."(II 109, 135-136).

Crooks drove off. (II 109).  He took the young lady that was with him in his car, and who had also witnessed the shooting, to her home.(II 110, 125).  He returned to the area at around 6:30 am, and saw that there were lots of police there.  He offered no information. (II 146-147, 152)

Over defense objection, the prosecutor questioned Crooks about the circumstances ending his friendship with Defendant. (II 110).   Crooks testified that, sometime in

---

[6] The witness changed this on cross-examination, saying that Defendant and Johnson both went towards the field, but that Johnson then went back to the porch.  He did not hear Johnson say anything to the man. (II 147-148).
[7] On cross-examination, Crooks changed this to Defendant firing two shots from the sidewalk.(II 134-135).

2

November of 2002, he fell asleep in his car on the block, and woke up to find Defendant with a gun to his head, threatening to kill Crooks if he did not get off the block, telling Crooks it was his block. Defendant's cousin grabbed the gun, and Crooks got away. Crooks reported this incident to the police, but did not mention the shooting. (II 110-111, 138).

Crooks continued that, on November 9, 2002, Officers Adams and Moss came to his house, and he told them that he knew how to find Defendant. He told the officers that if he drove through the Buena Vista and Linwood area, where they sold drugs every day, with his music on, Defendant "would run out with a gun shooting."(II 112). Everyone in the area knew Crooks's car. (II 113). Per their plan, Crooks parked by the vacant lot, and Defendant and his cousins ran out of a house, a four family flat. (II 114). There were a lot of police there, and Defendant ran back inside. (II 114). The police searched the house, and eventually brought Defendant out.(II 115).

Crooks further provided that, on November 11, 2002, he went to 1300 Beaubien and gave a statement about the shooting at bar.(II 115). He denied that he had been promised anything to testify in this case, or that he was testifying because Defendant had put a gun to his head. (II 116).

On cross-examination, Crooks admitted he never told the police that someone was in the car with him the morning of the shooting. (II 125). He also admitted that he never told the police that Defendant had searched the deceased's pockets. (II 125, 136). He also acknowledged that the police had confronted him three times about the shooting,

3

before he made a statement. (II 126). They had come to Linwood and Buena Vista while he was out there selling drugs.(II 127). Each time, he had denied knowing anything. (II 150, 155). One time, the investigators apprehended him.(II 156). He claimed to have seen Defendant with the .40 caliber gun plenty of times, but agreed he never told that to the police either. (II 136-137). He denied that the debris or the weeds in the vacant lot blocked his view that morning (II 144), despite photographs taken by the police at the scene that indicated to the contary (II 142-144)[8]. He never saw the deceased run around to the back side of one of the trees in the lot. (II 152).

Crooks further acknowledged that Jovan Johnson was his friend, but denied knowing, at the time he made the statement implicating Defendant in the shooting, that Johnson had been arrested on some charges. (II 144-145).

Jovan Johnson ("JW") testified that, at the time in question, he had known Defendant for about a year. (II 160). In the early morning hours of September 6, 2002, he and Defendant and Powder were drinking at a motorcycle club for a few hours, and then, at around 4:00 or 5:00 am, went to a house at Linwood and Buena Vista, where the two men would regularly sell drugs.(II 162-163, 173, 187-188, 193-195). Lavero Crooks sold in the same area, but there was no bad blood between them.(II 163, 187, 196).

Johnson continued that he, Defendant, and Powder were sitting on the porch, right across from the vacant lot, when they saw a man cutting through the lot. (II 163-164). Johnson recognized him as someone to whom he had sold crack a few times.(II 188).

---

[8]   See also, the defense cross-examination of the evidence technician as to the photographs, Pros Ex ## 4, 5, 8, 9, at II 88-97; and the defense closing argument at III 71-72.

Defendant and Johnson both yelled to him, to find out what he needed. (II 164, 188). Johnson stayed on the porch, and Defendant went to the vacant lot and talked to the man.(II 165).   There was some conversation, which became more heated, and then Johnson heard Defendant yelling, "Bitch."(II 167, 186, 190).  Defendant chased the man around the tree, and then Defendant fired two or three shots. (II 167-168, 190, 198).  The man fell on his back, near the tree.(II 168).  Defendant stood over the fallen man, and fired two or three times. (II 168-169).  Defendant returned to the porch, and ordered Johnson to go check if the man was dead.(II 170).  Defendant had a gun in his hand; Johnson had never seen it before. (II 171, 186).  Johnson determined that the man was still breathing, but told Defendant he was dead.(II 171, 200).  Defendant and Johnson drove off, but Powder refused to get in the car. (II 172, 201).

Johnson did not see Lavero Crooks or anyone else out there that morning. (II 175, 195-196).  He was familiar with Crooks' blue 1984 Cutlass. (II 196).  He denied that Defendant had returned to the house to get the gun. (II 187).  He did not see Defendant turn the man over, or go through his pockets. (II 191, 211).  Johnson did not go through the man's pockets either, when he checked on him.(II 210).

Johnson continued that, within a week of the shooting, the police attempted to question him about it, but he told them he knew nothing. (II 183-184).  Sometime later, he "caught a drug case" and was in jail. (II 173).  On November 17, 2002, homicide detectives came to talk to him about the shooting, and told him that he would not go to jail "for accessory" if he cooperated with them.(II 174-175, 178).   The detectives

provided him with many details about the shooting(II 179), and told him that they knew he might be involved.(II 182).  He agreed that they threatened to charge him with first degree murder if he did not give a statement. (II 182, 183, 204-205).  He had not spoken to anyone about the shooting before this. (II 183).

Officer Williams testified that he was the first officer to arrive on the scene, the 2600 block of Buena Vista, at about 5:50 am. (III 5).  He observed Thomas in the field, in front of a tree. (II 218-220).  Thomas was still alive, but did not give the name of his assailant.(II 222-223, 234).  He was about 1 ½ to 2 feet from the blood on the ground.(III 8).  Williams preserved the scene. (II 226; III 6).  He did not recover any shell casings. (III 6).  After EMS arrived, Williams canvassed the area, but no one had witnessed the shooting. (II 224-226; III 6).  He described the area as one with high drug trafficking.(II 227).

Officer Carpenter, an evidence technician, arrived at the scene at 7:30 am. (II 69-70).  The deceased had already been removed. (II 75, 88-89).  Carpenter observed blood under one of the two trees in the vacant lot.(II 73).  There was no evidence that the body had been dragged. (II 76, 84).  He searched the area for casings and bullets, but found nothing. (II 75, 85, 88).  The trees were in full foliage, the grass was tall and overgrown, and there was a lot of debris in the lot, including a large pile.[9] (II 75, 79-80, 84, 90-92, 94).  There were four residential houses across the street. (II 77).  He measured 72 feet

_____

[9] Officer Williams also testified to there being a large pile of debris on the lot, and that the car he was in was past the debris when he saw Thomas. (II 231-233; III 4-5).

from the blood to the curb on Buena Vista, and about 120 feet from the blood to the porch area of the residences on the north side of the street.(II 76-77, 96).

Officer Adams testified to interviewing Lavero Crooks about his complaint of a felonious assault by Defendant, and their plan for Defendant's arrest on November 9, 2002.(III 9-16, 27). Crooks believed Defendant would be at 2675 Buena Vista.(III 13). The officers knew that Crooks sold drugs in that area.(III 14). When Crooks parked and exited his vehicle, the neighborhood grew quiet and Defendant came out onto the porch of the four family flat.(III 16, 18). Crooks and Defendant yelled at one another, and Crooks yelled to the police that this was "the motherfucker."(III 17, 29). Williams and his partner, in plain clothes (III 28, 30), ran towards Defendant and announced that they were police. Defendant ran back inside. (III 18, 30. The police found him in a locked unoccupied lower flat, and arrested him. (III 20-21). Defendant was unarmed, and there was no weapon in the flat. (III 24-25, 27-28). Adams interviewed Lavero Crooks again on November 13, 2003. (III 25-26).

Officer Bastianelli testified that he collected Carlton Thomas's clothing from the hospital. (II 214-215). There was no currency or identification in his belongings.(II 216).

Dr. Nora performed the autopsy. The deceased was shot four times: to the knee, front to back, with a slightly downward angle; to the front left side of the abdomen above the hip, front to back and slightly downward; to the left side of the abdomen, front to back, but exiting on the right side; and to the right cheek, back to front and slightly downward, exiting and re-entering near the lip. (II 34, 39-43, 45-46, 51, 57). While it

7

was possible that the first three shots could have been fired while the deceased was on the ground, the trajectories were "a little bit difficult" for this theory. (II 62-63). There was no evidence of close-range firing; however the clothing had not been available for analysis. (II 47-48). No bullets were recovered. (II 42, 65). There were scrapes on the knees, consistent with falling near the time of death. (II 46). Alcohol and cocaine were both present in the deceased's system. (II 48-50).

The parties stipulated that, on September 6, 2002, Defendant was ineligible to carry a firearm because of a prior felony conviction.(III 32).

Both the prosecution and the defense rested.

Other facts will be added as necessary in the issues following.

I.     **DEFENDANT WAS DENIED A FAIR TRIAL BY THE
INTRODUCTION AND ARGUMENT OF EVIDENCE
THAT HE HAD ASSAULTED PROSECUTION WITNESS
LAVERO CROOKS WITH A GUN AND HAD
THREATENED TO KILL HIM OVER DRUG TURF.**

Over defense objection, the prosecution introduced evidence that Defendant had

allegedly assaulted prosecution witness Lavero Crooks with a gun and had threatened to

kill Crooks over drug turf, convincing Crooks that he would either have to kill Defendant

or be killed by him. This evidence was repeatedly brought before the jury, and the jury

was not given any limiting instruction as to how to use this evidence. This denied

Defendant a fair trial, and constituted reversible error. US Const, Ams V, XIV; Const

1963, art 1, §§ 17, 20.

The **STANDARD OF REVIEW** for admission of similar acts evidence is for an

abuse of discretion. <u>People</u> v <u>Crawford</u>, 458 Mich 376, 383 (1998). For preserved non-

constitutional error, reversal is required if it is more probable than not that a different

outcome would have resulted without the error. <u>People</u> v <u>Lukity</u>, 460 Mich 484, 495

(1999).

By way of background, before trial commenced, defense counsel explained to the

trial court that prosecution witness Lavero Crooks was a complainant against Defendant

in another unrelated case, and that he had not come forward in the case at bar until the

other incident occurred. The defense wanted to bring that up, without opening the door

and effectively trying that case as well. Defense counsel asked the trial court for a ruling

as to how far this line of inquiry could go, if simply asking the witness if he did not come

forward until he had a "beef" with Defendant would open the door. The trial court refused to do so in advance of the proofs (II 19-22), explaining "I am not your lawyer...I am not going to give you any legal advice because that's not what I get paid for..." (II 20).

When Mr. Crooks testified, the prosecutor questioned him as follows on direct examination, over defense objection:

> Q    And you said at least at one point you were friends?
>
> A    Yes, sir.
>
> Q    When did that all end?
>
> A    I don't remember exact, but one day I was smoking on the block and I fell asleep.
>
> MR. LANKFORD: Objection.
>
> THE COURT: Basis of the objection?
>
> MR. LANKFORD: This leads into an irrelevant area, Your Honor.
>
> THE COURT: Well, no, I thought it would go for the reason for him to testify. I'll overrule the objection.
>
> BY MR. HASSINGER:
>
> Q    First, sir, just to get a time frame. I asked you when did your friendship with Mr. Houston end? On the date of this shooting, on September 6th, 2002, did you consider Mr. Houston your friend?
>
> A    Yes, sir.
>
> Q    Did there came [sic] a time in November of 2002 when your friendship came to an end?

A      Yes, sir.

Q      Why did it come to an end?

A      Sir, I woke up in my car about 10:30, eleven and I had a pistol grip pumped to my head with Sean telling me if pull off, try to pull off he'll kill me, and you don't run this block. This is my block. And the only thing I can ask him is why. I ain't done knowing [sic] to you. What's wrong with you. So his cousin grabbed the gun. That's the only reason he didn't shoot.

MR. LANKFORD: Objection, now we're getting irrelevant, Judge.

THE COURT: Sustain, it's stricken. The jury's told to disregard it.

MR. HASSINGER:

Q      So some time in November Mr. Houston comes at you with some type of weapon?

A      Yes, sir.

Q      Are you able to get away from Mr. Houston at that time?

A      Yes, sir.

Q      Do you report that to the police?

A      Yes, sir. (II 110-111).

In response to further questioning by the prosecutor, this incident was again referenced by the witness: "And then I thought there was a point where I held myself for me trying to kill him to putting a gun to my head."(II 116). Further questioning by the prosecutor about this incident was as follows:

11

"Q      Is it fair to say you're here today because the
defendant put that gun to your head?

A      No, sir.

Q      Why not?

A      Because I had left when he put the gun to my head, I
had charges for that, but I left it alone and dropped the
charges because I felt like I couldn't take a man's freedom.
But then after I was being questioned about the murder I felt
bad because a person life was taken and I knew what
happened and I was there even though I didn't have anything
to do with it.

       So if it would make me rest easy because I was put in
that predicament I could have been him for getting killed,
you know, so I call myself changing my life so I thought I'd
just be honest about it." (II 116-117).

Note that, on cross-examination, defense counsel only asked Mr. Crooks about his

coming forward for the first time after his "beef" or problem with Defendant. (III 122-

123, 138).

In closing statement, the prosecutor argued that Crooks came forward

       "Because Mr. Houston started to come after him.  And he
       told you from the witness stand that he realized that when
       Mr. Houston started to come after him, it was either going to
       be him or Mr. Houston.  One of them was going to have to
       die.

       He chose a third option.  He decided, well, at this point I'll
       get the police involved because he didn't want to have to kill
       Mr. Houston, and he certainly didn't want Mr. Houston
       killing him."(III 65-57).

The defense was put in the position of having to reference the alleged assault

against Crooks in closing argument as well:

> "Well, you know, Lavero, I came forward because problems
> with Mr. Houston and it involved a gun. And you know it's
> so easy low [sic] and behold, anybody seen a gun here.
> Nope. We got two diagrams, seven photos. That's it. No
> gun. Easy. He came after me with a gun." (III 73).

In rebuttal, the prosecutor responded:

> "Mr. Crooks does cooperate with the police and he told you
> why. If he didn't cooperate with them either he was going to
> have to kill Mr. Houston or Mr. Houston was going to kill
> him."(III 95).

The jurors were given no instructions as to how to use the evidence of Defendant's alleged armed assault on Crooks.

The admission of this evidence denied Defendant a fair trial. As a general rule, evidence tending to show the commission of other criminal offenses or acts by a defendant evidencing bad character is inadmissible to prove guilt of the charged offense. The recognized danger is that the jury will be diverted from an objective appraisal of the accused's guilt, and convict because they perceive the accused to be bad or dangerous. Old Chief v United States, 519 US 172; 117 SCt 644; 136 LEd2d 574 (1997); People v Crawford, supra; People v Mitchell, 223 Mich App 395, 397 (1997); People v Johnson, 393 Mich 488 (1975); People v Ullah, 216 Mich App 669, 676 (1996). The prohibition "reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence." Crawford, supra at 384, quoting United States v Daniels, 248 US App DC 198, 205; 770 F2d 1111 (1985).

As stated by the United States Supreme Court:

> "Courts that follow the common-law tradition almost
> unanimously have come to disallow resort by the prosecution

13

to any kind of evidence of a defendant's evil character to establish a probability of his guilt.  Not that the law invests the defendant with a presumption of good character, ... but it simply closes the whole matter of character, disposition and reputation ...  The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.  The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."  Michelson v United States, 335 US 469, 475-476; 69 S Ct 213, 218-219; 93  L.Ed. 168 (1948) (citations and footnotes omitted), as quoted in Old Chief, supra, 136 LEd 2d at 588.

Michigan courts have repeatedly reversed where such evidence has created the danger of a conviction based upon a defendant's propensity to commit crimes rather than upon the evidence of his conduct in the case at issue.  In addition to those cases cited above, see also, People v Hall, 433 Mich 573, 579 (1989); People v Goddard, 429 Mich 505 (1988); People v Whitfield, 425 Mich 116, 128-134 (1986); People v Simons, 42 Mich App 400, 403-404 (1972).

The bar against using evidence of other crimes, wrongs, or acts of an individual to prove a propensity to commit such acts is incorporated into MRE 404(b)(1), which also describes the legitimate uses for such evidence:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes,

14

wrongs, or acts are contemporaneous with, or prior or subsequent to
the conduct at issue in the case." MRE 404(b)(1).

In People v VanderVliet, 444 Mich 52 (1993), the Michigan Supreme Court
clarified the standards of admissibility under this rule:  the evidence must be for a proper
purpose under MRE 404(b), it must be relevant to that purpose, and its probative value
must outweigh unfair prejudice.

VanderVliet emphasized that logical relevance is the "touchstone" of admissibility
for this type of evidence. Id at 61.  "Relevant evidence" is defined in MRE 401 as
"evidence having any tendency to make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than it would be without
the evidence."  If the only relevance is to show the accused's "defect of character" or
"inclination to wrongdoing," or that he had the propensity to commit this type of crime,
the evidence is not admissible. Id at 63.  In People v Sabin (After Remand), 463 Mich 43
(2000), the Michigan Supreme Court reiterated VanderVliet's direction to trial courts to
focus on what are really the disputed issues in the case, and not on what is merely
"technically relevant."

Under MRE 402, "All relevant evidence is admissible," unless in contravention of
constitution or court rule, or, per MRE 403, "if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the
jury, or by consideration of undue delay, waste of time, or needless presentation of
cumulative evidence."  As stated by the United States Supreme Court, "The term 'unfair

15

prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged...  commonly, though not necessarily, an emotional one." Old Chief, supra, 36 LEd2d at 589 (citations omitted).

It must be kept in mind here that it was not alleged that the assault and threat to kill Crooks was made in an attempt to keep Crooks from testifying against Defendant, and in fact, did not prevent Crooks from fully supporting the prosecution's theory.  The assault and threat were unrelated to the charged offense, and involved a dispute between two drug dealers over who could sell where.  This incident, much less the specific details, was of no relevance to the prosecution, other than to show that Defendant was armed, threatening, and assaultive.  Nor can the prosecution introduce evidence just for the purposes of rebutting it.  See eg, People v McGillen, No.1, 392 Mich 251 (1974); People v Bennett, 393 Mich 445, 449-450 (1975).  See also, People v Layher, 464 Mich 756, 768 (2001); People v Martzke, 251 Mich App 282, 292 (2002) (recognizing that evidence of bias is always relevant *on cross examination*).

While Crooks' anger and resentment against Defendant in the unrelated matter were relevant to the defense, to show a reason why Crooks might be motivated to falsely accuse Defendant of shooting the deceased, it cannot be claimed that the defense had opened the door, not yet even having had the opportunity to question the witness. Further, as indicated above, the defense attempted to get a ruling from the trial court, limiting the evidence to that which was relevant: that Crooks did not come forward in

16

the case at bar before he was angry with Defendant about an unrelated dispute.  And where the judge had refused to make the ruling, it cannot be assumed that the defense would have risked opening the door by even broaching the subject.

Even, assuming *arguendo,* that the evidence was relevant, it nonetheless should have been excluded as being more prejudicial than probative.  MRE 403.  It painted Defendant as being armed, dangerous, and assaultive, qualities obviously inflammatory in themselves, but even more so because the charged offense involved a ruthless assault with a gun.  When the prior act and the charged crime are similar, the risk is severe that the jurors will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, with a propensity for this type of crime.  See People v Crawford, supra at 397-398.

The prosecutor also erred by not making a motion in advance, as is required by MRE 404(b)(2)[10].  See People v Ullah, 216 Mich App 669, 676 (1996).  It is also clear that the trial court had the discretion to limit what evidence could come in, and could have excluded the damaging details.  Cf, People v Ullah, supra at 674("The trial court has a duty to limit the introduction of evidence and the arguments of counsel to relevant and material matters…and to assure that all parties…receive a fair trial");  People v Smith, 120 Mich App 429, 435-438 (1982) (a portion of a defendant's statement may be

---

[10] "The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination."

17

excluded from evidence by a trial judge acting in his discretion when that portion
includes information that is irrelevant or unduly prejudicial).  By abdicating its discretion,
the trial court abused it.  A failure to exercise discretion where a decision was required
constitutes an abuse of discretion. People v Stafford, 434 Mich 125, 563 (1990); People v
Hayes, 410 Mich 422 (1981); People v Furman, 158 Mich App 302, 332 (1987).

  The prosecution's introduction of this evidence cannot be considered harmless.  It
was given much emphasis by its repetition in the testimony and in the closing arguments.
The only evidence linking Defendant to the killing was the testimony of Lavero Crooks
and Jovan Johnson, and there were many reasons to doubt their testimony.  Both were
admitted crack cocaine dealers, and neither came forward for months after the crime, until
it was in their respective self interest.  Moreover, the two men told such different stories
that it was inconceivable that they had actually witnessed the same event.  There was no
weapon or physical evidence tying Defendant to the scene or the killing, and no
admissions by Defendant.  Moreover, the motive for Defendant to have shot Mr. Thomas
was so trivial as to be incomprehensible.  The evidence that he assaulted Crooks on a
prior occasion, and threatened to kill him, could well have convinced the jury that he was
so dangerous he would not need a motive to kill.  On these facts, the jury could well have
entertained a reasonable doubt but for the similar acts evidence.  Reversal is required.

## II.   THE TRIAL COURT'S INSTRUCTIONS ON THE CAUSATION ELEMENT OF MURDER DIRECTED A VERDICT ON THAT ELEMENT AND/OR SHIFTED THE BURDEN OF PROOF; COUNSEL'S FAILURE TO OBJECT CONSTITUTED INEFFECTIVE ASSISTANCE.

In the final charge, the trial court instructed the jury that the first element of first degree murder was that, "[T]he defendant caused the death of Carlton Thomas. That is, that Mr. Thomas died as a result of being shot." (III 109). The Court then repeated the instruction on first degree murder, with the same causation instruction. (III 110). Again, for second degree murder, the Court instructed that the first element was that, "[T]he defendant caused the death of Carlton Thomas. That is, that Mr. Thomas died as a result of being shot." (III 112). The Court repeated this as well.(III 113).

In other words, what the Court repeatedly told the jury was that, if Mr. Thomas died as a result of being shot, which he indisputably did, then Defendant caused the death and this element was established. In a case where the only defense was that Defendant was not the person who shot the deceased and caused his death, this instruction denied Defendant a fair trial and was reversible error. US Const, Am XIV; Const 1963, art 1, §§ 17, 20.

**STANDARD OF REVIEW:** Claims of instructional error are reviewed de novo. People v Hall, 249 Mich App 262, 269 (2002). The appellate court examines a trial court's jury instructions as a whole, to determine if they adequately protected the defendant's rights by fairly presenting the issues to be tried. People v Dumas, 454 Mich 390, 396 (1997). Unpreserved claims of instructional error are reviewed for plain error

19

that affected the defendant's substantial rights. <u>People v Carines</u>, 460 Mich. 750, 761-764 (1999). Failure to object to jury instructions waives error unless relief is necessary to avoid manifest injustice. MCL 768.29; <u>Carines</u>, <u>supra</u>. Manifest injustice occurs when an erroneous or omitted instruction pertained to a basic and controlling issue in the case. <u>People v Torres</u> <u>(On Remand)</u>, 222 Mich App 411, 423 (1997).

The question of whether Defendant's right to effective assistance of counsel was violated also calls for de novo review. <u>People v Toma</u>, 462 Mich 281 (2000); <u>People v Houstina</u>, 216 Mich App 70, 73 (1996). To establish ineffective assistance, the defendant must demonstrate errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Second, the defendant must show that his counsel's deficient performance prejudiced the defense, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Strickland</u> v <u>Washington</u>, 466 US 668; 104 S Ct 2052; 80 LEd 2d 674 (1984); <u>People v Pickens</u>, 446 Mich 298 (1994); <u>People v Mitchell</u>, 454 Mich 145 (1997).

The instructions at bar can be viewed as either creating a presumption that Defendant had to overcome and which thereby shifted the burden of proof, or as effectively removing an element from the jury's consideration. At best, Defendant had to overcome the presumption that he was the perpetrator of the murder. At worst, the jury assumed from the instructions that Defendant's identity as the killer was a given. In either case, reversal is required.

The prosecutor's burden of proving all the elements of a crime beyond a reasonable doubt is constitutionally mandated, In Re Winship, 397 US 358; 90 S Ct 1068; 25 LEd 2d 368 (1970); People v Wright, 408 Mich 1 (1980); US Const, Am XIV; Const 1963; Art 1, § 17. Thus it has been repeatedly held that a jury instruction which shifts the burden of proof to defendant or which is susceptible to such interpretation violates the defendant's right to due process, Mullaney v Wilbur, 421 US 684; 95 S Ct 1881; 44 LEd 2d 508 (1975); Sandstrom v Montana, 442 US 510; 99 S Ct 2450; 61 LEd 2d 39 (1979); People v Clark, 340 Mich 411 (1954). Instructions which lessen the burden of proof are similarly treated. People v Dumas, supra (reversible error where the instruction permitted the jury to return felony murder verdict without determining that the accused had a malicious state of mind); People v Gaydosh, 203 Mich App 235, 237 (1994) (reversible error in resisting and obstructing trial to instructing that defendant's refusal to consent to blood test was sufficient resistance to support conviction; instruction was tantamount to directed verdict, freed prosecution from its obligation to prove each element of crime beyond reasonable doubt, and shifted burden of proof).

Likewise, it has repeatedly been declared that, in the absence of an understandingly tendered waiver by the defendant, it is reversible error for a trial court to instruct the jury that an essential element of the crime charged has been established. United States v Main, 113 F3d 1046, 1049-1050 (CA 9, 1997) (reversing manslaughter conviction where the trial court's instructions removed the factual question, of whether the victim's death was within the risk created by the defendant's conduct, from the jury);

21

People v Reed, 393 Mich 342, 348-351 (1975); People v Chamblis, 395 Mich 408, 420-423 (1975); People v Allensworth, 401 Mich 67, 68-71 (1977); People v Roby, 404 Mich 807 (1978); People v Gallagher, 404 Mich 429, 438 (1979); People v Tice, 220 Mich App 47, 53-55 (1996).

Burden-shifting instructions generally are considered so antithetical to basic due process that reversal is often required even without an objection, Connecticut v Johnson, 460 US 73; 103 S Ct 969; 74 LEd 2d 823 (1983); People v Dolsen, 411 Mich 1045 (1981), rev'g 102 Mich App 378 (1980); People v Wright, 408 Mich 1, 19 (1980); People v Hudson, 123 Mich App 624 (1982), and in the face of otherwise correct instructions on the burden of proof, Sandstrom v Montana, supra; People v Wright, supra, unless the error is harmless beyond a reasonable doubt.  The same is true of instructions which remove an element or defense from jury consideration.  See People v Hess, 214 Mich App 33 (1995); People v Tice, supra (opinion does not indicate that there was an objection, only that the defendant contested the element).

The error was not harmless.   The question is whether that jury, properly instructed, could have reached a different result. People v Vaughn, 447 Mich 217, 238 (1994).  The only evidence linking Defendant to the killing was the testimony of Lavero Crooks and Jovan Johnson.  Both were admitted crack cocaine dealers, and, according to Crooks, both were friends.  Neither came forward for months after the crime, until it was in their respective self interest.  Crooks did not accuse Defendant of the killing until after Defendant had allegedly assaulted and threatened him over drug turf.  Johnson did not

22

accuse Defendant until after he found himself in jail on a drug charge, and feared he would be implicated in the murder. Moreover, the two men told such different stories that it was inconceivable that they had actually witnessed the same event. For instance, Crooks described a scenario where Defendant went to the man in the field, argued with him over whom he could buy drugs from, crossed back to the house, went inside, came out with a gun, fired the initial shots from the porch, returned to the field, turned the fallen man over onto his back, rifled through his pockets, and then fired some more. Johnson, by contrast, testified that Defendant went to the man in the field, argued with him, chased the man around the tree, and fired at him. He denied that Defendant returned to the house for a gun, fired from the porch, turned the man over, or went through his pockets. There were also differences in their testimony as to who said what, whether Johnson left the porch, etc. Johnson also testified that he did not see Crooks out there that morning, although he knew Crooks' car and Crooks claimed it was parked right there. There was no weapon or physical evidence tying Defendant to the scene or the killing, and no admissions by Defendant. The motive for Defendant to have shot Mr. Thomas is incomprehensible. This was a case where the jury could well have entertained a reasonable doubt and found that the prosecution had not sustained it burden of proof, but for the above instructions on causation.

Nor was the error corrected by other instructions. The contested instruction on causation was given repeatedly. Further, where both correct and incorrect instructions are given, it is presumed that the jury followed the incorrect one. People v Clark, 340 Mich

411 (1954); People v Hess, supra at 37. This principle is particularly applicable where incorrect instructions are more specific than the correct ones. Notaro v United States, 363 F2d 169, 176 (CA 9, 1966). See also Francis v Franklin, 471 US 307, 319; 105 SCt 1965; 85 LEd2d 344 (1985). The error here was plain, and affected Defendant's substantial rights.

Although defense counsel, when asked by the Court, expressed satisfaction with the jury instructions as a whole (III 120), this issue should nonetheless be reviewed for plain error. While an issue that has been waived may not be raised on appeal, People v Carter, 462 Mich 206, 214 (2000), it is likewise true that "waiver" is "the intentional relinquishment or abandonment of a known right." Id at 215. Where counsel proposes an instruction, or discusses and agrees to a specific instruction, this is fairly interpreted as an "intentional relinquishment". However, it is unfair to interpret a general expression of satisfaction at the end of the instructions as being anything more than forfeiture, a failure to recognize an error and a failure to object. To treat a general expression of satisfaction as waiver places an unfair burden on trial attorneys and on the defendants that they represent.

In the alternative, this Court must decide whether the failure of defense counsel to object to the above instructions and/or his general expression of satisfaction denied Defendant the effective assistance of counsel. Strickland v Washington, supra. Only sound trial strategy will defeat a claim of ineffective assistance. People v Dalessandro, 165 Mich App 569, 578 (1988). See also In re People v Schindler, 433 Mich 860 (1989),

24

rev'g <u>Bay County Prosecutor</u> v <u>Bay Circuit Judge</u>, 174 Mich App 269 (1988).  The sole defense was that it was not Defendant who shot and killed the deceased.  There is no sound strategy that would account for a failure to object to instructions on causation which were contrary to the defense theory and which assisted the prosecution in obtaining the murder conviction.  Applying the <u>Strickland</u> prejudice standard to the facts of this case, discussed above, it is more probable than not, with the proper instruction, Defendant would not have been found guilty.

Because the record on ineffective assistance is clear and adequate for review, Defendant has not separately moved to remand for an evidentiary hearing per <u>People</u> v <u>Ginther</u>, 390 Mich 436, 443 (1973). See <u>People</u> v <u>Ullah</u>, 216 Mich App 669, 684 (1996); <u>People</u> v <u>Cicotte</u>, 133 Mich App 630, 636 (1984); <u>People</u> v <u>Kenneth Johnson</u>, 144 Mich App 125, 129-130 (1985). If this Court believes to the contrary, then a hearing is requested

# SUMMARY AND RELIEF AND REQUEST FOR ORAL ARGUMENT

\

**WHEREFORE**, for the foregoing reasons, Defendant-Appellant asks that this Honorable Court reverse his conviction.

Respectfully submitted,

**STATE APPELLATE DEFENDER OFFICE**

BY: _____
**SUSAN J. SMITH (P25619)**
Assistant Defender
3300 Penobscot Building
645 Griswold
Detroit, Michigan  48226
(313) 256-9833

Dated:  January 22, 2004

STATE OF MICHIGAN

IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,
           Plaintiff,

-vs-                                 Case NO. 03-1609

MICHON HOUSTON,                Court of Appeals No._____
           Defendant.

_____/

## MOTION FOR PEREMTORY REVERSAL

    COMES NOW, Defendant, in the above-caption case and makes this his MOTION FOR PEREMPTORY REVERSAL pursuant to MCR 7.211(C)(4). and respectfully showing this honorable court the following:

    1. Defendant Houston was convicted of first degree premediated murder(MCL 750.316(1)(a), felon in possession of a firearm(MCL 750.224f, and felony firearm(MCL 750.227b.

    2. Defendant asserts that Hon Vera Massey Jones' ORDER dated November 15,2006 is clearly inaccurate, vague, and not based on the law, and an obvious misrepresentation of the facts in the instant. Defendant further shows the following as evidences of this granting of the peremtory reversal:

    #1. Accordingly, the judge improperly referenced April 7, 2003 page 17 to deny defendant's position of the "FLIGHT EVIDENCE", when in fact, he referenced mumtiple authorities and reference thereto.See 6.500 Motion for relief from judgment. Defendant has appropriately shown that multiple references were made during the trial regarding the flight evidence. Yet, judge Jones relied only on one reference to the flight to justify her finding. Defendant surrenders:

    #2. Before flight evidence may be considered as evidence of guilt, the flight <u>must</u> suggest: 1) actual flight; 2) due to

consciouness of guil   3) based upon the crime  arged. US v Cooks, 102 Fed. Appx. 888 (6th Cir. 2004).

#3 In determing whether other bad acts evidence is admissible the Court of appeals a three part test: First, the court must decide whether there is sufficient evidence that the other act in question actually occurred; second, if so, the court must decide whether the evidence of the other act is probative of a material issue other than character; and third, the court must decide whether the probative value of the evidence is substancially outweighed by its potential prejudicial effects. US v Trujillo, 376 F3d 583 (6th Cir 2004).

#4 The task of and for a District Court in determining whether the proffered evidence in fact tends to prove guilt and not merely ther terror that may fall an innocent person confronted by the criminal justice system, and whether the evidence, even if probative of guilt, is so prejudicial tht its admission offends Fed. R. Evid US v Dillon, 870 F2d 1125 (6th Cir. 1989).

#5. The Sixth explained in United States v Touchstone, 726 F2d 1116, 1119 (6th Cir. 1984), that flight evidence is generally admissible as evidence of guilt, and... juries are given the power to determine "how much weight should be given to such evidence. And further stated that cases following Meyers have indicated that immediately generally only becomes important in those cases where the defendant does not know, or his knowledge is doubtful, about the charges and accusations made against him." Emphasis added.

#6 The Fifty Circuit in United States v Meyers, 550 F2d 1036 (5th Cir 1977), stated that, to admit flight evidence, the govern- ment must ensure that each link in the chain of inferences leading to a conclusion of consciouness of guilt of the crime charged is sturdily supported. (Quoting from US v Skeddle, 981 F Supp 1074(ND Ohio

1997). Several Court have adopted the formulati of the Meyers

Court. See US v Schepp, 746 F2d 406, 409-410 (8th Cir 1984); United

States v Martinez, 681 F2d 1248, 1255 (10th Cir 1982); United States

v Borders, 693 F2d 1318, 1325 (11 th Cir 1982).

#7. US v Dillon, 870 F2d 1125 (6th Cir 1989), adopted the Meyers

four part analysis in which to introduce flight evidence, which is;

(1) From the defendant's behavior to flight; (2) From flight to

consciouness of guilt; (3) from consciouness of guilt to conscisous-

ness of guilt concerning the crime charged to actual guilt of the

crime charged. Anumber of courts have held that, to prove the

second and third inferences in the four-part analysis, there must

be a showing that the defendant had learned of the criminal charge

against him when he fled. US v Dillon, supra. In United States v

Beahm, 664 F2d 414, 420 (4th Cir 1981),the fourt Circuit, elaborating

on the Meyers, four part analysis, stated that the inference of

consciouness of guilt from flight evidence would be completely

unfounded where a defendant flees after commencement of an invest-

igation unrelated to the crime charged, or of which the defendant

was unaware.(EMPHASIS ADDED).

#8. In Beahm, the prosecution attemopted to prove defendant's

consciousness of guilt by offering evidence that he had fled the

jurisdiction before prosecution. The court found ample evidence to

support the first Myers inference that defendants conduct inferred

flight, however, tht the second inference, requiring some evidence

tht defendant's flight inferred consciousness of guilt was not met:

In this case, there was ample evidence tht defendabn "FLED" the

jurisdiction , but no evidence that he was aware the he was the subject

of a criminal investigation. He did receive a note from the F.B.I.

on the day he "FLED", but nothing in the note suggest that the F.B.I.

wanted to arrest him r that it even suspected i. In essence, the jury was allowed to draw an inference of ultimate guilt from <u>flight</u> based upon an inference that defendant felt guilty after receiving a note from the F.B.I., and this was error. <u>United States</u> v <u>Beahm</u>, 664 F2d 414, 420 (4th Cir 1981); <u>United States</u> v <u>Skeddle</u>,supra.

#9. Because of the inherent unreliability of evidence of flight, and the danger of <u>PREJUDICE</u>, its use may entail.(see E. <u>Cleay,</u> <u>McCormick on Evidence</u> §§ 271, p655, rev.ed.1972), A flight instruction is improper unless the evidence is sufficient to furnish reasonable support for <u>all four</u> of the necessary inferences. <u>Meyers</u>, supra at 1050.

NOTE: As the record indicates, defendant was not aware of any charges against him in the instant case. And immediately before flight, defendant was arguing with another person who he was fueding with. As a matter of fact, there were no charges(Murder) on defen- dant at the time of alledged flight... More importantly, the defendant was not even a suspect at the time of the flight.

#10. The court held flight instructions to be error in the following cases because the defendants were "unaware" at the time of their flight that they had been charged with a crime. <u>United</u> <u>States</u> v <u>White</u>,488 F2d 660, 662 (8th Cir 1973); <u>Embre</u> v <u>United States</u>, 320 F2d 666 (9th Cir 1963); <u>United States v Meyers</u>, supra.

Of paramount and significant importance is the fact tht over the years, FLIGHT EVIDENCE has only been admissible if defendant was charged with a crime,---- and knew that he was charged with the crime. Hence, at evidenced from the record, defendann wasnt even charged, nor did he have knowledge that he was wanted for a crime. The flight evidence was clearly and prejudicially entered against this defendant. And the jury confused at the improperly admitted evidence against defendant Houston. Prejudice is obvious here.

Referencing the Court Order dated November 15,2  5(see attached),

PAGE #2 par. 3, whereby the Honorable Judge stated:

" Defendant next claims ineffective assistance of trial counsel.

Defendant admits that the question of prior bad acts was raised before

the Court of Appeals. ...FInally, defendant claims that counsel was

ineffective because he told defendant that he <u>should</u> not testify.

Giving of advise did not deprive the defendant of his right to testify".

Petitioner asserts that the court improperly dismissed defendants

contention of the ineffectiveness of appellate counsel by attempting

to consolidate the two issues. It should be observed by this court

that the prior bad acts issue and the ineffective assistance of trial

counsel are two very <u>distinct</u> issues before the court. Granted, this

defendant, did, in fact, previously raise the former issue, but at

no time did appellate raise the ineffectiveness of trial counsel on

direct appeal.(see Appellate's Brief).

Further, the trial judge relied upon MCR 6.508(D) :

<u>ENTITLEMENT TO RELIEF.</u> The defendant has the burden of establishing
entitlement to the relief requested...

(2). alleges grounds for relief which were decided against
the defendant in a prior appeal or proceeding under this subchapter
unless the defendant establishes that a retroactive change in the
law has undermined the prior decision.

At bar, and of paramount, the jurisdiction that the judge cited

was correct and binding <u>IF</u> defendant has previously raised the issue

on appeal or in a subsequent proceeding. As clearly evidenced from

the record, this is not the case. Hence, the trial judge relied on

unsubstanciated information not supported by the record. This court

must GRANT Peremtory Reversal on this ground as it is so manifest

as to require such action. Appellate prays for relief on this

issue before this honorable court.

3. Another obvious justification as to why his court should grant the peremptory reversal is the fact that the hon judge Jones only referenced one isolated incident of the vouching of the credibility of witness(es). Defendant enumerate numerous quotes from the record where the prosecution voched for witness credibility.

"These people told you the truth, they're honest"(TT4/7/03 pg. 62. This incident was not addressed by the prosecution indirectly-- the prosecutor blatently and openly vouched for the credibility of his own witnesses. This type of conduct has been deemed improper by various courts in this circuit. In the Byrd v Collins, 209 F3d 486, 537 and n 43 (6th Cir 2000) And in Boown v Palmer, 358 F Supp 2d 648 (ED Mich 2005), two major rulings on when a prosecutor vouches for the credibility of state's witnesses. These courts found such conduct not harmless error and granted relief. Here, the prosecutor's characterization of the witness' testimony was "TRUTH" and "HONEST" constitutes improper vouching of credit- ibility... Defendant recognizes that such an error is only reversible where a curative instruction could have eliminated the prejudice. People v Knapp, 244 MA 361 (2001).

At bar, this case is exactly similar to tht of People v Kulick, 209 MA 258, remanded 449 M 851 (1995), where the prosecutor made repeated assertions during argument that defendant was guilty beyond a reasonable doubt, together with multiple instances of vouching for the state's witnesses, denied defendant a fair trial where the comments were neither responsive to defense argument nor cured by cautionary instructions.The prosecutor's vouching was grossly improper and mandates reversal.

11. Finally, the circuit court judge ruled that the Court of Appeals ruled on the insufficiency of evidence. As evidenced from

Defendant's BRIEF ON APPEAL constructed and filed by the STATE DEFENDER OFFICE, by Susan J. Smith(P 25619), whereby she raised the foregoing issues on direct appeal;

1) DEFENDANT WAS DENIED A FAIR TRIAL BY THE INTRODUCTION AND ARGUMENT OF EVIDENCE THAT HE HAD ASSAULTED PROSECUTION WITNESS LAVERO CROOKS WITH A GUN AND HAD THREATENED TO KILL HIM OVER DRUG TURF.

2) THE TRIAL COURT'S INSTRUCTION ON THE CAUSATION ELEMENT AND/OR SHIFTED THE BUDEN OF PROOF; COUNSEL'S FAILURE TO OBJECT CONSTITUTED INEFFECTIVE ASSISTANCE.

At no time whatsoever did appellate counsel even remotely raise the insufficiency issue before any court of law. Trial judge, on the 6.500 improperly and indiscriminately ruled"the Court of Appeals has decided this issue[insufficiency] against the defendant. This, simply put, is not true.

12. The errors committed by the trial court is so manifest as it requires immediate reversal by this appellate court. Or in the alternate, grant equitable relief as this court deems appropriate under the circumstance.

For these reasons, defendant Houston respectfully prays this Court GRANT Peremptory Reversal, or in the alternate, grant him an evidentiary hearing as to the merits of his issues.

Respectfully submitted,

Mr. Michon Desmond Houston
Saint Louis Corr. Facility
8585 N. Croswell Road
St. Louis, MI.   48880

Date: ~~December 20 ,2006~~. January 6, 2007

State of Michigan

County of Gratiot

## AFFIDAVIT OF MICHON HOUSTON

I, Michon Houston, first duly sworn and states:

1. I am the defendant in case No. 03-001609 from the county of Wayne, Circuit Court with the Honorable Judge Vera Massey Jones presiding.

2. I filed my 6.500 Motion for relief from Judgment in the Wayne COunty Circuit Court.

3. I affirm that on 11/15/06 the Hon. Judge Vera Massey Jones denied said motion entering an ORDER; whereby she misstated facts not supported by the record, she misconstrued my arguments, and abused her judicial authority in rendering such conclusion.

4. I truthfully and with a great degree of integrity constructed my application for leave to appeal in the Court of Appeals.

5. I make this affidavit on personal knowledge, setting forth such facts as admissible in evidence, if sworn to as a witness, I can testify competently to the facts stated herein.

Further affaint say not:

Michon Houston
Saint Louis Corr. Fac.
8585 N. Croswell Rd.
St. Louis, MI. 48880

Subscribed and sworn to before me
this _5_ day of _January_ 200_7_

_Judith A. Raddatz_ .

My Commision Expires: _6 March 2007_

JUDITH A. RADDATZ
NOTARY PUBLIC BAY CO., MI
MY COMMISSION EXPIRES Mar 6, 2007

STATE OF MICHIGAN

IN THE MICHIGAN COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff,

-vs-

MICHON DESMOND HOUSTON,

Defendant.

COA No. _____
LC No. 03-001609-01

_____/

## MOTION FOR AN EVIDENTIARY HEARING

COMES NOW, Michon Desmond Houston, In Pro Per, and pursuant to MCR 7.211(C)(1), prays that this court will grant the above-entitled MOTION FOR AN EVIDENTIARY HEARING for the ineffectiveness of counsel so a testimonial record can be made. Petitioner respectfully states:

1. Defendant was represented by court appointed counsel, David E. Lankford(P-43536),645 Griswold Street, Suite 2350, Detroit, MI. 48226.

2. Defendant subsequently filed for an Evidentiary Hearing at the Circuit Court. Defendant shows that he must overcome the Procedural default barrier, set forth in MCR 6.508(D)(3) because the this a post-conviction(Collateral) Motion for an Evidentiary Hearing. It is all the more imperative that defendant be allowed to make a testimonial record in this court, concerning his claims raised, dealing with the Ineffectiveness of trial counsel on his standing. This would excuse the procedural default bar on all issues that were raised in his Motion for Relief from Judgment in the Circuit Court.

3. In regards to MCR 6.508(D)(3), the court stated in Alexander v Smith, 342 F Supp 2d 677, 685-686(ED Mich 2004):

"Michigan Court Rule 6.508(D)(3) governs the procedures

for collateral appeals and denies relief if the defendant alledges claims that could have been raised in a direct appeal from the conviction, unless cause and prejudice is shown.(Quoting Carver v Smith, 340 F3d 340,346(6th Cir 2003).

4. Numerous [Federal Court] recently have discussed the "cause and prejudice" hurdle of MCR 6.508(D)(3), which shows the importance of the granting of this motion. The very recent[Federal case] which cite MCR 6.508(D)(3) are as follows:

> Hicks v Straub, 377 F3d 538, 537-549(6th Cir 2004);
>
> Barber v Birkett, 276 F Supp 2d 700, 708-709(EDMich 2003);
>
> Alexander v Smith, 342 F Supp 677, 685-686(ED Mich 2004);
>
> Dixon v White, 366 F Supp. 2d 528, 542-543(ED Mich 2005);
>
> Satterlee v Wolfenbarger, 374 F Supp. 2d 572 (ED Mich 2005);
>
> Higgins v Renico, 362 F Supp 2d 904, 919-921(ED Mich 2005);
>
> Howard v Bouchard, 405 F3d 459, 475-479(6th Cir. 2005;

ALL of these [Federal cites] show the IMPORTANCE of an Evidentiary Hearing being held regarding defendant's claim of a CONSTITUTIONAL RIGHT to the 6th Amendment concerning the effectiveness of counsel.

5. In Satterlee v Wolfenbarger, supra, (citing Johnson v Warren, 344 F Supp 2d 1081, 1095(ED Mich 2004), the court stated in regards to the Stricklan v Washington, 466 US 668; 104 SCt 2052; 80 LEd 2d 674(1984), standard/test applies to "both trial and appellate counsel". (Quoting Bowen v Folft, 763 F2d 191, 194 fn 3 (6th Cir 1985), See also, Smith v Robbins, 528 US 259, 285;120 SCt 746; 145 LEd 2d 756(2000).

6. As the [Federal court] noted/states in Seymour v Walker, 224 F3d 542, 550(6th Cir 2000)(Quoting Murray v Carrier, 447 US 478, 488; 106 SCt 2638;91 LEd 2d 397(1986):

"If a defendant can show that appellate counsel was ineffective on his first apeal, and that rose to a level of a violati of his

6th Amendament Right.. would excuse the PROCEDU... L DEFAULT". See also
Smith v Robbins, 528 US 259 ,285,supra. see also Tucker v Renico,
317 F Supp 2d 766, 771-772 (ED Mich 2004).: Hicks v Straub, 337 F3d
538, 557-559(6th Cir 2004): Burton v Renico, 391 F3d 764, 773-774
(6th Cir 2004); HIggins v Renico,362 F Supp 2d 904, 921(ED Mich 2005).

7. Defendant now is requesting what is commonly known as a
Reed hearting in the State of Michigan v Reed, 198 Mich App 639,
647(1993); People v Reed, 449 Mich 375, 413 (1995). So that defen-
dant will be able to make a testimonial record in the trial court
by placing"Court appointed David E. Lankford on the stand, under
oath, so counsel will be able to account for his trial decisions
or lack therof, by not objecting to improper prosecutorial statements
and failed to file critical pre-trial motions, failed to advance a
alternative theory of manslaughter, coerced defendant NOT to testify
in a court of law, and answer to his "sound trial strategies".

8. It is well established that a criminal defendant has a right
to effective assistance of counsel. Strickland v Washington,supra,
People v Grant, 470 Mich 477 (2004); People v Pickens, 466 Mich 298
(1994); Sellers v United States, 316 F Supp 516 (ED Mich 2004); People
v Tommolino, 187 Mich App 14, Iv den 439 Mich 897 (1991).

9. There exists no justifiable reason why trial counsel failed
to represent the obvious defenses in the instant case, nor is there
any "sound trial stradegy" to prohibit a defendant from testifying
over his objection. Trial counsels perfromance fell drastically
below the reasonable standard of the ordinary norm in this area.

10. Defendant also shows that his appellate counsel was clearly
ineffective by not raising colorable claims during the first tier
of his appeal. Under the 6th and 14 Amendments to the United States
Constitution, defendant has a right to the effective assistance of
appellate counsel. Evitts v Lucey, 469 US 387, 394-397; 105 SCt 830

83 LEd 2d 821 (1985, Ross v Moffitt, 417 US 60  609-610; 94 SCt.
2437; 41 LEd 2d 341(1974); Taylor v Meyers, 345 F Supp 2d 855,865
(WD Tenn, 2003)(Quoting Pennsylvania v Finley, 481 US 551, 555; 107
SCt 1990; 95 LEd 2d 539 (1987)(Stating, "The right to effective
assistance of counsel to the first appeal of right, and no further".
See also Smith v Robbins, 528 US 259 ____ ; 120 SCt 746: 145 LEd2d
756(2000)( Re-affirming Evitts, which stated, " A defendant is
ENTITLED to the effective assistance of appellate counsel".

11. Just recently in Maples v Coyle, 171 F3d 408, 428(6th Cir.
1999):

"The issues presented on defendants[Collateral appeal]
of his conviction, were clearly stronger than those presented by
appellate counsel in his application. Thus, showing ineffectiveness
by the omitting of significant and obvious issues which whould of
resulted in reversal on appeal, was deficient and prejudice defen-
dant. Seee also, Matthew v Abramajtys, 92 F Supp 2d 615 (ED Mich
2000); Burton v Renico, 391 F3d 764, 773-774(6th Cir 2004).

Defendant should be allowed an evidentiary hearing to put in front
of the trial court the test set forth in Maples v Coyle,supra which
stated in part:

"The cases decided by the court on the issues of
ineffective assistance of appellate ounsel's suggest the following
considerations that ought to be taken into account in determining
whether an attorney on direct appeal performed reasonably competent"

1. Were the ommited issues significant and obvious?

2. Was the arguably contrary authority on the omitted issues?

Were the omitted issues clearly stronger than thse presented?

4. Were the omitted issues objected to at trial?

5. Were the trial courts ruling subject to deference on appeal?

6. Did the appellate counsel testify in a colleteral proceeding as
to his/her appeal strategy, and, if so, were the justifications
reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the defendant and appellate counsel review the facts?

9. Is there evidence that counsel reviewed the facts?

10. Were there omitted issues dealt with in order and other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Id Maples v Coyle, 171 F3d at 427-428.

12. Defendant asserts that both trial counsel and appellate counsel did, in fact, rise to the level of ineffectiveness as prescribed by the 6th and 14 Amendments under the United States Constitution of America, by omitteng significant defenses and obvious issues which were clearly stronger than the issue he advanced on direct appeal in his appeal of right. This defendant must have an evidentiary hearing(in the trial court) tok develope a testimonial record to support his constitutional claims raised in his subsequent Motion to this honorable court, to the extent that some of the claims raised therein, depends on facts not of record, and as far as to appellate'sa decisions and actions or lack thereof. See attached affidavit hereto.

13. Veyy recently, the United States Supreme Court in Massaro v United States, 538 US 500, 504-05;123 SCt 1690; 155 LEd2d 714(2003), in regards to teh timing of an effective asssistance of counsel claim the court stated:

> "That while generally, claims not raised on direct appeal
> may not be raised on colleteral review unless the [petitioner/def-
> endant shows CAUSE and PREJUDICE. The failure to raise an ineffective
> assistance of counsel claim on direct appeal does not bar the claim
> from being brought in a later, appropriate(collateral proceeding)
> Id 538 US 504-505. See also, Hargrave-Thomas v Yukins, 374 F3d 383,
> 392 fn 2 (6th Cir. 2004).

14. In the present case, due to the fact, that defendant is requesting that this honorable court grant an evidentiary hearing so  a testimonial record can be made. Defendant nonetheless, wishes to preserve this requests for an evidentiary hearing when, and if need be, in the [Federal courts].

15. Since the ۷ent of the "Anti-terrori۷ effective death penalth act"(A.E.D.P.A.), several[federal courts] have recently held: "that in order to be entitled to an evidentiary hearing in the [federal courts] the [petitioner/defendant] MUST have sought an evidentiary hearing at EVERY stage of the [state collateral proceedings]", or else [defendant] in accordance with 28 USC 2254(e)(2). See Williams v Taylor, 529 US 420, 432; 120 SCt 1479; 146 LEd2d 435(2000);Thompson v Bell, 315 F3d 566'594-595(6thCir 2003)(Holding under teh AEDPA, evidentiary hearings are not mandatory. Instead, AEDPA contains express limitations on [federal courts] discretion to grant an evidentiary hearing. If[petitioner/defendatn] has failed to develope the factual basis/allegations in teh [state courts], the [federal court] may hold a hering if the petitioner's factual allegations,if proved, would entitle him to relief. See also Sanborn v Parker, 289 F Supp 2d 828-832(WD Ky. 2003); Satterlee v Wolfenbarger, supra.

16. In Wolfenbarger, 374, teh court stted:

"Under teh opening clause of §§ 2254(E)(2), a failure to develope the factual basis of a claim by a [habeaus petitioner] is not established unless thàre is a lack of deligece, or some greater fault attributed to teh prisoner or prisoner's counselor. Williams v Taylor, 529 US 420, 432;120 SCt 1479; 146 LEd2d 435(2000).

Deligence for purposes of teh opening clause of this subsection of the (AEDPA) depends upon whether teh prisoner made a reasonable attemp in light of the information availabe at the time, to investigate and pursue claims in [state courts]; it does not depend upon whether those efforts would have been successful. Id 529 US at 435;120 SCt 1479.

Continuing Wolfenbarger, 374,supra, the court further stated:

"Federal-state commit is not served by stating that the prisoner has failed to develope the factual basis on a claim where he was unable to develope his/her claim in [state court] despite

deligent efforts to do so. In that circumstance, an evidentiary hearing in [state court] is not barred by 28 USC §§ 2254 (e)(2). Williams v Taylor,supra.

If there is no lack of deligence at the relevant stages in the [state proceedings], a petitioner has not failed to develope the facts under teh opening clause of teh AEDPA governing whether a [federal habeaus] petitioner/defendant may obtain an evidentiary hearing on a claim for which petitioner has failed to develope a factual basis in [state court] and petitioner will be excused from showing compliance with teh balance of the subsections requirements. Id 529 US 437;120 SCt at 1479.

17. In the present, it is clearly established that if a [Defendant/petitioner does not, at a bare minimum, request an evidentiary hearing at every stage and in all[federal courts]. Vroman v Brigano, 346 F3d 598, 606(6th Cir 2003. Therefore, this is why this defendant fully intends to seek deligently in all three tiers of the [michigan collateral courts], which are (1) THE TRIAL COURT; (2) The Michigan Court of Appeals; (3) The Michigan Supreme Court. So, if need be because all [state courts] in Michigan on defendant's post-conviction( collateral) proceedings have failed to grant defendant's requests, defendant will still be able to ask and may receive an evidentiary hearing in the [federal courts]. See Mason v Mitchell, 320 F3d 604, 621 fn 6 (6th Cir 2003); Bowling v Parker,344 F3d 487 510-512(6th Cir 2003); Sanborn v Parker, 289 F Supp 2d 828, 830-832(WD Ky 2003).

## WHEN AN EVIDENTIARY HEARING SHOULD BE HELD

18. In the present case, defendant has attached an affidavit in support of BOTH ineffective assistance of trial and appellate counsel. Therefore, none of the following cases apply to the present; Dorchy v Jones, 320 F Supp 2d 564, 580-581(ED Mich 2004);

THE court stated:

"Conclusory allegations, without evidentiary support do not
provide a basis for holding an evidentiary support hearing in [federal
court] (Citing Workman v Bell, 160 F3d 276, 287(6th Cir 1998);
Zettleman v Fulcomer, 923 F2d 284, 301 (3re Cir 1991)(Bald assertions
and conclusory allegations does not provide sufficient basis to hold
an evidentiary hearing in [federal habeas proceedings].

In Sowell v Bradshaw, 372 F3d 821, 830(6th Cir 2004) the court

stated:

"Finding that the failure to attach documentation can
result in a separate and independent "procedural default".(Quoting
Lorraine v Coyle, 291 F3d 416, 426(6th Cir 2002). See also Williams
v Bagley, 380 F3d 487, 512(6th Cir 2003)(internal quotations omitted).

In Williams v Bagley, supra, the court stated:

"HOWEVER, even in a death penalth case, blad assertions
and conclusionary allegations do not provide sufficient grounds to
warrant requiring the [state] to respond to discovery or to require
an evidentiary hearing.(Citing Bowling v Parker, supra

Mnaifestly, the [federal district court] did not abuse its

discretion in denying [petitioners ] request, given [his] failure

to specify which of [his] claims warranted an evidentiary hearing

and what could be discovered through an evidentiary hearing.(Citing

Stanfor v Parker, 266 F3d 442, 460(6th Cir 2001). See also, Herbert

v Jones, 351 F Supp 2d 674, 679(ED Mich 2005).

19. Lastly, defendant refers this honorable court to all of

his Constitutional issues raised in his 6.500 Motion for Relief from

Judgment and Supplemental Brief in Supprt that are significant and

obvious which are stronger than the issues raised by appellate

counsel on appeal of right. The necessity for an evidentiary hearing

being held is absolutely essentiaal so that a testimonial record

can be made, so this honorable court can make a "Full and fair"

determination and factual basis analysis after listenting to both

from trial and appellate counsel's under oath, in dealing with

defendant's cnastitutional claims of ineffectiveness of counsel(s)

on defendant's appeal. Especially considering that defendant MUST

now overcome the procedural default barrier/hurdle of Michigan Court

Rule 6.508(D)(3) in regards to his post-conviction (collateral)
proceeding filed contemporaneously herewith.

Pursant to MCR 2.114, "I declare that all the contents
herein are true and correct to the best of my knowlege, information
and belief".

Date: ~~November 30,~~ *December 20,* 2006.

Michon Desmond Houston
Defendant In Pro Per
Saint Louis Corr. Fac.
8585 N. Croswell Road
St. Louis, MI. 48880

SWORN AFFIDAVIT OF

** MICHON DESMOND HOUSTON**

I, Michon Desmond Houston, being first duly sworn, swear under the penalty of perjury, that the following statements are true to the best of my information, knowledge and belief.

1. The courts ordered attorney David E. Lankford(P-43536) to represent me in criminal case number 03-001609-01.

2. I had fully intended to testify at my trial, but my will was overcome by my court appointed attorney, David I. Lankford.

3. Mr. Lankford was very stern that I not testify to the point that he instructed me he would withdraw if I got on the stand. I put my trust in him as I was desolate for help.

4. I was substancially pressured by my court appointed attorney not to testify. He informed me that the prosecutor did not have enough evidence to convict me of the charges.

5. I was in a very depressed state of mind over the levied charges against me.

My attorney insisted that I not take the stand in my own behalf. He was very intimidating and controlling!!

WHEREFORE, I, Michon Desmond Houston, swear that the above 6(six) statements are the truth, that if called to testify, under oath, my testimony would be teh same.

Date: _1-8-07_

Respectfully submitted,

_Michon_

Michon Desmond Houston
Affiant/Defendant Pro per

Sworn and subscribed to me on
this 5 day of ~~November~~, 200~~6.7~~
January
_Judith A. Raddatz_

JUDITH A. RADDATZ
NOTARY PUBLIC BAY CO., MI
MY COMMISSION EXPIRES Mar 6, 2007

## STATE OF MICHIGAN

### IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plainfiff,

-vs-

                           Court of Appeals No.

MICHON D. HOUSTON,

        Defendant.

                           Lower Court No. 03-1609-01

_____/

**WAYNE COUNTY PROSECUTOR**

**Attorney for Plaintiff-Appellee**

_____/

**MICHON D. HOUSTON**

**Defendant-Appellate**
**IN PRO PER**

_____/

### DELAYED APPLICATION FOR LEAVE TO APPEAL

### STATEMENT EXPLAINING DELAY

### PROOF OF SERVICE

BY: MICHON D. HOUSTON
Defendant IN PRO PER
Saint Louis Correctional Facility
8585 N. Croswell Road
St. Louis, MI.          48880

Defendant-Appellant states in support of this appliication:

1. Defendant filed a motion for relief from judgement on 6-22-05.

2. The Third Circuit Court denied defendants motion for relief from judgement on 11-15-06 issuing an Order.

3. The Honorable Vera Massey JOnes reasons for denying defendants motion for relief from judgement was erroneous misstated facts, and did not coincide with established State and Federal Law. (See Exhibit A Court Oder).

4. The Court failed to review the complete argument within the Flight Evidence issue,and failed to ultilize the transcript Chart at the start of the Statements of Facts. This is also the same in the Court decision concerning the ½ Vouching issue. Then Coutt also erred by stateing that Defendant previously raised the issues of inneffective assistance of councel and insufficentcy of evidence. This issue was never raised on appeal of right. (See exhibit A and B. Court Order and Opinion from appeal of Right). (Also see Motion For Peremptory Reversal).

WHEREFORE, defendant-appellant asks this Court to grant this application and,,upon final hearing. And vacate the order from the Wayne County Circuit COurt and remand this cause to the Wayne County Circuit Court for further proceedings.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................... i-v

STATEMENT OF JURISDICTION.......................................... VI

STATEMENT OF QUESTIONS PRESENTED.................................. VII

STATEMENT OF FACTS................................................

I. DEFENDANT WAS DEPRIVED OF HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN THE PROSECUTION INTRODUCED "FLIGHT" EVIDENCE INTO THE TRIAL, WHICH WAS UNRELATED TO THE CHARGED OFFENSE.

II. DEFENDANT WAS DEPRIVED OF HIS FIFTH AND FOURTEENTH AMENDMENT RITHTS OF DUE PROCESS WHEN THE PROSECUTION VOUCHED FOR THE CREDIBILITY OF HIS OWN WITNESS.

III. DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO OBJECT TO IMPROPER CONDUCT ON THE PART OF THE PROSECUTION, FAILED TO OBJECT TO THE INTRODUCTION OF INADMISSIBLE AND PREJUDICIAL EVIDENCE, FAILED TO ADVANCE A DEFENSE OF MANSLAUGHTER, AND INTERFERED WITH DEFENDANT'S RIGHT TO TESTIFY.

IV. THE EVIDENCE OF PREMEDITATION AND DELIBERATION WAS INSUFFICIENT TO SUSTAIN A CONVICTION OF FIRST DEGREE MURDER.

V. DEFENDANT HOUSTON WAS DEPRIVED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE PREJUDICIAL ERRORS WHICH OCCURRED DURING HIS TRIAL.

VI. DEFENDANT HOUSTON WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL ON HIS FIRST APPEAL OF RIGHT WHEN APPELLATE COUNSEL FAILED TO CHALLENGE/AND OR ADVOCATE THE ERRORS PRESENTED HEREIN THAT WERE BOTH "OBVIOUS AND SIGNIFICANT".

SUMMARY AND REQUEST FOR RELIEF.....................................50

EXHIBIT A. WaYNE COUNTY CIRCUIT ODER, DATED@ 11-15-06

EXHIBIT B. APPEAL OF RIGHT, COURT OF APPEALS OPION.

MOTION FOR RELIEF FROM JUDGEMENT..............................................

BRIEF IN SUPPORT............................................................9-49

## INDEX OF AUTHORITIES

Case Laws

Alberty v United States, 162US 499; 16 SCt 864;40LEd2d 1051(1895)...11

Berger v United States, 295 US 78;55SCt 629;79 LEd2d(1935)...........15

Blackburn v Foltz, 828 F2d 1177(6th Cir 1987)........................25

Blackman v Booker,312 F SUPP 874 (ED Mich 2000)....................16

Burnette v Wells,289 US 670 (1932)..................................43

Cannon v Berry, 727 F2d 1020(11th Cir 1984).........................45

Coleman v Thompson, 501 US 722; 111 SCt 2546;115 LEd 2d 640(1991)...45

Cooper v United States, 94 USApp DC 343,345;218 F2d 39,41 (1954)....14

Daniel V Thigpen, 742 F Supp 1535 (M.D. Ala. 1990)..................49

Delgado v Lewis, 168 F3d 1148 (9th Cir 1999).......................48

Donahue v Cain, 231 F3d 1000 (5th Cir 2000)........................30

Donnelly v DeChristoforo,416 US 637;94 SCt 1868;40 LEd 2d 431(1974).20
Douglas v California,372 US 353;83SCt 814;9 LEd 2d 811(1963)........45
Entsminger v Iowa,386 US 748; 87 SCt 1402;18 LEd2d 501(1967).......44

Ellis v Lnaugh,873 F2d 830 (5th Cir 1989)..........................47

Evitts v Lucey,469 US 387;105 SCt 830; 83 LEd2d 821 (1985).......44,45

Ferguson v Georgia, 365 US 570;602; 81 SCt 756; 5 LEd2d 783(1961)...27

Freeman v Lane, 873 F2d 1252 (7th Cir 1992)........................47

Gideon v Wainright, 372 US 335,344; 83 SCt 792;9 LEd2d 799(1963)...45

Gochicoa v Johnson,53 F Supp 2d 943 (W.D. Tex 1999)................25

Griffin v Illinois, 351 US 12, 20; 76 SCt 585; 100 LEd 2d 891(1956).45

Groseclose v Bell, 130 F3d 1161 (6th Cir 1997): cert den 523 U.S. 1132
(1998)..............................................................26

Haskins v Lecurex, 16 F3d 1219 (6th Cir 1994).....................47

Henderson v Sargeant, 926 F2d 706 (8th Cir) amend 939 F2d 586 (8th Cir
1991)..............................................................26

In Re Winship, 407 Mich App 354, 368(1979).........................30

Houston v Lockhart,982 F2d 1246(8th Cir 1993)......................48

Jackson v Virginia, 443 US 307; 99 SCt 2781;61 LEd2d 560(1979)......30

Johnson v White, 430 ich 47, 52-53 (1988)...............24

Jones v Barnes, 463 US 745, 750-754;103 SCt 3308;77Led 987(1980)....47

Kotteakos v United States, 328 US 750;66SCt 1239;90LED2d 1557(1946).21

Lyons v McCotter, 770 F2d 529 (5th Cir 1985)........................26

Mapes v Coyle, 171 F3d 408 (6th Cir 1999)..........................46

Maher v People, 10 Mich 212 (1862)................................26

Matire v Wainwright, 811 F2d 1430.1438 (11 th Cir 1987)............42

Moore v Johnson,194 F3 586, 622 (8th Cir 1999).....................42

Penson v Ohio,488 US 75, 84; 109SCt 346;102LEd2d 300(1988).........46

People v Adair, 452 Mich 473 (1996).................................9

People v Allen, 390 Mich 383 (1973)...............................32

People v Allen, 39 MichAPP 483 (1972).............................32

People v  Bahoda, 448 Mich App 261 (1995)........................9,15

People v Bairefoot, 117 Mich App 225 (1982).......................41

People v Bigge, 288 Mich 417, 421 (1939)..........................21

People v Carines, 460 Mich 750 (1999)........................... 9,15

People v Chism, 390 Mich 104 (1973)...............................10

People v Clifton Fuqua, 146 Mich App 250 (1985).................17,18

People v Collier, 168 Mich APP 687 (1972)........................12,19

People v Crawford, 458 Mich 376 (1998)............................10

People v Erb, 48 Mich App 622 (1973)........................... 16,18

People v Farrar, 36 Mich App 294 (1971)........................18,20

People v Garcia,398 Mich 250 (1976)............................23,49

People v Gill, 43 Mich App 598 (1972)..........................34,37

People v Ginther, 390 Mich 436 (1973)..........................29,44

People v Grant, 445 Mich 535 (1994)..................... 9,19,22,23

People v Griffin, 108 Mich App 625 (1981).........................35

People v Hampton, 407 Mich App 354, 368 (1979)..................30,31

People v Herrara, (On Remand), 204 Mich 333 (1994).................24

People v Hoffmeister at 161; Lafave & Scott, Criminal Law, (2d ED), §§ 7.7, pp 563-564......................................................35

People v Houston, 11/9/04, C.O.A. #248742...............................40

People v Huff, 173 Mich 620 (1913)....................................18

People v Humphreys, 24 Mich App 411 (1970 )...........................18

People v Kelly, 231 Mich App 627, 646 (1998).........................41

People v Kimble, 470 Mich 305-309 (2004).............................40

People v Kraai, 92 Mich App 398 (1979)...............................13

People v Malone, 180 Mich App 347, 362 (1989)........................42

People v Metzeler, 193 Mich App 541, 546-547 (1992)..................30

People v Miles, 450 Mich 61, 67 (1995)...............................10

People v Morrin, 31 Mich App 301 (1971)...........................32,34

People v McElhaney, 215 Mich App 269, 283 (1996).....................15

People v Mc Kinnney, 410 Mich 413 (1981).............................11
People v Oster, 67 Mich App 490 (1976)...............................38
People v Plummer, 229 Mich App 293 (1998).......................  388

People v Pickens, 466 Mich 298 (1994).........................22,23,29

People v Pouney, 437 Mich 382 (1991).................................26

People v Purbat, 451 Mich 589 (1996).................................49

People v Quick, 58 Mich 321 (1885)...................................18

People v Reed, 449 Mich 375 (1995)...................................44

People v Robinson, 386 Mich 551, 563 (1972)..........................19

People v Rosales, 160 Mich 304 (1987)................................42

People v Sabin, 236 Mich App 1, lv gr't 461 Mich 896 (1999).........41

People v Schette, 240 Mich App 713, 720 (2000).......................15

People v Smith, 158 Mich App 220, 227 (1987)..................10,16,41

People v Skonwronski, 61 Mich App 71, 77 (1975)......................41

People v Taylor, 185 Mich App 1, 10 (1990)...........................40

People v Tilley, 405 Mich 38, 45 (1979)..............................35

People v Tommlino, 187 Mich App 14, lv den 439 Mich 897 (1991)......23

People v Ullah, 216 Mich App 669, 675 (1999)........................11
People v Wallace, 160 Mich App 1 (1987)..........................20,42

<u>Washington</u> v <u>Holfba__r</u>, 228 F3d 689 (6th Cir 2(__).............25

<u>Weygarandt</u> v <u>Dcharme</u>, 774 F2d 1491 (9th Cir 1985)..............25

<u>Williams</u> v <u>Washington</u>, 59 F3d 673, 682 (7th Cir 1995)..........42

<u>Whiteside</u> v <u>Scurr, v McKinnnon,</u> 995 F Supp 1404 (M.D. Fla 1998.27

<u>Wong Sun v United States</u>, 371 US 471; 83 SCt 407; 9 LEd2d 441(19950
.......................................................11

## CONSTITUTIONSD, STATUES, COURT RULES

US Const amend V, XIV........................................9,15

MCR 6.508(D)(3)................................................49

US Const amend VI..............................................41

## OTHER PROVISIONS

MRE 103(d)....................................................19

MRE 401.......................................................10

MRE 403.......................................................11

## CONSTITUTIONAL, AND SPECIAL CITES

Const. 1963, art 1, sec. 17.................................. 41

Const. 1963, srt 1, sec 20....................................40

ADM. ORD_ 2006-4(3)........................................44,46

People v Wells, 103 Mich App 455, 463 (1981).................25

People v Wolfe, 440 Mich 508,515 (1992).......................30

People v Williams, 123 Mich App 752 (1983)...................17

Rock v Arkansas, 484 US 44,51; 107 SCt 2704;97 LEd 2d 37(1987).27

Penson v Ohio, 488 US 75, 84; 109 SCt 346;102 LEd2d 300(1988)..46

Reetz v Kinsman Marine Transit, 416 Mich 97 (1982)......... 13,19

Ratcliffe v United States, 999 F2d 1023 (6th Cir 1993).........49

Sellers v United States, 316 F Supp 516 (E.D. Mich 2004).......22

Sizemore v Fletcher, 921 F2d 667 (6th Cir 1990)................16

Smith V Murray, 477 US 527; 106 SCt 2661; 91 LEd2d 397(1986)...46

Strickland v Washington, 466 US 668;104 SCt 2052¦80 LEd2d 674(1985)
..................................................16,22,29,44,47

United States v Barbour, 295 US App DC 111;813 F2d 1232(1987)..45

United States v Beasley, 491 F2d 687 (6th Cir 1974)............49

United States v Ex Rel Barnard v Lane, 819 F2d 798(7th Cir 1987)
..............................................................48

United States v Cook, 102 Fed Appx 888(6th Cir 2004)...........11

Uniteed States v Cotman, 88 f3d 487, 500 (7th Cir), cert den 117
SCt 326 (1996)................................................17

United States v Garza, 608 F2d 659,662 (5th Cir 1979)..........17

United States v Johnson, 995 F Supp 1259 (1998)................27

United States v Leon, 534 F2d 660 (6th Cir 1975)...............30

United States v Mc Kinnon, 995 F Supp 1404 (M.D. Fla 1998).....27

United States v Myers, 550 F2d 1125 (6th Cir 1989...........11,17

United States v Olano, 507 US 725; 1213 SCT 1770; 123 LEd2d 508
(1993).......................................................19

United States v Saunders, 325 F2d (6th Cir 1964)...............30

United States v Trulillo, 376 F3d 593 (6th Cir 2004)...........11

United States v Weidyk, 71 F3d 602, 609 (6th Cir 1999).........10

United States v Williams, 33 F3d 876 (7th Cir 1994)............12

Walker v Engle, 703 F3d 959,968 (6th Cir 1983)................42

## STATEMENT OF JURISDICTION/STATEMENT EXPLAINING DELAY

Defendant-Appellate Michon Houston was convicted in the Wayne county Circuit Court by jury trial and was sentenced on April 4, 2003. The defendant filed for appellate counsel on May 6, 2003, and his claim of appeal was filed on May 22, 2003. The defendant filed his appeal of right with this Honorable Court on January 22, 2004. See attached Court OPINION . The defendant filed for application for leave to appeal in the Michigan Supreme Court #127674, which was subsequently DENIED for the court not being persuaded by the issues presented. Subsequently, the defendant, in pro per, his 6.500 Motion for relief from Judgment before the Honorable Judge Vera Massey Jones. On November 15, 2006 the Honorable Judge entered and ORDER denying defendant's Motion for relief from Judgment(See attached). Defendant is filing this application within the 12 months of judgment as defendant was responsible for preparation and submission of all meritious issues before this Honorable Court. Defendant had to find an assistant to help him in the preparations. This Court has sole jurisdiction to consider the Defendant-Appellate's application for leave to appeal as it is being filed within 12 months of judgment. MCR 7.203(B); MCR 7.205.

VI

## STATEMENt OF QUESTIONS PRESENTED

I. **WAS THE DEFENDANT DEPRIVED OF HIS FIFTH AND FOURTEENTH** AMENDMENT RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN THE PROSECUTOR INTRODUCED "FLIGHT" EVIDENCE INTO THE TRIAL, WHICH WAS UNRELATED TO THE CHARGED OFFENSE?

Trial COurt answered, "NO"

Defendant-Appellate answers, "YES".

II. WAS THE DEFENDANT DEPRIVED OF HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS OF DUE PROCESS WHEN THE PROSECUTOR VOUVHED FOR THE CREDIBILITY OF HIS OWN WITNESS?

Trial Court answered, "NO

Defendant-Appellant answers, "YES"

III. WAS THE DEFENDANT DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO OBJECT TO THE INTRODUCTION OF IMPROPER CONDUCT ON THE PART OF THE PROSECUTOR, FAILED TO OBJECT TO THE INTRODUCTION OF INADMISSIBLE AND PREJUDICIAL EVIDENCE, FAILED TO ADVANCE A DEFENSE OF MANSLAUGHTER, AND INTERFERED WITH DEFENDANTS RIGHT TO TESTIFY?

Trial Court answered, "NO"

Defendant-Appellate answers, "YES"

IV. WAS THE EVIDENCE OF PREMEDITATION AND DELIBERATION INSUFFICIENT TO SUSTAIN A CONVICTION OF FIRST DEGREE MURDER?

Trial Court answered, "NO"

Defendant-Appellate answers, "YES"

V. WAS DEFENDANT HOUSTON DEPRIVED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE PREJUDICIAL ERRORS WHICH OCCURED DURING HIS TRIAL?

Trial Court answered, "NO"

Defendant-Appellate answers, "YES"

VI. WAS DEFENDANT HOUSTON DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL ON HIS FIRST APPEAL OF RIGHT WHEN APPELLATE COUNSEL FAILED TO CHALLENGE/AND OR ADVOCATE THE ERRORS PRESENTED HEREIN THAT WERE BOTH "OBVIOUS AND SIGNIFICANT"?

Trial Court answered, "NO"

Defendant-Appellate answers, "YES"

## STATEMENT OF FACTS

Trial transcript references are as follows;

T,I-Trial proceedings of April 2,2003.

T,II-Trial proceedings of April 3,2003.

T,III-Trial proceedings of April 7,2003.

ST-Sentencing Transcript of April 22,2003.

Dr. Paul Nora testified that he performed the autopsy on Carlton Thomas. The deceased was shot four times, to the knee, front to back with a slightly downward angle; to the left side of the abdomen, front to back but exiting and re-entering near the lip. (T,II,34,39-43,45-46,51,57). While it was possible that the first three shots could have been fired while the deceased was on the ground, the trajectories were "a little bit difficult" for this theory. (T,II,62-63). There was no evidence of close range firing; however the clothing had not been available for analysis. (T,II,47-48). No bullets were recovered. (T,II,42,65). There were scrapes on the knees, consistent with falling near the time of death. Alcohol and cocaine were both present in the deceased system. (T,II,46-50).

Officer Carpenter, an evidence technician arrived at the scene at about 7:30 a.m. The deceased had already been removed. (T,II,69-70,75,88-89). There was blood under one of the trees in the vacant lot, but there was no evidence that the body had been dragged. (T,II,75,76,84). Officer Carpenter testified that the trees were in full foliage and were overgrown and tall, and that there was alot of debris in the lot, including a large pile. (T,II,75,79-80,90-92,94). There were four residential houses on the street. he measured 72 feet from the blood to the curb on Buena Vista, and about 120 feet from the

1

blood on the porch area of the residences on the north side of the street. (T,II,76,77,96).

Defendant **Michon** Houston was convicted by way of a jury trial on April 7,2003 of first degree murder, MC1 750.316(1)(a); felon in possession of a firearm, MC1 750.224f; and felony firearm, MCL 750.227b in the Wayne County Circuit Court before the Honorable vera Massey Jones presiding. Defendant was sentenced on April 22, 2003 to mandatory life and $1\frac{1}{2}$ to 5 years, and as consecutive 2 yrs for the felony firearm charge. (ST,5,6).

It was the prosecutions theory of the case that on September 6, 2002, at around 5:00 a.m., Defendant repeatedly shot and killed Carlton Thomas.

Lavero Crooks testified that he had known the Defendant since July of 2002, and that they had been friends. (T,II,101). On the date in question, Crooks was selling (grinding) crack cocaine in the area of Linwood and Buena Vista. (T,II,98). He had been out there the entire night sitting in his car, a 1984 Cutlass. He was parked on Buena Vista, in front of a house next to a vacant lot. (T,II,99-100,151). At around 5:00 a.m., Defendant, Defendant's girlfriend "Powder", and Jovan Johnson (JW), were on the porch of a residence on Buena Vista that was across the street from the vacant lot. (T,II,102). Both Johnson and Defendant sold drugs. (T,II,127-128). They all regularly used the porch of the residence to sell drugs and Crooks had spent the previous evening on Buena Vista on the porch. (T,II,102-103).

Crooks testified that he observed someone walking through the vacant lot. (T,II,103). He recognized the man as someone who regularly bought drugs from Jovan Johnson. Crooks explained that the normal

procedure would be for the sellers (crack dealers) to race up to a prospective customer. (T,II,104). Defendant approached the man, (Crooks changed this testimony on cross examination saying that both the Defendant and Johnson went towards the field but that Johnson returned to the porch, T,II,147-148), Crooks that Defendant approached the man and asked what he needed, (T,II,147-148), he also testified that he heard the Defendant say, "Oh, you ain't gonna deal with me, this is my block." (T,II,106-107,130). The man responded that he could deal with whomever he wanted. (T,II,107). Defendant crossed back to the house according to Crooks, went inside, and came out with a .400 caliber gun, and fired a shot from the porch. (T,II,106,107,131-133,140). (On cross examination Crooks changed his testimony to say that Defendant fired two shots from the sidewalk. (T,II,134-135). He testified that the man tried to run, then  fell on his stomach in the grass near one of the two trees in the lot. (T,II,108-109,135). Defendant said, "I shot the nugga in the face first shot." Defendant searched the man's pockets then tarted firing more shots. (T,II,109,135-136).

Crooks testified that he then drove off. (T,II,109). He then took the young lady that was in the car with him, who also according to Crooks witnessed the shooting, to her home. (T,II,110,125). He then returned to the area at around 6:00 a.m. and saw that there were lots of police there. He offered no information to the police at that time. (T,II,146-147).

Over defense objection, the prosecutor questioned Crooks about the circumstances ending his friendship with the Defendant. (T,II,110). Crooks testified that, sometime in November of 2002 he fell asleep in his car on the block, and woke up to find the Defendant with a gun to

his head threatening to kill him if he did not get off the block.
Defendant told Crooks that it was his block. Defendant's cousin grabbed
the gun, and Crooks got away. He reported the incident to the police
but did not mention the shooting at the time. (T,II,110-111,138).

Crooks testified that on November 9,2002, Officers Adams and Moss
came to his house, and he told them that he knew how to find Defendant.
he told the officers that if he drove through the Buena Vista and
Linwood area, where they sold drugs every day, with his music on,
Defendant "would run out with a gun shooting." (T,II,112).  Per their
"plan", Crooks parked by the vacant lot, and Defendant and his cousins
ran out of the house, which was a four family flat. (T,II,114). There
were police there and Defendant ran back into the house. (T,II,114).
The police searched the house and eventually Defendant was apprehended.
(T,II,115).

Crooks also testified that on November 11,2002, he went to 1300
Beaubien and gave a statement about the shooting incident. (T,II,115).
He denied that he had been promised anything in exchange for his
testimony, or that he was testifying because the Defendant had put a
gun to his head. (T,II,116).

On cross examination Crooks admitted that he never told the police
that someone was in the car with him on the morning of the shooting.
(T,II,125). He also admitted that he never told the police that the
Defendant had searched the deceased pockets. (T,II,125,126). He
acknowledged that the police had confronted him three times about the
shooting before he made a statement. (T,II,126). They had come to
Linwood and Buena Vista while he was selling drugs and each time he
denied knowing anything about the shooting. (T,II,150,155). One time,

the investigators apprehended him. (T,II,150). He claimed to have seen the Defendant with a .40 caliber gun plenty of times but he agreed that he never to that to the police either. (T,II,136-137). he denied that the pile of debri, or weeds in the vacant lot blocked his view that morning of the shooting. (T,II,144), despite photographs taken by the police at the scene that indicated the "contrary". (T,II,142-144). He never saw the deceased run around to the back side of one the trees in the lot. (T,II,152).

Crooks further acknowledged that Jovan Johnson was his friend, but he denied knowing at the time he made the statement implicating the Defendant that Johnson had been arrested on some charges. (T,II,144-145).

Jovan Johnson (JW) testified that at the time in queston he had known the Defendant for about a year. (T,II,160). In the early morning hours of September 6,2002, he and Defendant and Powder were drinking at a motorcycle club for a few hours, and then at around 4:00 or 5:00 a.m went to a house on Linwood and Buena Vista, where the two men regularly sold drugs. (T,II,162-163,173,187-188,193-195). He testified that Crooks also sold drugs in the area but that there was no bad blood between them. ((T,II,163,187,196).

He testified that he, Defendant and Powder were sitting on the porch right across from the vacant lot, when he saw a man cutting through the lot. (T,II,163-164). Johnson recognized him as someone he sold crack to a few times. (T,II,188). Johnson and Defendant yelled at him to find out what he needed. Johnson stayed on the porch and Defendant went to the lot and talked to the man. (T,II,165). there was some heated conversation between the two and he heard the Defendant

5

yelling "Bitch." (T,II,167,186,190). Defendant chased the man around the tree and then he fired two or three shots. (T,II,167-168,190,198). The man fell on his back near the tree. Defendant stood over the man and fired two or three time. (T,II,168-169). Defendant returned to the porch and told Johnson to go check if the was dead. (T,II,170). Defendant had a gun in his hand that Johnson had never seen before. (T,II,171,186). he determined that the man was still breathing but he told the Defendant that he was dead. (T,II,171,200). Defendant and Johnson drove off, but Powder refused to get into the car with them. (T,II,172,201).

Johnson did not see Crooks or anyone else out there that morning. He testified that he was familiar with Crooks car, a blue 1984 Cutlass. (T,II,196). He denied that Defendant had returned to the house to get the gun. (T,II,187). He also testified that he did not see the Defendant turn the deceased over, or go through his pockets. (T,II,191,211).

The witness continued that within a week of the shooting, the police attempted to question him about the shooting but he told them nothing. (T,II,183-184). Sometime later he "caught a drug case" and was in jail. (T,II,173). On November 17,2002, homicide detectives came to talk to him about the shooting, the police attempted to question him about it, but he told them he knew nothing. (T,II,183-184). On November 17,2002 homicide detectives came to talk to him about the shooting and told that he would not go to jail for "accessory" if he cooperated with, or else he would be charged with the crime. (T,II,174-175,178). The detective 'provided' many detail of the shooting to him. (T,II,182). He testified that they "threatended him with first degree

6

murder if he did not give a statement. (T,II,182,183,204-205).

Officer Bastinelli testified that he collected Carlton Thomas's clothing from the hospital and that there was no currency nor identification in his belongings. (T,II,214-216).

Officer Williams testified that he was the first officer on the scene at 2600 Buena vista at about 5:50 a.m.. (T,III,5). He observed Thomas was still alive but he did not give the name of his assailant. (T,II,222-223,234). Williams preserved the crime scene, he did not recover any shell casings. (T,III,6). After EMS arrived Williams canvased the area, but no one had witnessed the shooting. He described the area as an area high in drug traffic. (T,II,227).

Officer Adams testified to interviewing Lavaro Crooks about his complaint of a felonious assault by Defendant and their plan for the Defendant's arrest on November 9,2002. (T,III,9-16,270. Crooks believed Defendant would be at 2675 Buena Vista. (T,III,13). The officers knew that Crooks sold dope in that area. (T,III,14). When Crooks parked and exited the vehicle the neighbors grew quite and the Defendant came out onto the porch of the four family flat. (T,III,16,18). Crooks and the Defendant began to yell at one another and Crooks yelled to the police that this was "the motherfucker." (T,III,17,29). Williams and his partner, both dressed in plain clothes ran towards the Defendant and announced that they were police. Defendant ran back inside the four family flat. (T,III,28,30). The police found the Defendant in a locked unoccupied lower flat and arrested him. (T,III,20-21). At the time of his arrest the Defendant was unarmed and cooperative, and they found no weapon in the flat.; (T,III,24-25,27,280. Adams interviewed Crooks again on November 13,2002. (T,III,25-26).

Both parties stipulated that the Defendant was ineligible to carry a firearm because of a prior felony conviction. (T,III,32).

Defendant was found guilty of first degree murder, felon in possession of a firearm, and felony firearm. (T,III,122). Defendant was sentenced to natural life for first degree murder. Possession of a firearm by a felon, 1½-5. felony firearm, 2 yrs. (ST,5).

Defendant filed his 6.500 Motion for Relief from Judgment on August 29, 2005 in the Wayne County Circuit Court. The motion was subsequently denied in Judge Vera Massey Jones on November 15, 2006.

Defendant filed his appeal of right on C.O.A. #248742 on 1-22-04 and the COA affirmed his conviction on 11/9/03.(See attached).

Application for Leave to Appeal was filed in the Supreme Court Case NO. 127674. Application was DENIED by this court on 5-31-05 .

I

DEFENDANT WAS DEPRIVED OF HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN THE PROSECUTOR INTRODUCED "FLIGHT" EVIDENCE INTO THE TRIAL, WHICH WAS UNRELATED TO THE CHARGED OFFENSE.

Standard of review: The normal standard of review is for plain error where no objection has been made. People v. Grant, 445 Mich 535 (1994); People v. Carines, 460 Mich 750 (1999). Issues of prosecutorial misconduct are reviewed de novo. People v. Bahoda, 448 Mich App 261 (1995). Evidentiary issues are reviewed for an abuse of discretion. People v. Adair, 452 Mich 473 (1996).

During the third day of third day of trial the prosecutor called Detroit Police Officer melvin Williams testified that he was involved on November 9, 2002 with his partner Olivia Moss in arresting the Defendant on an assault charge. The witness testified that he and Officer Moss were in "plain clothes". (T,III,28-29).

The witness testified that Mr. Houston was engaged in an argument with Mr. Crooks, a person that it was known he had a disagreement with. At the time that they began to approach Mr. Houston and Mr. Crooks, Mr. Crooks yelled out "that's the motherfucker right there". (T,III,17). He then testified that he and his partner began to run towards the Defendant and the Defendant ran back into the four family flat. (T,III,18). A search insued and the Defendant was eventually found in an apartment. After police identified themselves they eventually gained access to the apartment and took Mr. Houston into custody. (T,III,22-23). He also testified that Mr. Houston offered no resistance.

Defendant would respectfully points out that 'this was not flight from the crime charged, which occurred September 6,2002,

9

approximately 2 **months** prior to the day Officer Williams arrested Mr. Houston for assault.

No warrant for murder for Defendant existed at the time Officer's Williams and Moss went to arrest Mr. Houston for the assault charge, and no evidence was presented that he knew the officer's had a warrant for his arrest for anything at all!

The evidence should not have been admitted. The court conducted no appropriate balancing of the probative verses the prejudicial effect of the evidence in question as required by MRE 403. See People v. Chism, 390 Mich 104 (1973).; People v. Crawford, 458 Mich 376 (1998). There was no proper foundation as it related the charged offense itself. See People v. Smith, 158 Mich App 220,227 (1987)(the court reversed on other grounds but admonished the prosecutor that on retrial she should not introduce evidence that the Defendant ran from a police officer and drew a gun without proper foundation).

The admissibility of evidence is left to the discretion of the trial court. People v. Price, 214 Mich App 538,546 (1995); United States v. Weidyk, 71 F3d 602,609 (6th Cir 1999). The evidence sought to be admitted must bear a particular correspondence or connection to the case before it can properly be admitted. The matter sought to be established by the admission of the evidence must also be in issue. People v. Mills, 450 Mich 61,67 (1995).

To allow evidence to be admitted the court must first determine whether the evidence is relevant. See MRE 401. People v. Houston, 261 Mich App 463 (2004).

MRE 401 provides;

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without

the evidence."

Once the court determines that the evidence is relevant it must then balance the probative value of the evidence against it's prejudicial effect. relevant evidence may be excluded if it's probative value is substantially outwieghed by it's prejudicial effect.

MRE 403 provides;

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."

See People v. McKinney, 410 Mich 413 (1981); United States v. Trulillo, 376 F3d 593 (6th Cir 2004)(evidence of other acts); People v. Ullah, 216 Mich App 669,675 (1999).

Defendant Houston first contends that there must be some connection between the purported "flight" and the crime in question. See United States v. Cook, 102 Fed. Appx. 888 (6th Cir 2004). Not all movement in question can fairly be characterized as "flight", and if the movement in question does not really evidence a "consciousness of guilt" then it is error to invite the jury to utilize that movement as proof of guilt. Cf. United States v. Myers, 550 F2d 1125 (6th Cir 1989).

The United States Supreme Court emphasized in Wong Sun v. United States, 371 Us 471; 83 Sct 407; 9 Led2d 441 (1995);

"We have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime. In Alberty v. United States, 162 Us 499; 16 Sct 864; 40 Led2 1051 (1895), this court said..."it is not universally true that a man who is conscious that he has done a wrong, will pursue a certain course not in harmony with the conduct of a man who is conscious of having done an act which is innocent, right and proper, since it is a matter of common knowledge that men who are entirely

innocent do sometimes fly from the scene of a crime through fear of being apprehended as witnesses. Nor is it true as an accepted axiom of criminal law that the wicked flee when no man pursueth, but the righteous are as bold as a lion."

"The admission of evidence is particularly troublesome when the weak probative value is balanced against its potential prejudice. One commentator has noted that "one is forced to wonder whether the evidence is not directed to punishing the "wicked" generally rather than resolving the issue of guilt of the offense charged." McCormick, Evidence, §271, at p803 (1984).

Prejudice emanates from the inherent unreliability of evidence of flight and the danger that a flight instruction will isolate and give weight to such evidence. See United States v. Williams, 33 F3d 876 (7th Cir 1994). Here it is not surprising that the prosecutor made not insignificant use of the objectionable evidence during his closing statements as follows;

Prosecutor:

"And when he does help set up Mr. Houston to get  him arrested what does Mr. Houston do. Mr. Houston runs in the house. locks himself in somebody's flat. Refuses to come out when the police are yelling police come out. Come on out. He's hiding. Now, it that what you would do when the police approach you if you've done nothing wrong as a citizen. Do you go running into anybody's house, lock the door and when the police actually get the keys to come in, do you try and keep the door closed. He's doing everything he can from getting caught.
    Is that the way an innocent person acts, ladies and gentlemen. He's telling you **by his own actions he's done something wrong**. Why is that going on, ladies and gentlemen...." (T,III,95).

Defense counsel made no objection either during the testimony of Officer Williams, nor during closing arguments of the prosecutor. In a split decision in People v. Collier, 168 Mich App 687 (1988)(where the Defendant was convicted of assault with the intent to commit great bodily harm less than murder and claimed that the trial judge had demonstrated a partiality toward the jury foreman). The court held;

"Trial counsel failed to object below. As a general rule, this

court will not review allegations of error based on the conduct of the trial court in situations where no objection was made at the trial court level. However, since appellate courts cannot condone manifest injustice, this Court can react, even in the absence of timely objection, to error which resulted in a denial of a fair trial."

"Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." MRE 103(d).

"Tainted verdicts need not be allowed to stand simply because a lawyer or judge both failed to protect the interest of the prejudiced party by timely objection. " Reetz v. Kinsman Marine Transit, 416 Mich 97 (1982) at 100,103 (failure to object to improper comments by the prosecutor "wealth and callousness of Kinsman).

Omission of objection has been held not to be an impediment to appeal where the "prejudice was so great that it could not be have been corrected by a curative instruction even if timely objection had been made. See People v. Wallace, 160 Mich App 1,7-8 (1987).

Evidence was continuously presented during trial that the area in question was a known drug activity area. The police officers were in plain clothes when they came to arrest the Defendant on unrelated charges. Robbery in this area was a daily occurrence among drug dealers. All of these factors should have been given consideration before allowing the prosecution to introduce this evidence. Additionally, no nexus between the "flight" evidence and the charged offense was offered! Yet, the prosecutor repeatedly used the "flight" evidence to establish a sense of guilt of the charged offense of first degree murder. (T,III,95). Evidence of flight is admissible if it is evidence from the scene of a crime, not as substantive proof of guilt, but to show defendant's state of mind. People v. Kraai, 92 Mich App 398 (1979); CJI2d 4.4. But, "after all, innocent people caught in a web of circumstances frequently become

terror stricken." See <u>Cooper</u> <u>v.</u> <u>United</u> <u>States</u>, 94 USAppDC 343,345; 218 F2d 39,41 (1954).

In the cse before the Court the trial court made no determination as to the evidence's relevance. <u>MRE</u> <u>401</u>.  But given that the trial court might have found it was materially relevant, the evidence of flight should still have been excluded under MRE 403 as overly prejudicial. Defendant contends that because the flight in question bore no relevance to the charged offense, it was improper to allow it's admission, and therefore was an abuse of discretion requiring reversal.

II

DEFENDANT WAS DEPRIVED OF HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS OF DUE PROCESS WHEN THE PROSECUTOR VOUCHED FOR THE CREDIBILITY OF HIS OWN WITNESSES.

Standard of review; Claims of prosecutorial misconduct are decided case by case. People v. McElhaney, 215 Mich App 269,283 (1996). Becasue there was no objection during trial to the challenged remarks, this issue is reviewed for 'plain erro' affecting substantial rights. People v. Schutte, 240 Mich App 713,720 (2000). In order to obtain relief the defendant must show a clear or obvious error that likely affected the outcome of the trial. People v. Carines, 460 Mich 750,763 (1999). Questions of prosecutorial misconduct are reviewed de novo. People v. Bahoda, 448 Mich 261 (1995).

In the case before the court the prosecutor made the following comments about Joavn Johnsons during closing arguments;

Prosecutor; He's here to testify on his friend and he tells you who pulls the trigger. His friend Mr. Michael Houston is the trigger man. That's what you folks have to deal with. That's why I told you up front, these people are drug dealers. You wont's like them, but they're telling the truth. Based on all the evidence you know they are. (T,III,58).

Then again he validates the testimony of his witness's Crooks and Johnson as follows;

These people told you the truth. They're honest. They admitted they're out there grinding all day long, selling drugs out there on west Buena Vista. (T,III,62).

In Berger v. United States, 295 Us 78; 55 Sct 629; 79 Led2d (1935), the United States Supreme Court recognized that the prosecuting attorney has a duty to not only the government, but the defendant as well, to ensure a fair trial by refraining from improper tactics to obtain a conviction;

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty, whose

15

obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest therefore in a criminal prosecution is not that it shall win a case but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. But while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

295 US at 88.

This duty to refrain from 'improper methods' extends from the United States Attorney to state and local prosecutors pursuant to US Const Am XIV. <u>Sizemore</u> v. <u>Fletcher</u>, 921 F2d 667 (6th Cir 1990).

That the prosecutor may not vouch for the credibility of a witness is well established;

"Statements made by the prosecutor which attest or vouch for the credibility of certain witnesses are very cautiously received; to be considered is the prominence of the office which the prosecutor holds and the subsequent weight of statements made by the prosecuting attorney, because to hold otherwise would be to ignore the impact of such statements upon a jury <u>which is heavily influenced by prosecutorial comments; when such comments relate to the credibility of a witness</u>, which is the exclusive province of the jury, prejudice to the defendant readily follows." <u>People</u> v. <u>Erb</u>, 48 Mich App 622 (1973)(reversed).

See also <u>Blackman</u> v. <u>Booker</u>, 312 F Supp2d 874 (E.D. Mich 2000)(reverible occurred were the prosecutor commented on the defendant's alleged gang affiliation which rendered the trial fundamentally unfair).

A case in point is <u>People</u> v. <u>Smith</u>, 158 Mich App 220 (1987). In that case the prosecutor was found to have injected reversible error by arguing that police do a very careful job of interviewing witnesses to insure the facts and the witnesses story checked out. It is improper for a prosecutor to make a statement that a government witness could not lie on the stand where the case turned

16

on whether the government witness or the defendant testified truthfully. See United States v. Myers, 23 F3d 570,572-575 (1st Cir 1994); United States v. Garza, 608 F2d 659,662 (5th Cir 1979)(prosecutor's repeated vouching for the credibility of a witness was found to constitute reversible error). Also see United States v. Cotnam, 88 F3d 487,500 (7th Cir) cert den 117 Sct 326 (1996).

In the case at bar the prosecutions entire case rested on the states two key witnesses, Jovan Johnson, and Lavarro Crooks. These two witnesses credibility was an issue from the start. Both men were admitted drug dealers. Both men did not come forward until it was in their own interest to do so. Crooks contacted the police concerning an "alleged" shooting incident between himself and the Defendant in November of 2002. (T,II,110-111)(T,III,9-16,27). The other key witness, Jovan Johnson, did not come forward until he was in jail for unrelated drug charges and "threatened" with the charges or charges as an accessory himself. (T,II,173-178)(T,II,182,183,204-205). Their motivation and credibiltiy were at issue and suspect all throughout the trial! It was necessary that the prosecutor do everything in his power to convinc the jury these men were telling the truth, that they had no reason to lie! (T,III,90).

It is unacceptible for a prosecutor to suggest that the government has some special knowledge of a witnesses truthfulness. See People v. Williams, 123 Mich App 752 (1983).

In the case of People v. Clifton Fuqua, 146 Mich App 250 (1985) lv den 424 Mich 863 (1986)the Michigan Court of Appeals reversed the defendants conviction for armed robbery. There in

closing arguments the prosecutor asserted that his office had

reviewed all the facts of the case and would not have charged an

armed robbery of no armed robbery had been committed.   The Court of

Appeals held;

     "***the jury may well have been led by this remark,***to
suspend its own powers of critical analysis and judgement in
'deference' to those of the police and the prosecutor'. And if the
remark had this effect, it also had the effect of derogating the
defendants right to a trial by jury, since this right contemplates a
jury that ultimately excercise its own judgement in resolving
disputed questions of fact." (Emphasis added) Id at 418-419.

     The facts in this case are just as offensive. The prosecutor

argued that his witnesses were honest and truthful and that they had

no reason to lie! The prosecutor might just as well have simply come

out and stated clearly that the charges would not have been pursued

had the witnesses statements not been flawless. Such commentary is

improper and is strictly prohibited. See <u>People v. Humphreys</u>, 24

Mich App 411 (1970); <u>People v. Farrar</u>, 36 Mich App 294 (1971);

<u>People v. Clifton Fuqua, supra</u>. See also ABA Standards of the

Prosecution Function, 5.8(b). Questions relating to witness

credibility must be decided by the trier of fact **uninfluenced by the

opinions of the prosecutor**. <u>People v. Quick</u>, 58 Mich 321

(1885)(emphasis added). Prosecutor vouching for the credibility of a

witness is tantamount to unsworn testimony. <u>People v. Erb, supra</u> at

631; <u>People v. Huff</u>, 173 Mich 620 (1913).

     The comments of the prosecutor might well have tipped the

scales in this very, very weak case against Mr. Houston. The primary

factual issues in this case were based soley upon whether or not the

jury believed the witness. The prosecutor's misconduct went directly

to the ultimate issue--the credibility of the witnesses. The

misconduct herein was offensive to the maintenance of a sound judicial system and demands reversal of his conviction, without regard to the nature or amount of evidence produced against him. See e.g. <u>People v. Robinson</u>, 386 Mich 551,563 (1972).

No objection was made but manifest injustice mandates appellate consideration. <u>People v. Collier</u>, 168 Mich App 687 (1988);

"Trial counsel failed to object below. As a general rule, this Court will not review allegations of error based on the conduct of the trial court in situations where no objection was made at the trial court level. However, since appellate courts cannot condone manifest injustice this Court can react, even in the absence of timely objection, to error which resulted in a denial of a fair trial."

\*\*\*

"Tainted verdicts need not be allowed to stand simply because a lawyer or judge both failed to protect the interst of the prejudiced party by timely action." <u>Reetz v. Kinsman Marine Transit</u>, 416 Mich 97,100 (1987)(failurte to object to prejudicial coments; "wealth and callousness of Kinsman).

\*\*\*

"Nothing in this rule precludes thaking notice of plain error affecting substantial rights alhtough they were not brought to the attention of the court. <u>MRE 103(d)</u>.

The rule was summarized in <u>People v. Grant</u>, 445 Mich 535 (1994), where in discussing issue preservation the Court adopted the rule of <u>United States v Olano</u>, 507 US 725; 1213 Sct 1770; 123 Led2d 508 (1993) which held that a three step test should be employed; there must be an error, it must be "plain". "Plain is synonymous with "clear", or " eqivalently "obvious" and

"The third and final limitation on appellate authority...is that the plain error "affected substantial rights." This is the same language employed in Rule (52), and in ~~mets~~ cases it means that the error must have been prejudicial; It must have affected the outcome of the...proceedings." (123 Led2d 518-519).

Defendant Houston avers that the error(s) in question in this case meet this test. Omission of objection has not been held to be an impediment to appeal where the prejudice was so great that it could not have been corrected by a curative instruction even if timely objection had been made. People v. Wallace, 160 Mich App 1 (1987). These comments were made during closing arguments and the damage of their impact could not have been cured even had the court instructed the jury to disregard them.

The prosecutor is an officer of the court and is well aware of the bondaries of his conduct. It is of little importance for the courts to establish rules consistent with fairness if the courts refuse to inforce them and sanction prosecutor's for their "intentional misconduct."

"Unless we enforce the rules we encorage their violation and add to the burden of the appellate courts. Our frequent strictures against this kind of argument mean little unless we are prepared to reverse and require a new trial. A prosecutor who cross a clearly defined line, and a trial judge who makes no effort to stop him, have only themselves, not the appellate courts, to blame if a judgement of conviction is reversed and the case must be retried because of improper argument." People v. Farrar, supra at 299-300(Footnote omitted).

Notwithstanding the foregoing, the net effect of the prosecutor's comments was a deprivation of Mr. Houston's rights of due process and a fair trial under Amendments V and XIV of the United states Constitution and parallel provisions of the Michigan Constitution in that they wrongly buttressed the People's case and thus prejudiced the determination of Defendant's guilt or innocence, consequently affecting a "substantial right". Consequently this error "so infected the trial with prejudice as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416

US 637; 94 Sct 1868; 40 Led2d 431 (1974)(the quoted language was the claim of the defendant to which the U.S. Supreme Court did not agree. 416 U.S. at 463. But Defendant calls the Court's attention to Justice Douglas's dissent where he stated;

"Those who have experienced the full thrust of of the power of government when leveled aginst them know that the only protection the citizen has is in the requirement for a _fair trial_. The assurance of the Court that we make no retreat from constitutional government by today's decision has therefore a hollow ring.)

This error cannot be deemed as harmless as harmless error analysis turns on the effect of the error on the minds of the jury, not on the nature of the other evidence produced at trial. See People v. Bigge, 288 Mich 417,421 (1939); Kotteakos v. United States, 328 US 750; 66 Sct 1239; 90 Led2d 1557 (1946)(focus is on the impact of the error on the jury). As the only evidence against Mr. Houston was the testimony of Mr. Crooks and Mr. Johnson these errors cannot be viewed as harless. In this case it cannot be established that the errors did not contribute to the verdict, thus Mr. Houston is entitled to a new trial.

III

DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO OBJECT TO IMPROPER CONDUCT ON THE PART OF THE PROSECUTOR, FAILED TO OBJECT TO THE INTRODUCTION OF INADMISSIBLE AND PREJUDICIAL EVIDENCE, FAILED TO ADVANCE A DEFENSE OF MANSLAUGHTER, AND INTERFERRED WITH DEFENDANT'S RIGHT TO TESTIFY.

Standard of review; The performance and prejudice components of an ineffective assistance of counsel claim are reviewed under a de novo standard of review. Strickland v. Washington, 466 US 668; 104 Sct 2052; 80 Led2d 674 (1985). Whether a person has been denied effective assistance of counsel is mixed question of constitutional law and fact. People v. Grant, 470 Mich 477 (2004); People v. Pickens, 466 Mich 298 (1994).

Under the United States Constitution, a determination of the effective assistance of counsel must be made in accordance with the standards set forth in Strickland v. Washington, supra; U.S. Const AM VI. The defendant must also identify the specific acts or omissions of counsel which he alleges were not the result of "reasonable professional judgement," Id at 2066, and must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guranteed the defendant by the Sixth Amendment. Id, at 2064.

The defendant must also show that this deficient performance prejudiced the defense. Prejudice wil be found where the defendant shows that "there is a reasonable probability that absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id, at 2068-2069. Also see Sellers v. United States, 316 F Supp 516 (E.D. Mich 2004).

In <u>People v. Garcia</u>, 398 Mich 250 (1976), the Michigan Supreme Court held that an attorney must perform 'at least as well as an attorney with ordinary training and skill in criminal law,' and must conscientously protect his/her clients interest, undeflected by conflicting considerations. See <u>United States v. Beasley</u>, 491 F2d 687 (6th Cir 1974). See also <u>People v. Grant, supra</u>.

To demonstrate ineffective assistance of counsel, the defendant must overcome the presumption that the challenged action could have been sound trial strategy. <u>People v. Grant,</u> 470 Mich 477 (2004); <u>People v. Tommolino</u>, 187 Mich App 14, lv den 439 Mich 897 (1991). The Michigan Supreme Court has held that the Michigan Constitution does not afford "greater protection than federal precedent" with regard to a defendant's right to counsel when it involves a claim of ineffective assistance of counsel. <u>People v. Pickems & Wallace</u>, 446 Mich 298 (1994).

To find that the right to the effective assistance of counsel was so undermined as to justify reversal of an otherwise valid conviction, a defendant must show that counsel's performance fell beloew an objective standard of reasonableness and the representation so prejudiced the defendant as to deprive him of a fair trial. <u>Grant, supra; Tommonlino, supra; Strickland, supra.</u> Defendant Houston meets this test where he was convicted on the basis of testimony concerning both prior bad acts, (T,II,110-116)(raised as issue I on defendant's appeal of right), and evidence of unrelated "flight". (T,III,17-23,95). In addition defense counsel failed to object to improper comments by the

prosecutor designed to "bolster the credibility" of the prosecutions witnesses. (T,III,54,62). The issue of ineffective assistance of counsel related to issue I of Defendant's appeal of right was not raised on direct appeal, and only as an after thought as an inclusion for alternative basis of relief regarding prior bad act evidence to the Michigan Supreme Court. Thus, the law of the case doctrine does not apply in this instance. See People v. Herrara, (On Remand) 204 Mich 333 (1994).

In Herrara the trial court sanctioned the defendant for what it believed to be a frivolous 6.500 motion. The trial court based it's ruling, in part, on the defendant's reargument of an ineffective assistance of counsel claim which had been previously rejected by the Court of Appeals. The appellate court reversed indicating that the defendant's motion "was not frivolous". While not passing on the validity of the underlying ineffective assistance of counsel claim, the Court did note that the trial judge erroneously believed that it was barred from considering the ineffective assistance of counsel claim based on the law of the case doctrine. See Johnson v. White, 430 Mich 47,52-53 (1988).

In this case, Defendant has never advanced a claim of ineffective assistance of counsel, per se, but if the court was to determine the inclusion as an alternative basis of relief of issue I to the Michigan Supreme Court, not as an isolated issue, but as an alternative, Defendant points out that it was not raised in the context regarding the issues presented herein, so law of the case does not apply. The law of the case doctrine is

24

not inflexible, and need not be applied to create injustice. People v. Wells, 103 Mich App 455,463 (1981).

In the case at bar the prosecutor's comments trespassed into the jury's domain by directly offering his conclusions regarding the credibility of prosecution witnesses Crooks and Johnson. Both men were admitted drug dealers and upon their credibility the prosecution hung it's "entire case." Without their testimony Defendant could not have been convicted. Because Mr. Hassinger comments ran afoul of well settled precedent restricting these type of comments, trial counsel committed grave error in not offering objection. See Washington v. Hofbauer, 228 F3d 689 (6th Cir 2000)(trial counsel's failure to object to clear misconduct by prosecutor amounted to ineffective assistance of counsel; "One of defense counsel's most important roles is to ensure the prosecutor does not transgress the bounds of proper conduct). Also see Weygandt v. Ducharme, 774 F2d 1491 (9th Cir 1985)(failure to object to improper closing argument by prosecutor amounted to performance below objective standard of reasonableness).

Defendant suffered further prejudice by defense counsel's failure to object to the introduction of "flight" evidence unrelated to the instant offense. See Blackburn v. Foltz, 828 F2d 1177 (6th Cir 1987)(failure to move for suppression of 3 prior armed robbery convictions constituted ineffective assistance of counsel); Gochicoa v. Johnson, 53 F Supp2d 943 (W.D. Tex 1999)(failure to object to hearsay statements constituted ineffective assistance of counsel). Trial counsels failure to

object to highly inflammatory inadmissible evidence "has no strategic value", and the failure to request a limiting instruction constitutes ineffective assistance of counsel. <u>Lyons v. McCotter</u>, 770 F2d 529 (5th Cir 1985).

To further exacerbate the already deficient performance of defense counsel, counsel failed "to conduct any meaningful adversarial challenge", to the prosecutions case. See <u>Groseclose v. Bell</u>, 130 F3d 1161 (6th Cir 1997); cert den 523 U.S. 1132 (1998); <u>Henderson v. Sargeant</u>, 926 F2d 706 (8th Cir) amended 939 F2d 586 (8th Cir 1991) cert den 502 US 1050 (1992). Here defense counsel called no witnesses, presented no evidence, presented no defense!

Testimony thourghout trial was that Mr. Houston and the deceased had been enagaged in an "argument". (T,II,106,106,130)(T,II,167,186,190). There was also inconsistency betwen Crooks depiction of the events, and Johnson's as to whether or not Mr. Houston had returned to the four flat residence and obtained a gun or simply shot Carlton Thomas during the argument, whether he shot from the porch as Crooks testified, (T,II,108,119,131-134), or whether he simply shot Thomas after calling him a "Bitch" as Johnson testified. (T,II,167,168,190,198). In either case a viable defense of manslaughter existed predicated upon the testimony that an argument was taking place immediately prior to the shooting. See <u>Maher v. People</u>, 10 Mich 212 (1862); <u>People v. Pouncey</u>, 437 Mich 382 (1991).

The failure on the part of defense counsel to advance a

defense of manslaughter in the face of overwhelming evidence that defendant was indeed the shooter, was prejudicial in that it deprived Mr. Houston the oppurtunity to advance an alternative theory, instead of simply an argument that the prosecution failed to sustain it's burden, and that perhaps Jovan Johnson or Lavero Crooks was the shooter. (T,III,65).

Defendant was deprived of the right to testify in his own defense due to the ineffective assistance of defense counsel. A criminal defendant has a constitutional right under the Fourteenth Amendment to testify in his own defense, which was expressly recognized in Rock v. Arkansas, 484 US 44,51; 107 Sct 2704; 97 Led2d 37 (1987), which cited the due process clause stating;

"The right to be heard, which ois essential to due process in an adversary system of adjudication, can be vindicated only by affording a defendant the oppurtunity to testify before the factfinder."

Rock also went on to cite the concurring opinion of Justice Clark in Ferguson v. Georgia, 365 US 570,602; 81 Sct 756; 5 Led2d 783 (1961) for the proposition that the Fourteenth Amendment secures "the right of a criminal defendant to choose between silence and testifying in his own behalf."

In this case Mr. Houston responded that he knew he had the right to testify in his own defense and that he had no wish to take the stand. (T,III,37-39). But that right was interferred with by defense counsel! Here, defense counsel told Defendant that he should not/ could not testify in his own defense. See United States v. Johnson, 995 F Supp 1259 (1998); United States v. McKinnon, 995 F Supp 1404 (M.D. Fla 1998); Whiteside v. Scurr,

750 F2d 713 (8th Cir 1984).

Throughout the trial evidence was introduced that Mr. Houston was a drug dealer, in fact the entire theory of the prosecution was that Mr. Houston shot Thomas because he would not buy drugs from him! (T,III,49). The defense called no witnesses, put no evidence before the jury, defense counsel did nothing affirmative in defense of his client. The only defense left was to have defendant "tell his version of the events!" What possible strategic advantage was won by not doing so? Defendant was a drug dealer, that was proven. Defendant was a convicted felon, that was stipulated to by the defense. (T,III,32). What possible damage could his own testimony have done in the face of the prosecutions proofs? What possible strategic advantage was won by the defense by this omission? There was no advantage here.

Michon D. Houston stood accussed of first degree murder. Yet the defense offerred no evidence, the jury never once heard a denial from the Defendant that he was not responsible for the murder, or if he was responsible for the death of Carlton Thomas, the mitigating factors that would possibly reduce first degree murder to a lesser degree of criminal responsibility.

Every attorney knowns that the decision whether or not to testify is crucial to defending a client. They also know that the jury automatically infers that if the defendant does not testify, "he has something to hide." Here the only evidence against Mr. Houston was the testimony of two other admitted drug dealers, Johnson and Crooks. How could their testimony be any more credible than that of Mr. Houston's?

Based on the circumstances of this case, defense counsel's insistence that defendant "not testify" was erroneous and prejudicial. This case satisifies the holding of <u>People v. Pickens & Wallace, supra</u> and the two prong test of <u>Strickland, supra</u>.

Although the fact that Defendant did not testify is a matter of record, the reasoning why defense counsel made this **strategic** decision is unclear. Thus a hearing is required pursuant to <u>People v. Ginther</u>, 390 Mich 436 (1973).

IV

THE EVIDENCE OF PREMEDITATION AND DELIBERATION WAS INSUFFICIENT TO SUSTAIN A CONVICTION OF FIRST DEGREE MURDER.

Standard of review: The issue of sufficiency of evidence is reviewed de novo. People v. Hampton, 407 Mich App 354,368 (1979).

The Due Process Clause of the United States Constitution and parallel provisions of the Michigan Constitution prohibit the conviction of a criminal defendant unless the prosecution establishes guilt of all the essential elements of the charged offense "beyond a reasonable doubt." US Const Ams V,XIV; Mich Const 1963, Art 1, § 17; In Re Winship, 397 US 358,361-362; 90 Sct 1068; 25 Led2d 368 (1970); Donahue v. Cain, 231 F3d 1000 (5th Cir 2000).

In reviewing a claim based upon the sufficency of the evidence the Court views the evidence in a light most favorable to the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. People v. Hampton, supra at 368; People v. Metzler, 193 Mich App 541,546-547 (1992); People v. Wolfe, 440 Mich 508,515 (1992); Jackson v. Virginia, 443 US 307; 99 Sct 2781; 61 Led2d 560 (1979). Stated another way, where the proofs, taken most most favorably to the prosecution, present no more than a choice between competing probabilities, a judgement of acquital must enter. United States v. Saunders, 325 F2d 840 (6th Cir 1964); United States v. Leon, 534 F2d 660 (6th Cir 1975).

In Jackson v. Virginia, supra, the United States Supreme

30

Court held that when determining whether a decision was based on sufficent evidence, the court "must consider not whether there was any evidence to support the conviction, but whether there was sufficent evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." See Hampton, supra, at 366. The United States Supreme Court explained the constitutional considerations underlying the standard;

In short, Winship presupposes as an essential of the due process guranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficent proof-defined as evidence necessary to convince a rational trier of fact beyond a reasonable doubt of the existence of every element of the offense.

***

The Winship doctrine requires more than a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence. "A reasonable doubt" at a minimum, is based upon "reasons." Yet a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as a jury. In a federal trial, such an occurrence has been traditionally been deemed to require reversal of the conviction. Under Winship, which establishes proof beyond a reasonable doubt as an essential of Fourteenth Amendment due process, it follows that when such a conviction occurs in a state trial, it cannot constitutionally stand. Jackson, 443 US at 316-318 (citations and footnotes omitted).

Jackson and its progeny rejected the "any evidence" test and focues on relevancy and sufficency of the evidence. The Michigan Supreme Court in People v. Hampton, 407 Mich 354 (1979) stated that the concept of sufficency of evidence is;

designed to determine whether all the evidence, considered as a whole, justifies submitting the case to the trier of fact or requires a judgement as a matter of law...In quantitative terms, the fact that a piece of evidence has some tendency to make the existence of a fact more probable, or less probable, does not necessarily mean that the evidence would justify a reasonable juror in reasonably concluding the existence of that fact beyond a  reasonable doubt. Id at 367-368.

Due process requires that, before a defendant can be convicted of a criminal offense, the prosecution introduce suffcent evidence that could justify a trier of fact in reasonably concluding that the defendant is guilty beyond a reasonable doubt. Id at 368.

In the case at bar the theory of the prosecutor was that Mr. Houston approached Carlton Thomas austensibly to sell him cocaine. When Mr. Thomas refused to buy cocaine from the Defendant, Defendant allegedly returned to the four family flat, retrived a gun, and then returned and shot Mr. Thomas. (T,II,107-108).

First degree murder is a statutory offense, MCL 750.316(1)(a). It is distinguished from second degree murder by added element of premeditation and deliberation. Because first degree murder, unlike second degree murder, carries the extremely severe punishment of mandatory life without the possibility of parole, it is crucial that this element be sharply contrasted from malice aforethought or intent to kill. See People v. Allen, 390 Mich 383 (1973)(adopting the dissent of Judge Levin below, see People v. Allen, 39 Mich App 483 (1972); People v. Morrin, 31 Mich App 301 (1971). Numerous Michigan cases have discussed the definition of the elements of premeditiation and deliberation. Perhaps  the best known definition is that set forth in People v. Morrin, 31 Mich App 301,329-330 (1971);

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pinted out,

premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between the initial thought and ultimate action should be long enough to afford a rasonable man time to subject the nature of his respnse to a "second look." (citations omitted).

See also People v. Plummer, 229 Mich App 293 (1998).

Testimony was given that the Defendant and Mr. Thomas were arguing and yelling, both by Lavero Crooks, and Jovan Johnson. (T,II,106,166,167). Jovan Johnson, the prosecutions witness, testified as follows;

Q. What's the first thing you could hear?

A. Bitch.

Q. Who's saying Bitch?

A. Sean.

Q. That's Sean Houston?

A. Yes, sir.

Q. Okay, does he seem upset to you?

a. Yes, sir.

Q. Who is he talking to when he's saying those words?

A. To the guy standing there.

Q. What happened next?

A. He chased him around the tree.

Q. You saw Mr. Houston chasing the man?

A. Yes, sir.

Q. What happended next?

A. He was shot. (T,II,166-167).

Not one time did Mr. Johnson testify that Mr. Houston returned to the flat, obtained a gun, and "then returned" and

to shoot Carlton Thomas. This is completely contrary with the events as relayed by Mr. Crooks, who altered his testimony from the shooting at first emanating from the porch, then the sidewalk. There were several inconsistencies in the testimony of Crooks.

There are several basic catagories of evidence which, in combination, have been held to sustain a finding of premediation; 1) planning activity, such as acquiring and positioning the murder weapon in preparation for the killing; 2) facts about the Defendant's prior relationship with the deceased indicating motive; 3) subsequent conduct by the accused evincing an overall plan of which the murder was part; 4) or facts from the nature of the killing showing such a particular or exact manner that the defendant must have planned the killing. People v. Plummer, supra at 300-301; People v. Gill, 43 Mich App 598 (1972); People v. Morrin, supra.

The mere act of killing itself, without more proof will not support a finding of premeditation. People v. Potter, 5 Mich 1,7 (1858); People v. Meir, 47 Mich App 1 (1973). It has been held that premeditation cannot be inferred solely from the number or brutality of the wounds. People v. Hoffmeister, 394 Mich 155 (1975); People v. Morrin, supra. Nor can premeditation and deliberation be inferred where the citrcumstances of the killing are as consistent with their absence, as with their presence. People v. Morrin, supra at 332. Gaps in the evidence cannot be "filled" by assumptions which are unsupported by the substantive testimony. Morrin, supra at 322.

While there is no specific length of time needed to show premeditation and deliberation, it is not enough to show merely that 'there was time to deliberate.' Actual cognition is necessary to satisfy this element. See People v. Hoffmeister, at 161; Lafave & Scott, Criminal Law, (2d Ed), § 7.7., p 563,564. It is a "perversion of terms to apply the term deliberate to any act which is on a sudden impulse". People v. Tilley, 405 Mich 38,45 (1979). As stated in the partial concurrence in People v. Griffin, 108 Mich App 625 (1981);

"It is difficult to imagine any type of intentional killing which the defendant could not have had time to premeditate and deliberate. If proof of time to premeditate and deliberate were all that was required to establish first degree murder, the only true distinction between that crime and second degree murder would be that first degree murder must be premised on recklessness. This however, does not reflect the state of the law."

In Plummer, supra the Court of Appeals reduced the defendant's first degree murder conviction to that of second degree murder, applying the above stated principles. The defendant in Plummer was at the bar with his brother, and his brother got into a fight with a Mr. Day. The defendant tried to step in to help his brother but another patron stopped him. The defendant pulled out a gun and held it at his side. At this point his brother was on the floor, with Day standing over the top of him. The decedent, who was there with Day, suddenly ran toward Day, tried to push Day back, but tripped and fell. When he tried to get up, the defendant fired and hit him in the back. The defendant grabbed his brother and ran out the door with a pistol in his hand. The defendant fired two shots as he ran out, hitting another patron. One witness testified that the

defendant had been chasing Day firing at him at this point. A firearms expert testified that the gun was less than 15 inches from the decedents body when the fatal shot was fired. The Court of Appeals emphasized that premeditation and deliberation characterize a thought process <u>undisturbed by hot blood</u>, noting that;

"Time and again the Michigan Supreme Court has reversed convictions where the evidence of premeditation and deliberation was insufficient to warrant submission of a charge of first degree murder to the jury. In each case, the homicide occurred during an affray whose nature would not permit cool orderly reflection." <u>Plummer</u> at 300, quoting <u>Morrin</u> at 329-331.

As the <u>Plummer</u> Court stated;

"A pause between the initial intent and the ultimate act may, in the appropriate circumstances, be sufficient for premeditation and deliberation. See People v. Tilley, 405 Mich 38,45; 273 NW2d 471 (1979). However, the Legislature's use of the words 'willful,' 'deliberate', and 'premeditated' in the first degree murder statute indicates its intent to require as an element of that offense substantially more reflection on and comprehension of the nature of the act than the mere amount necessary to form the intent to kill. As the Supreme Court has stated, 'when a homicide occurs during a sudden affray...it would be "a perversion of terms to apply the term deliberate to any act which is done on a sudden impulse." Tilley, supra at 44-45; 273 NW2d 471, quoting Nye v. People, 35 Mich 16,18 (1876). To speak of premeditation and deliberation being instantaneous, or taking no appreciable time, destroys the statutory distinction between first and second degree murder." See Morrin, supra at 329; 187 NW2d 434; Lafave & Scott, Criminal Law (2d Ed), § 7.7, p643.

"When the evidence establishes a fight and then a killing, there must be a showing of "a thought process undisturbed by hot blood in order to establish first degree premeditated murder. Morrin, supra at 329-330; 187 NW2d 434. The critical inquiry is not only whether the defendant had the time to premeditate, but also whether he had the capacity to do so. 'Without such evidence, the sequence of events is as consistent with an premeditated killing-following hard on the outset of the argument-as it is with a premeditated killing after an interval during which there was an oppurtunity for cool headed reflection." People v. Gill, 43 Mich App 598,606-607; 204 NW2d 699 (1972)." <u>Plummer</u> at 301-302.

The court concluded that the facts of the case before it did not establish the "cool and orderly reflection" necessary to elevate the crime of first degree murder. "This heated situation was not conducive to a 'second look' weighing of the choice of shooting and killing the decedent." Plummer, supra at 302-303. While there was evidence that the defendant had aimed at the decedent, "such evidence by itself only established that the defendant intended to kill the decedent, not that the killing was premeditated.' Pluimmer, supra at 304. The Court also found that reflection was even less lilkely, considering that the defendant's blood alcohol level was 1.0. Id at 303. Here, it was routinely acknowledged that the defendant was intoxicated.

Sifficent evidence of premeditation is not presented by evidence of motive alone, without proof of some degree of planning or a preconceived design. People v. Gill, 43 Mich App 598 (1972).

In this case there is a great deal of disparity between the events as described by witnesses Crooks and Johnson as has been evidenced supra. Crooks testimony changed two different times. First, Crooks testified that Defendan shot from the porch of the house. (T,II,107). Then on cross examination he testified that the first shots from Mr. Houston emanated from the sidewalk. (T,II,134). Mr. Johnson's testimony was consistent throughout the prosecution of this case in that he testified that Defendant did not reteat to the house but called Thomas a "Bitch", chased him and shot him. (T,II,186-187).

There was no evidence of planning or premeditation in his subsequent activities, nor does the disparity of these two witnesses testimony, even "if" both are to be believed, that establishes "premeditation and deliberation" regarding the death of carlton Thomas!

The case law makes it clear that premeditation and deliberation must occur "between" the formulation of the specific intent to kill and the acts which cause the death. People v. Oster, 67 Mich App 490 (1976); People v. Plummer, 229 Mich App 293 (1998).

There was **no other evidence** presented other than the testimony of two self admitted crack dealers even that Mr. Houston committed the instant offense. One of the two witnesses, Crooks changed his testimony twice! In reviewing the evidence even in the light most favorable to the prosecution, there was no evdience of premeditation, deliberation, planning, or design. Applying the above principles it is clear that the prosecution's case failed to justify a rational trier of fact in finding premeditation beyond a reasonable doubt. To the contrary, the evidence indicated that the Defendant and the decedent exchanged heated words, and that then death occurred.

Clearly the killing in this case was unplanned, without pre-existing bad blood, and without previous motive. It is clear that the killing here was perpetrated in response to the unanticiapted heated exchange between Thomas and the Defendant. The evidence here does not establish "beyond a reasonable'doubt" that the killing was premeditated and as such

Defendant's conviction must be reversed. In the alternative it should be reduced to second degree murder and Defendant resentenced.

V

**DEFENDANT HOUSTON WAS DEPRIVED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE PREJUDICIAL ERRORS WHICH OCCURRED DURING HIS TRIAL.**

<u>Standard</u> <u>of</u> <u>review</u>; The standard of review for allegations of cumulative error is not whether there were some irregularities, but in viewing the record as a whole, whether the defendant has had a fair and impartial trial. <u>People</u> <u>v.</u> <u>Taylor</u>, 185 Mich App 1,10 (1990).

In the case before this court Defendant Houston has set forth a number of substantive issues in which he claims reversible error occurred during the course of his trial. The seriousness and gravity of each one of these issues goes to the very ability of defendant Houston to fairly defend himself against the charges brought against him. Defense counsel in this case never actually presented a defense to the charges, simply that the prosecution failed to meet their burden. Counsel abandoned defendats only "viable" defense under the circumstances, that of manslaughter. (T,II,103,166). In addition defense counsel failed to preserve a number of obvious issues by way of objection (set forth infra in this brief & in Defendant's brief on Appeal) for appellate review. <u>People</u> <u>v.</u> <u>Kimble</u>, 470 Mich 305,309 (2004). See <u>People</u> <u>v.</u> <u>Houston</u>, 11/9/04, C.O.A.# 248742,. These deficiency's coupled with the mutiple references to "flight" & "other bad acts" raised on Defendant's appeal of right, (both of which where inadmissible), and the improper comments by the prosecutor during closing arguments actively denied Mr. Houston a fair trial. U.S. Const Am V,VI,VIX; Const 1963, Art 1, Sec 20.

***

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and

district wherein the crime shall have been committed, which district
shall have been previously ascertained by law, and to be informed of
the nature and cause of the accusation, to be confronted with the
witnesses gainst him, to have compulsory process for obtaining
witnesses in his favor and to have the assistance of counsel for his
defense. U.S. Const Am. VI.

Due process requires that a defendant recieve a fair trial.
Const 1963, Art 1, Sec 17; U.S. Const V,XIV. Defendant is not
unmindful that he is not entitled to a perfect trial, only a fair
one. People v. Kelly, 231 Mich App 627,646 (1998). However, the
appellate courts of this state recognize that errors made at trial
"may be so grievous that when combined together, the cumulative
effect of same is to deny defendant his constitutional right to a
fair trial." See People v. Skowonskri, 61 Mich App 71,77 (1975)
citing People v. Smith, 363 Mich 157 (1961);

"While one error may not itself be reversible, the totality of
errors committed during a trial may mandate a new trial."
See also People v. Sabin, 236 Mich App 1 lv gr't 461 Mich 896
(1999).

"The cumulative effect of individual errors may be so
prejudicial as to deny defendant a fair trial, since cumulative
prejudicial effect may even overcome the fact that evidence of
defendant's guilt was overwhelming." See People v. Skonwronski,
supra; People v. Bairefoot, 117 Mich App 225 (1982); People v.
Spencer, 130 Mich App 527 (1983)(admission of prior record of CSC,
testimony that defendant was on parole, produced cumulative effect
requiring reversal).

Even if any one of the errors submitted here, and on direct
appeal, was alone not reversibly errorneous, the cumulative effect
of each when considered in combination clearly denied Defendant

Houston a fair trial. <u>People v. Malone</u>, 180 Mich App 347,362 (1989); <u>People v. Rosales</u>, 160 Mich App 304 (1987); <u>Walker v. Engle</u>, 703 F3d 959,968 (6th Cir 1983).

Other case of cumulative error;

<u>Moore v. Johnson</u>, 194 F3d 586,622 (8th cir 1999)(cumulative error during punishment phase)

<u>Matire v. Wainwright</u>, 811 F2d 1430,1438 (11th Cir 1987)(cumulative errors by trial counsel).

<u>Williams v. Washington</u>, 59 F3d 673,682 (7th Cir 1995)(cumulative effect of prosecutorial misconduct).

<u>People v. Wallace</u>, 160 Mich App 1 (1987)(cumulative effect of improper prosecutorial comments).

In this case it is clear that an argument was taking place between the defendant and the alleged victim, yet no offer of self defense nor manslaughter was presented by the defense. The prosecutions entire case consisted of the testimony of witnesses who were admitted drug dealers, not a single one of whom came forward with information until it served their own purposes. The credibility of both Crooks and Johnson was suspect, and as such the prosecutor attempted to "bolster" their credibility with the jury by stating that they were giving "honest" testimony. (T,III,58,62).

Any one of the errors mentioned herein might well have been outcome determinative. As a consequence each one of these errors was a deprivation of Mr. Houston's right to due process and a fair trial under the United States Constitution and the parallel provisions of the Michigan Constitution in that they wrongly buttressed the People's case, or in some instances they misdirected the jury's attention from matters concerning guilt or innocence to matters not relevant to the charged crime. (Flight evidence, other bad acts

evidence raised on direct appeal as issue I), thus prejudicing the

determination of defendant's guilt or innocence.

"When dealing with errors impacting due process the issues
"must be dealt with in a large way, as questions of due process
always are, not narrowly or pedantically, i slavery to forms or
phrases." Burnett v. Wells, 289 US 670 (1932) at 677 (Cardozo,J.)

It is clear in this case that Mr. Houston was deprived his

constitutional right to a fair trial by an impartial factfinder.

Thus his conviction must be reversed.

VI

DEFENDANT HOUSTON WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL ON HIS FIRST APPEAL OF RIGHT WHEN APPELLATE COUNSEL FAILED TO CHALLENGE/AND OR ADVOCATE THE ERRORS PRESENTED HEREIN THAT WERE BOTH "OBVIOUS AND SIGNIFICANT."

Standard of review; The standard of review for a claim of the ineffective assistance of appellate counsel is the same two prong test set forth in Strickland v. Washington, 466 US 668; 104 Sct 2052; 80 Led2d 674 (1984); Evitts v. Lucey, 469 US 387; 105 Sct 830; 83 Led2d 821 (1985); People v. Reed, 449 Mich 375 (1995).

In the case before the court Defendant submits that he was deprived the effective assistance of counsel on direct appeal as of right when appellate counsel, Christine A. Pagac (P67095), failed to advocate the errors previously presented in this brief for appellate review. Standard 1 of the ADMINSTRATIVE ORDER No 2004-6 ,of the Minimum Standards for Indigent Criminal Appellate Defense Services states;

Standard 3;

 Counsel shall raise those issues, recognizable by a practitioner familiar with criminal law and procedures on a current basis and who engages in diligent legal reseach, which offer reasonable prospects of meaningful postconviction or appellate relief, in a form that protects where possible the defendants option to pursue collateral attacks in state or federal courts. If a potentially meritorious issue involves a matter not reflected in the trial court record, counsel should move for and conduct such evidentiary hearings as may be required.

See also Entsminger v. Iowa, 386 US 748; 87 Sct 1402; 18 Led2d 501 (1967); People v. Ginther, 390 Mich 436 (1973).

Under both the state and federal constitutions a criminal defendant pursuing a first appeal as of right is guranteed certain minimum safeguards necessary to make that appeal "effective and adequate". See Griffin v. Illinois, 351 US 12,20; 76 Sct 585; 100

44

Led2d 891 (1956). Among those safeguards is the right to counsel. Douglas v. California, 372 US 353; 83 Sct 814; 9 Led2d 811 (1963).

The due process clause of the fourteenth Amendment requires that a criminal defendant recieve not just the assistance of counsel, but the effective assistance of counsel in a first appeal of right. See Evitts v. Lucey, 496 US 387; 105 Sct 830; 83 Led2d 821 (1985) holding;

"Nominal representation on an appeal of right--like nominal represemtation at trial--does not suffice to render the proceedings constutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." 469 US at 396.

See also Coleman v. Thompson, 501 US 722; 111 Sct 2546; 115 Led2d 640 (1991). The right to the effective assistance of counsel has long been recognized as the most fundamental of rights. See Gideon v. Wainwright, 372 US 335,344; 83 Sct 792; 9 Led2d 799 (1963).

In rendering effective assistance of counsel at the appellate level counsel must function as an advocate, actively promoting his client's position by "scrutinizing" the record for error and presenting legal arguments in his clients favor. Cannon v. Berry, 727 F2d 1020, 1022 (11th Cir 1984). By definition an appellate attorney must scrutinize, (carfeully inspect, scrupulously review) the trial record and recognize and present for appellate review any "obvious and signifcant" issues for appellate review.

As a consequence this omission places a heavy burden of responsibility on appellate counsel to perform at the very least minimal investigation and research before 'rejecting' an issue for appellate review. See United States v. Barbour, 295 US App DC 111; 813 F2d 1232,1234 (1987)(only when reasonable investigation has been

45

performed is counsel in a position to make an _informed_ tactical

decision. It is especially important that counsel adequately

ivestigate the case in order that at the very least he can provide

minially competent professional representation).

The rationale behind this is that a "conscious decision not to

raise an issue on appeal of right may foreclose the defendant from

ever having that issue reviewed in either state or federal court".

See Smith v. Murray, 477 US 527; 106 Sct 2661; 91 Led2d 397 (1986).

"The need for forceful advocacy does not come to an abrupt halt
as the legal proceeding moves from the trial to appellate stage. Both
stages of the prosecution, although perhaps involving unique legal
skills, require careful advocacy to ensure that rights are not
foregone and that substantial legal and factual arguments are not
inadvertently passed over." Penson v. Ohio, 488 US 75,84; 109 Sct
346; 102 Led2d 300 (1988).

Defendant submits that when trial counsel failed to object to

the improper use of the evidence of "flight" in this case this

clearly constitutes ineffective assistance of trial counsel, as well

as the failure to object to improper closing arguments which attested

to the credibility of the states witnesses. (presented infra in this

brief). Conversely, the failure to present these errors which were

attributable to trial counsel, and to raise the ineffectiveness of

trial counsel on appeal may constitute ineffective assistance of

appellate counsel. See Mapes v. Coyle, 171 F3d 408 (6th Cir 1999).

In this case Mr. Houston lost the "right" to present obvious

constitutional violations, arising out of the state trial court

proceedings for appellate review on his appeal of right. The mere

fact that the errors herein could quite possibly have been outcome

determinative intensifies the error! See ADM. ORD. 2006-4(3).

The issue of ineffective assistance of appellate counsel was

discussed at length in the case of <u>Mason v. Hanks,</u>  97 F3d 887 (7th

Cir 1996). The <u>Hanks</u> court stated;

"But when appellate counsel omits (without legitimate stratgeic
purpose) "a significant and obvious" issue, we will deem his
performance deficient and when that omitted issue" may have resulted
in a reversal of the conviction, or an order for a new trial," we
will deem the lack of effective assistance of counsel prejudicial."

There is no showing in the case at bar that appellate counsel's

failure to present the issues presented infra was "appellate

strategy". In <u>Jones v. Barnes</u>, 463 US 745,750-754; 103 Sct 3308; 77

Led2d 987 (1980), the United States Supreme Court allowed that an

appellate attorney, for purposes of constitutional law, to withold

issues, the decision must be done as the exercise of "sound

professional judgement". See <u>Strickland v. Washington,</u> <u>supra</u>; See

also <u>Haskins v. Lecurex</u>, 16 F3d 1219 (6th Cir 1994).

In determining whether the failure to raise a a particular issue

was "sound professional judgement" the Court must look at the issues

raised and those abandoned. See <u>Ellis v. Lnaugh</u>, 873 F2d 830 (5th Cir

1989).

In this case Defendant has presented herein issues of "obvious

and significant" legal merit. (Presented infra). The failure advance

a claim of prosecutorial misconduct on appeal constituted ineffective

assistance of counsel in the case of <u>Freeman v. Lane</u>, 962 F2d 1252

(7th Cir 1992) appellate counsel's failure to present issue, on

direct appeal, based on prosecutor's improper comments that defendant

refused to testify, prejudiced defendant where counsel's failure

prevented defendant from presenting the issue for discretionary

review to the United States Supreme Court. See also <u>Martire v.

Wainwright,</u> 811 F2d 1430 (11th Cir 1987). Defendant contends that

such is the case here.

There is also the questions ineffective assistance of trial counsel. Trial counsel failed to object to what was clearly inadmissible evidence, and as a result appellate counsel failed to challenge these deficiencies in trial counsel's performance. (presented infra). See Delgado v. Lewis, 168 F3d 1148 (9th Cir 1999)(appellate counsel ignored trial counsel's ineffective assistance of counsel claims, which were legitimate, specific and compelling appellate issues, rather chosing to inform the court that there were no arguable issues). See also United States Ex Rel Barnard v. Lane, 819 F2d 798 (7th Cir 1987)(failure to raise claim of ineffective assistance of trial counsel "cause" for procedural default); Houston v. Lockhart, 982 F2d 1246 (8th Cir 1993)(remanding for an evidentiary hearing to determine whether there was a significant non-record issue and whether counsel erred in failing to raise it).

Defendant respectfully directs the courts attention to the case of Massaro v. United States. 123 Sct 1690 (2003), where the United States Supreme court has held that while generally claims not raised on direct appeal may not be raised on collateral review, without a showing of "good cause", the failure to raise an issue of ineffective assistance on direct appeal does not bar the claim from being brought in a later collateral proceeding.

Defendant Houston has met his burden of proof here and established that he was deprived his constitutional right to the effective assistance of "all" counsels where counsel(s) were deficient by failing to advocate/challenge the errors presented infra

in this brief on direct appeal. See <u>People</u> <u>v.</u> <u>Purbat,</u> 451 Mich 589 (1996); <u>Ratcliffe</u> <u>v.</u> <u>United</u> <u>States</u>, 999 F2d 1023 (6th Cir 1993); <u>Daniel</u> <u>v.</u> <u>Thigpen</u>, 742 F Supp 1535 (M.D. Ala 1990)(failure to raise obvious issue in record constituted ineffective assistance on appeal).

Defendant has demonstrated both "good cause and actual prejudice" required by court rule MCR 6.508(D)(3) in establishing that "all" counsels failed to perform at least as well as attorneys with ordinary training and skill. See <u>People</u> <u>v.</u> <u>Garcia,</u> 398 Mich 250 (1976); <u>United</u> <u>States</u> <u>v.</u> <u>Beasley</u>, 491 F2d 687 (6th Cir 1974).

RELIEF REQUESTED

WHEREFORE, Defendant-Appellant Michon D. Houston prays this Honorable Court will grant him relief from judgement of conviction and sentence and order a new trial, or such relief as equitable and in the interest of justice.

Respectfully Submitted,

Michon D. Houston
Defendant-Appellant In Pro
Per
St.Louis Correctional Facility
8585 N. Croswell Road
St.Louis, Mi 48880

Dated: 1-6-07

50

**STATE OF MICHIGAN**
**THIRD CIRCUIT COURT CRIMINAL DIVISION**
**COUNTY OF WAYNE**

**PEOPLE OF THE STATE OF MICHIGAN**

**Plaintiff.**

**MICHON HOUSTON**                                          Case No. <u>03-1609</u>
                                                            Hon. Vera Massey Jones

**Defendant.**

_____/

<u>**ORDER**</u>

At a session of said Court held in the Frank Murphy Hall of
Justice-Criminal Division of the City of Detroit, State of Michigan,
**County of Wayne on:** <u>November 15, 2006</u>

<u>**PRESENT:**</u>  **Honorable Vera Massey Jones**

The defendant having filed a Motion for relief from judgment and a supplement to that motion. The court having read both and after a review of the court file.

**IT IS HEREBY ORDERED** that defendant's Motion is <u>**DENIED**</u> pursuant to MCR 6.504(B)(2). The reasons for the denial are stated below.

First, the issue raised in the supplement are without merit. The Supreme Court of the State of Michigan has held that MCR 2.119(A) does apply to motions for relief from judgment. The Supreme Court has increased the limit to 50 pages.

Defendant's first issue concerns the introduction of flight as evidence against him in the murder trial. Defendant claims that because the officers were arresting him on an unrelated charge it was irrelevant. Defendant claims that this testimony is at "(T, III, 17)." There is no transcript III. The testimony is contained in transcripts dated April 3, 2003 and April 7, 2003. Page 17 of the April 3rd transcript is a continuation of the opening statement of the prosecutor. Page 17 contains no mention of flight. Page 17 of

the April 7th transcript is the direct examination of Charles Adams.  That page 17 does not mention flight from the police.

An examination of the charge to the jury discloses that an instruction on flight was given.  Flight can show a consciousness of guilt.  It does not matter why the police were trying to arrest.  The attempt to flee was after the alleged murder.  Therefore, it was relevant.

Defendant next claims that the prosecutor vouched for the witnesses.  Defendant takes the comment out of context.  Trial transcript of April 7, 2003 at page 58.

> He's here to testify on his friend and he tells you who pulls the trigger.  His friend Mr. Michon Houston is the triggerman.  That's what you folks have to deal with.  That's why I told you up front these people are drug dealers.  You won't like them, but they're telling the truth.  Based on all evidence you know they are.

This is not vouching.  This is arguing what the evidence tends to show.

Defendant next claims ineffective assistance of trial counsel.  Defendant admits that the question of prior bad acts was raised before the Court of Appeals.  Therefore, defendant is not entitled to relief on this ground pursuant to MCR 6.508(D)(2).  The next two issues concern the question of flight and failure to object to vouching.  These issues are without merit.  Finally, defendant claims that counsel was ineffective because he told defendant that he should not testify.  Giving of advice did not deprive the defendant of his right to testify.

Defendant next claims that there was insufficient evidence of premeditation and deliberation.  The Court of Appeals stated:

> "Next defendant argues that the trial court erroneously in instructed the jury on the causation element of first and second-degree murder.  Defendant relies on a technical interpretation of the causation instruction which is not warranted in the context of the issues raised in the trial.  Taken as a whole, the instructions adequately protected defendant's rights by fairly presenting to the jury the issues in this case.

Thus, the Court of Appeals has decided this issue against the defendant.

Based on the matters already stated the defendant's remaining issues are without merit.

November 15, 2006
**DATED**

**Vera Massey Jones**
**3rd Circuit Court Judge**